IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN DRIVER, DEMIKO D. McCASTER ROSAMAR MALLARI, JOYCE A. BRITTON, and MICHAEL H. HICKS, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 06 C 6149 |
| v. | ) ) ) | |
| APPLEILLINOIS, LLC d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, W. CURTIS SMITH, JAMES BORKE, J. TIMOTHY BRUGH, ARCHIE IODICE, JERRY KREGER, and JOHN DOES 1-100, | ) ) ) ) ) ) ) | Magistrate Judge Brown |
| Defendants. | ) | |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE MOTION
FOR CLASS CERTIFICATION OF THEIR ILLINOIS MINIMUM WAGE LAW
AND WAGE PAYMENT AND COLLECTION ACT CLAIMS

Plaintiffs Demiko D. McCaster, Rosamar Mallari, Joyce A. Britton, and Michael H. Hicks, by and through their counsel, on behalf of a class of similarly-situated persons, known and unknown, request that the Court grant their motion for class certification of their Illinois Minimum Wage Law and Wage Payment and Collection Act claims, and in support state as follows:

## I. INTRODUCTION

This action was filed by Named Plaintiffs in Chancery Court of Cook County on October 6, 2006, against Defendant AppleIllinois, LLC, dba Applebee's Neighborhood Grill & Bar ("AppleIllinois"), on behalf of themselves and classes of similarly-situated persons, alleging violations under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq.*, for its failure to pay minimum wage and overtime wages, and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq.*, for its failure to pay wages for all hours worked. Named Plaintiffs also brought individual claims under the Fair Labor Standards Act (FLSA), 29 U.S.C.

1

201, *et seq.*, and on that basis AppleIllinois removed the case to the Northern District of Illinois on November 9, 2006.

In the Second Amended Complaint, Plaintiffs added individual Defendants, who are members and managers of AppleIllinois. Ex. 1, Def.'s Amd. Answers Pls.' First Set Interrogs., Interrog. #3. Plaintiffs also added unnamed defendants, as yet unknown, who held the position of restaurant general managers.

Named Plaintiffs worked for Defendants as servers and bartender at Defendants' Ford City Applebee's in Chicago. Plaintiffs Demiko D. McCaster, Rosamar Mallari, Joyce A. Britton, and Michael H. Hicks seek to represent all of Defendants' tipped employees, employed during the appropriate limitations period, under the IMWL claims, and Defendants' hourly employees, employed during the appropriate limitations period, under the IWPCA claim.

AppleIllinois is a franchisee of Applebee's International, Inc., and owns and operates approximately 38 Applebee's restaurants in Illinois, including the Ford City Applebee's where Named Plaintiffs were employed. Def.'s Answer, Second Amd. Compl., ¶ 7.

## II. NATURE OF PLAINTIFFS' CLAIMS

In their effort to minimize their labor costs, Defendants employ practices across their Illinois restaurants that violate the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act and deprived low wage workers of earned compensation.

In one such unlawful practice, Defendants require tipped employees to perform duties outside their tipped occupation, but continue to pay them at the 'tip credit' rate. Thus, tipped employees are regularly assigned to perform non-tipped duties like washing dishes, taking out garbage, cleaning bathrooms, dining room and back of the house areas of the restaurant, preparing food and performing other 'back of the house' tasks.[1] Although the tipped employees

---

[1] Ex. 2, Driver Decl., ¶¶ 4-9; Ex. 3, McCaster Decl., ¶¶ 4-6; Ex. 4, Mallari Decl., ¶¶ 4-9; Ex. 5, Britton Decl., ¶¶ 3-7; Ex. 6, Hicks Decl., ¶¶ 3-7; Ex. 7, Anaballi Decl., ¶¶ 3, 4; Ex. 8, Banasiak Decl., ¶¶ 3-6; Ex. 9, Bernales Decl., ¶¶ 3-6; Ex. 10, Bester Decl., ¶¶ 3, 4; Ex. 11, Boeche Decl., ¶¶ 3-6; Ex. 12, Boedeker Decl., ¶¶ 3, 4; Ex. 13, Boller Decl., ¶¶ 3-6; Ex. 14, Bowman Decl., ¶¶ 3-7; Ex. 15, Bridgeman Decl., ¶¶ 3, 4; Ex. 16, Burns Decl., ¶¶ 3-6; Ex. 17, Buss Decl., ¶¶ 3-8; Ex. 18, Cantu Decl., ¶¶ 3-5; Ex. 19, Cavaliere Decl., ¶ 3; Ex. 20, Cooper Decl., ¶¶ 3-6; Ex. 21, Mikuls Decl., ¶¶ 3-5; Ex. 22, Morrison Decl., ¶¶ 3-7; Ex. 23, Serwatka Decl., ¶ 3; Ex. 24, Soboczynski Decl., ¶¶ 3-7; Ex. 25, Stephens Decl., ¶ 3; Ex. 26, Stockmann Decl., ¶¶ 3-5; Ex. 27, Studer Decl., ¶¶ 2, 3; Ex. 28, Thennes Decl., ¶¶ 3, 4; Ex. 29, Tomlinson, C.

performed this non-tipped work, Defendants continue to pay those employees at a sub-minimum wage rate. Ex. 44, Rodriguez Decl., ¶ 5.[2]

The tip pools that Defendants operate are likewise unlawful.

Some of the proceeds of the tip pools that should have been shared with other tipped employees are used by Defendants for its own purposes, like recouping alleged cash register shortages, or paying 'walk-off' tabs.[3]

Defendants also require excessive tip pool contributions. Defendants require their servers to fund the tip pool by contributing, or 'tipping out,' 2.5 percent of the gross sales each shift.[4] Because of Defendants' tip pool system, those servers are required to contribute to the tip pool beyond what is customary and reasonable.

Finally, Defendants failed to inform tipped employees of the provisions of the tip credit subsection.[5]

---

Decl., ¶¶ 3-5; Ex. 30, Tomlinson, L. Decl., ¶¶ 3-7, 9; Ex. 31, Volz Decl., ¶¶ 3, 4; Ex. 32, Wagner Decl., ¶¶ 3-6; Ex. 33, Walsh Decl., ¶¶ 3-5; Ex. 34, Walters Decl., ¶¶ 3, 4; Ex. 35, Whitford Decl., ¶¶ 3, 4; Ex. 36, Wiening Decl., ¶¶ 3-6; Ex. 37, Will Decl., ¶¶ 3, 4; Ex. 38, Williams Decl., ¶¶ 3, 4; Ex. 39, Zellers Decl., ¶¶ 3-6; Ex. 40, Zoppa Decl., ¶¶ 3-5; Ex. 41, Swords Decl., ¶¶ 3-9; Ex. 42, Oropeza Decl., ¶ 6, 7; Ex. 43, Lopez Decl., ¶ 6, 7.

[2] Plaintiffs have received digital payroll data from Defendants for years 2005, 2006 and 2007.

[3] Ex. 2, Driver Decl., ¶ 13; Ex. 3, McCaster Decl., ¶ 8; Ex. 18, Cantu Decl., ¶ 6; Ex. 40, Zoppa Decl., ¶ 6; Ex. 41, Swords Decl., ¶ 11.

[4] Ex. 2, Driver Decl., ¶ 2; Ex. 4, Mallari Decl., ¶ 2; Ex. 5, Britton Decl., ¶ 2; Ex. 6, Hicks Decl., ¶ 2; Ex. 7, Anaballi Decl., ¶ 2; Ex. 8, Banasiak Decl., ¶ 2; Ex. 9, Bernales Decl., ¶ 2; Ex. 10, Bester Decl., ¶ 2; Ex. 11, Boeche Decl., ¶ 2; Ex. 12, Boedeker Decl., ¶ 2; Ex. 13, Boller Decl., ¶ 2; Ex. 14, Bowman Decl., ¶ 2; Ex. 15, Bridgeman Decl., ¶ 2; Ex. 16, Burns Decl., ¶ 2; Ex. 17, Buss Decl., ¶ 2; Ex. 18, Cantu Decl., ¶ 2; Ex. 19, Cavaliere Decl., ¶ 2; Ex. 20, Cooper Decl., ¶ 2; Ex. 21, Mikuls Decl., ¶ 2; Ex. 22, Morrison Decl., ¶ 2; Ex. 23, Serwatka Decl., ¶ 2; Ex. 24, Soboczynski Decl., ¶ 2; Ex. 25, Stephens Decl., ¶ 2; Ex. 26, Stockmann Decl., ¶ 2; Ex. 28, Thennes Decl., ¶ 2; Ex. 29, Tomlinson, C. Decl., ¶ 2; Ex. 30, Tomlinson, L. Decl., ¶ 2, 9; Ex. 31, Volz Decl., ¶ 2; Ex. 32, Wagner Decl., ¶ 2; Ex. 32, Walsh Decl., ¶ 2; Ex. 34, Walters Decl., ¶ 2; Ex. 36, Wiening Decl., ¶ 2; Ex. 37, Will Decl., ¶ 2; Ex. 39, Zellers Decl., ¶ 2; Ex. 40, Zoppa Decl., ¶ 2; Ex. 41, Swords Decl., ¶ 2.

[5] Ex. 2, Driver Decl., ¶ 14; Ex. 3, McCaster Decl., ¶ 9; Ex. 4, Mallari Decl., ¶ 11; Ex. 5, Britton Decl., ¶ 10; Ex. 6, Hicks Decl., ¶ 10; Ex. 7, Anaballi Decl., ¶ 6; Ex. 8, Banasiak Decl., ¶ 7; Ex. 9, Bernales Decl., ¶ 8; Ex. 10, Bester Decl., ¶ 6; Ex. 11, Boeche Decl., ¶ 8; Ex. 12, Boedeker Decl., ¶ 5; Ex. 13, Boller Decl., ¶ 7; Ex. 14, Bowman Decl., ¶ 9; Ex. 15, Bridgeman Decl., ¶ 6; Ex. 16, Burns Decl., ¶ 7; Ex. 17, Buss Decl., ¶ 10; Ex. 18, Cantu Decl., ¶ 7; Ex. 19,

The Wage Payment and Collection Act obligates an employer to pay an employee for all time worked. Defendants fail to pay hourly employees for all time worked: either by requiring 'off the clock' work, or by excising actual accrued time.[6] Defendants thus violate the IWPCA.

## A. Minimum Wage and Overtime Violations

As an exception to the requirement to pay minimum wage, an employer of employees engaged in tipped occupations may pay those tipped employees less than minimum wage, taking a credit for the gratuities those employees receive from customers up to a maximum amount. 29 U.S.C. §203(m). An employer is entitled to take a 'tip credit' only toward the wages of employees who qualify as "tipped employees," and only if the employer: (1) pays tipped employees the minimum required cash wage; (2) informs the tipped employees of the provisions of Subsection 203(m); (3) permits the tipped employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the tipped employees' cash wage plus the tip credit equal at least the minimum wage in each work week.[7] 29 U.S.C. § 203(m); *Kilgore, et al. v. Outback Steakhouse of Florida, Inc.*, 160 F.2d 294, 298 (6th Cir. 1998); *Fast, et al. v. Applebee's Int'l, Inc.*, 502 F.Supp. 2d 996, 1001 (W.D. Mo. 2007).

The FLSA is a remedial statute, and an employer who seeks to raise an exception to the

---

Cavaliere Decl., ¶ 4; Ex. 20, Cooper Decl., ¶ 7; Ex. 21, Mikuls Decl., ¶ 7; Ex. 22, Morrison Decl., ¶ 9; Ex. 23, Serwatka Decl., ¶ 4; Ex. 24, Soboczynski Decl., ¶ 8; Ex. 25, Stephens Decl., ¶ 6; Ex. 26, Stockmann Decl., ¶ 7; Ex. 27, Studer Decl., ¶ 5; Ex. 28, Thennes Decl., ¶ 5; Ex. 29, Tomlinson, C. Decl., ¶ 7; Ex. 30, Tomlinson, L. Decl., ¶ 8; Ex. 31, Volz Decl., ¶ 6; Ex. 32, Wagner Decl., ¶ 7; Ex. 33, Walsh Decl., ¶ 7; Ex. 34, Walters Decl., ¶ 5; Ex. 35, Whitford Decl., ¶ 6; Ex. 36, Wiening Decl., ¶ 8; Ex. 37, Will Decl., ¶ 6; Ex. 38, Williams Decl., ¶ 6; Ex. 39, Zellers Decl., ¶ 7; Ex. 40, Zoppa Decl., ¶ 7; Ex. 41, Swords Decl., ¶ 13.

[6] Ex. 2, Driver Decl., ¶¶ 10, 11; Ex. 3, McCaster Decl., ¶ 7; Ex. 5, Britton Decl., ¶ 9; Ex. 6, Hicks Decl., ¶ 9; Ex. 7, Anaballi Decl., ¶ 5; Ex. 9, Bernales Decl., ¶ 7; Ex. 10, Bester Decl., ¶ 5; Ex. 11, Boeche Decl., ¶ 7; Ex. 14, Bowman Decl., ¶ 8; Ex. 15, Bridgeman Decl., ¶ 5; Ex. 17, Buss Decl., ¶¶ 8, 9; Ex. 21, Mikuls Decl., ¶ 6; Ex. 22, Morrison Decl., ¶ 8; Ex. 25, Stephens Decl., ¶ 4; Ex. 26, Stockmann Decl., ¶ 6; Ex. 27, Studer Decl., ¶ 4; Ex. 29, Tomlinson, C. Decl., ¶ 6; Ex. 31, Volz Decl., ¶ 5; Ex. 33, Walsh Decl., ¶ 6; Ex. 35, Whitford Decl., ¶ 5; Ex. 37, Will Decl., ¶ 5; Ex. 38, Williams Decl., ¶ 5; Ex. 41, Swords Decl., ¶ 10.

[7] The provisions of the FLSA and the Illinois Minimum Wage Law are coextensive, and therefore analyzed together. *See Condo v. Sysco Corp.*, 1 F.3d 599, 601, n.3 (7th Cir. 1993) (analyzing overtime provisions). The Illinois Administrative Code supports this proposition, *id.*, citing Ill. Admin. Code Ch. 56, 200.170 (1991)(now, §210.120), as does Illinois case law. *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 1987).

4

minimum wage provisions of the Act bears the burden of proving its entitlement. *Auer v. Robbins*, 519 U.S. 452, 462 (1997). Thus, the employer bears the burden of establishing its entitlement to the tip credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979). Furthermore, the requirements for eligibility to take that tip credit under Subsection 203(m) are strictly construed. *Chu Chung v. New Silver Palace Rest.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002); *Heng Chan v. Triple 8 Palace, Inc.*, 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780, at *8-9 (S.D.N.Y. March 30, 2006). "[A]n employer may not take a tip credit unless it complies strictly with both statutory requirements." *Heng Chen, et al. v. Sung Yue Tung Corp., et al.*, No. 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770, at *46-47 (S.D.N.Y. Feb. 1, 2007).

Under Illinois law, an employer of tipped employees may take a credit against the minimum hourly wage in an amount not to exceed 40 percent. IMWL, 820 ILCS 105/4(c); FLSA, 29 U.S.C. §203(m). The current minimum wage in Illinois is $7.75 per hour. Accordingly, an employer may take a tip credit of $3.10 per hour toward the wages of a tipped employee. In other words, the tipped employee must receive in wages no less than 60 percent of the minimum wage, or $4.65 an hour.

### 1. Tipped Employees Perform Non-tipped Duties At Tip-Credit Wage Rates

Duties of a tipped employee must fall under one of three categories: tipped duties; tasks incidental to tipped duties; and non-tipped duties. *Fast, et al. v. Applebee's Int'l, Inc.*, 502 F.Supp. 2d 996, 1002 (W.D. Mo. 2007). An employer may take the tip credit for the wages paid for the performance of duties that are directly tip producing, which means tasks that include customer interaction. The second category of duties includes tasks that are not tip-producing, but are incidental or ancillary to tipped work, like occasionally making a pot of coffee. An employer may take a tip credit for work performed on incidental duties, unless those duties exceed 20 percent of the employee's overall duties, *id.*, or those incidental duties are routinely assigned. DOL Field Operations Handbook, §30d00. Finally, duties that fall in the third category are those of a separate and distinct occupation, like preparing food or dish washing, and must be compensated at the minimum wage rate at all times. *Myer*, 192 F.3d at 551; *Kilgore*, 160 F.2d at 301; *Fast*, 502 F.Supp. 2d at 1002.

Defendants regularly assigned tipped employees to perform category three tasks, work separate and distinct from their tipped occupation. Category three duties, like dish washing, food preparation, and general cleaning, must be compensated at minimum wage, regardless of the percentage of time of the employee's day those tasks occupy. *Myer,* 192 F.3d at 551; *Fast,* 502 F.Supp. 2d at 1002.

Further, Plaintiffs and other tipped employees were required to perform duties before the restaurant opened for business, and after the last customer left. Such 'off hours' work, performed when no customers are present in the restaurant, can only fall into the third category of work: separate and distinct from the tipped occupation, and therefore work that must be compensated at minimum wage. *See Kilgore,* 160 F.2d at 301. (employees interacting with customers are tipped employees, as distinguish from "dishwashers, cooks and off-hours employees"). If no customers are in the restaurant, no tips can be earned, and no work can be tipped work; if no work can be tipped work, no work can be incidental to tipped work.

Defendants' policies appear to recognize that such conduct was impermissible. First, their "Server" position duties and responsibilities do not include dishwashing, general restaurant cleaning, "off-hours" opening and closing duties, or expediting food. Ex. 45, "Applebee's Position Description, Title: Server". Second, the "Labor Management Best Demonstrated Practices" policy recognizes that tipped employees must be clocked in under the appropriate job code, with corresponding appropriate wage rate, if they are assigned to perform back-of-the-house duties. Ex. 46, Labor Management, at 2. Thus, while Defendants' written policies may have been compliant, their practices were unlawful.

Because Defendants took the tip credit for straight time and overtime hours, Defendants' unlawful practices regarding the tip credit provisions of the IMWL violate both the minimum wage and maximum hours provisions of that statute.

2. **Unlawful Tip Pool Operation: Defendants Use of Tips, and Excessive Tip-Out**

While a tip pool which distributes tips among tipped employees working a particular shift is permissible, a tip pool that is illegal destroys the employer's entitlement to the tip credit. *Myers v. The Copper Cellar Corp.,* 192 F.3d 546, 551 (6th Cir. 1999). In such an event, the

6

employer owes all employees participating in the pool the difference between the hourly minimum wage and the tip credit rate. *Id; see also Heng Chen*, 2007 U.S. Dist. LEXIS 7770, at *49, 52 (tip sharing with managers and failure to inform employees of Subsection 203(m) forfeits tip credit); *Chu Chung v. New Silver Palace Rest.*, 246 F.Supp.2d 220, 231 (S.D.N.Y. 2002) (forcing employees to share tips with management employees violates Subsection 203(m), tipped employees entitled to difference between tip credit wage paid and minimum wage for all hours worked).

Further, contributions by tipped employees to a tip pool must be "customary and reasonable." Wage-Hour Administrator Opinion WH-380, Tip Pooling (March 26, 1976); Wage-Hour Administrator Opinion WH-468 (March September 5, 1978); *contra Kilgore, et al. v. Outback Steakhouse of Florida, Inc.*, 160 F.2d 294, 302-03 (6th Cir. 1998)(finding in part that DOL opinion letter have no persuasive value).

Defendants used tip pool money to cover shortages in the bar cash registers and to cover the bill of 'walk off' customers. Because Defendants used tip pools for their own purposes, they cannot prove their entitlement to the tip credit.

Defendants also required servers to contribute, or 'tip out', an excessive amount beyond what is customary and reasonable. Because Defendants tied the tip pool contribution to gross sales, instead of tips received, the tip pools operated by Defendants were unlawful.

3. **Defendants Failed To Notify Tipped Employees Of The Provisions Of Subsection 203(m)**

Even if an employer meets all the other eligibility requirements necessary to take the tip credit for a tipped employee's wages, the employer still may not take the tip credit "unless such employee has been informed by the employer of the provisions of this subsection . . .." 29 U.S.C. § 203(m).

Class members were not informed of the provisions of Subsection 203(m). The only effort that Defendants made to comply with that provision is contained in a document styled "Voluntary Tip-Sharing Agreement, Apple Sauce, Inc./AppleIllinois, LLC." Ex. 47. Buried in that document is this sentence: "I understand that if my regular hourly wage is less than standard minimum wage, then part of the tips I receive may be used by my employer to satisfy minimum

7

wage requirements." *Id.* This sentence fails to comply with the requirement that an employee be informed of the provisions of Subsection 203(m), both as to form and as to substance.

### B. IWPCA Violations

An employer must pay all wages earned by an employee. 820 ILCS 115/3; *Swavely v. Feeway Ford Truck Sales, Inc.*, 700 N.E.2d 181, 188 (Ill. App. Ct. 1998), *app. den.* 181 Ill.2d 590 (Ill. 1998).

Defendants failed to pay hourly employees for all time worked, either by requiring off-the-clock work, or by altering time entries. In doing so, Defendants violated the provisions of the IWPCA.

## III. STANDARD FOR CLASS CERTIFICATION

In evaluating a certification motion, a district court may not consider the merits of the case. *Eisen v. Carlisle & Jacqelin*, 417 U.S. 156, 177 (1974). Rather, the court must accept as true all well-pleaded allegations of the complaint. *Id.* at 177-78; *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D. Ill. 1993). The district court may, if need be, probe the available evidence to determine whether plaintiffs have met their burden under Rule 23. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). However, class certification turns on whether the requirements of Rule 23 are met, not on the ultimate resolution of the merits. *General Tele. Co. Of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *George, et al. v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 343 (N.D. Ill. 2008).

The plaintiff bears the burden of showing that class certification is appropriate, *General Tele.*, 457 U.S. at 161; *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 596 (7th Cir. 1993), and the district court has broad discretion in determining whether such a showing has been made. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

### IV. The Class Descriptions

Plaintiffs' proposed IMWL classes are:

> All persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip-credit wage rate, and who performed non-tipped duties, like dishwashing, for which they did not receive minimum wage.

8

> All persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip-credit wage rate, who performed non-tipped duties, like dishwashing, for which they did not receive minimum wage and who worked more than forty (40) hours in any individual workweek, but did not receive overtime pay at the rate of one and one-half times their regular rate of pay for all time in excess of forty (40) hours.

The statute of limitations for an IMWL claim is three years. 820 ILCS 105/12.

Plaintiffs' proposed IWPCA class is:

> All persons employed by Defendant AppleIllinois, LLC, as hourly employees from October 6, 2001, to the conclusion of this action who were not paid for all time worked in individual workweeks.

The statute of limitations for an IWPCA claim is five years. 820 ILCS 175/95.

## V. ARGUMENT

**Plaintiffs' IMWL and IWPCA Claims Should be Certified as a Class Action**

A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23; *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is 'impracticable'); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). Fed. R. Civ. P. 23(a)(1) – (4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017; *Arango v. GC Services, LP, et al.*, No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *3 (N.D. Ill. June 10, 1998). Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect

9

to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

The class action mechanism is particularly suited to actions to recover owed overtime and other wages under the IMWL and IWPCA, *Gelb v. Air Con Refrigeration and Heating, Inc.*, 761 N.E.2d 765 (Ill. App. Ct. 2001), and "Illinois courts contemplate class treatment for IMWL and IWPCA claims." *Sorensen, et al., v. CHT, Inc.*, No. 03 C 1609, 2004 U.S. Dist. LEXIS 3729, *36 (N.D. Ill. March 10, 2004). Federal courts in this judicial district likewise routinely certify state law IMWL and IWPCA claims removed from the Illinois courts under the federal class action rule. *Yon v. Positive Connections,* No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396, at *7-9 (N.D. Ill. February 2, 2005)(Darrah, j.); *Acosta v. Scott Labor, LLC*, Case No. 05 C 2518, 2006 U.S. Dist. LEXIS 153, at *13-15 (N.D. Ill. January 3, 2006)(Gettleman, j.).

Plaintiffs and their claims meet each of the requirements for class treatment of this lawsuit.

### A. Certification Under Rule 23(a)

#### 1. Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. Defendants own and operate approximately 38 restaurants in Illinois. According to Defendants' data, the number of current and former tipped employees from the beginning of the IMWL limitations period through mid-2007 exceeds 10,000 people. Ex. 44, Rodriguez Decl., ¶ 4. The number of hourly employees from the beginning of the IWPCA limitations period through mid-2007 exceeds 18,000 people. Ex. 44, Rodriguez Decl., ¶ 3.

The size of the putative class is sufficient to establish numerosity. *See Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)(40 class members establish numerosity).

#### 2. Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where a common nucleus of operative facts exist. *Rosario*, 963 F.2d at 1018. "The commonality requirement has been characterized as a 'low

hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Generally, courts have found the commonality requirement satisfied with one issue common to all class members. *Marison A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d. Cir. 1997). "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Walker v. Bankers Life & Cas. Co.*, 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. Oct. 1, 2007) *quoting Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986).

Further, differences among the class members regarding damages are not relevant for certification purposes. "The commonality requirement may be met if the common question goes to liability despite individual differences in damages." *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn 1991).

A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Keele,* 149 F.3d at 592 (7th Cir. 1998); *Miner v. Gillette Co.*, 428 N.E.2d 478, 484-85 (Ill. 1981). Where the movant shows that the successful adjudication of the class representatives' individual claims will establish a right of recovery, or resolve a core issue on behalf of the class members, this prerequisite is met. *Society of St. Francis v. Dulman*, 424 N.E.2d 59, 61 (Ill. App. Ct. 1981). The fact that the recovery for each class member will vary, and must be separately determined, does not thwart the predominance of a common question. *Id.*

Here, commonality is satisfied. Regarding the IMWL class, each class member is, or was, employed by Defendants in a tipped occupation. At issue is whether each class member was: informed by Defendants of the provisions of the tip credit Subsection 203(m); denied minimum wage while engaged in duties outside the tipped occupation; subjected to an unlawful tip pool; required to fund that tip pool by contributions that exceeded an amount that is customary and reasonable, and whether excessive tip pool contributions are unlawful.

Regarding the IWPCA class, each class member is, or was, employed by Defendants as an hourly employee. At issue is whether class members were paid for all time worked, or whether employees were required to work off the clock or had work time improperly subtracted from the actual time worked.

11

### 3. Typicality -- Rule 23(a)(3)

Claims of the class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595; *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality and commonality are closely akin. *Rosario*, 963 F.2d at 1018. "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

The claims here of Plaintiffs and class members arise from the same conduct of Defendants. Regarding the minimum wage claim under the IMWL, Defendants require all servers, bartenders, hosts and curbsides employees to perform duties outside their tipped occupation on a daily basis. These employees are required to work 'off hours' when the restaurants are closed for business; by definition, such work would not be customer service duties. These tasks include setting up and breaking down the expo line, cleaning the restaurant, both dining area and kitchen, and washing dishes. Both Plaintiffs and the class members were required to perform non-tipped duties during the time the restaurant was open. These tasks included dishwashing, general cleaning, maintaining the 'expo' line, and preparing, or 'expediting' their food orders.

Similarly, the overtime claim under the IMWL and IWPCA claims of Plaintiffs and those of the class are the same; Defendant's failure to pay its hourly employees for all time worked.

Not all class members may have been required to perform all of an array of non-tipped tasks; that is not required, as some factual variation does not defeat typicality. *Walker*, 2007 U.S. Dist. LEXIS 73502, at * 13-14. Typicality is meant to insure that the claims of the class representative have the "same essential characteristics as the claims of the class at large." *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

### 4. Adequacy of Representation -- Rule 23(a)(4)
#### (i) Class Counsel is Experienced and Qualified

Plaintiffs and Plaintiffs' counsel will also fairly and adequately protect the interests of the class. Plaintiffs' counsel are highly experienced attorneys and have acted as representative counsel in numerous actions in federal and state courts. Ex. 48, Werman Decl.; Ex. 49, Sypulski Decl.

#### (ii) There is No Conflict of Interest Between The Proposed Class Representatives and the Classes

The conflict of interest inquiry merely requires that plaintiffs not have 'antagonistic' interests, so "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995) *quoting* 7 Wright & Miller, Federal Practice & Procedure § 1768, at 639 (1972).

Plaintiffs have no antagonistic interests that go to the subject matter of the lawsuit. *See e.g., Adames v. Mitsubishi Bank*, 133 F.R.D. 82, 91 (E.D.N.Y. 1989)(rejecting defendant's argument that persons of different employment levels may have antagonistic interests).

### B. This Action Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs' action here meets those prerequisites.

#### 1. Common Questions Predominate

An action demonstrates "predominance" of common questions where "the group for which certification is sought seeks to remedy a common legal grievance." *Riordan*, 113 F.R.D. at 65. The test is *not* whether resolution of "common issues" would be dispositive of the entire litigation. *Id.* Rather, as the court observed in *Johns v. DeLeonardis*, 145 F.R.D. 480, 484-85 (N.D. Ill. 1992):

> [(b)(3)] merely requires that the class claims have a dominant, central focus.

> Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?

For reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3), there exists predominating common questions of fact and law, and there can be no dispute that the class members' claims arise from the same course of conduct by Defendants as the claims of Plaintiffs.

With regard to the IMWL claims, the common questions revolve around whether Defendants can establish their entitlement to the tip credit by meeting the requirements under Subsection 203(m). As to the IWPCA claim, those questions go to whether Defendants failed to pay their hourly employees for all time worked.

### 2. Superiority of Class Action Method

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. See *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially hundreds, or even thousands, of individual lawsuits and piecemeal litigation.

A class action is an appropriate method for the fair and efficient adjudication of the controversy between the classes and Defendants. In this proceeding, the parties will be allowed to resolve the claims of over 18,000 people in one coordinated proceeding, thus conferring significant benefits upon each class member. Defendants will also benefit by being spared the expense and complexity of many scores of individual lawsuits.

## VI. CONCLUSION

Defendants' wage practices have resulted in the loss of earned compensation for thousands of low-wage employees. Plaintiffs have established the prerequisites for class certification of their IMWL and IWPCA claims.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter an Order:

- A. Granting this Motion for Class Certification and certifying Plaintiffs' IMWL and IWPCA claims as a class action;
- B. Authorizing notice to issue to putative class members at Plaintiffs' expense;
- C. Appointing Named Plaintiffs' counsel as class counsel;
- D. Granting such other relief as the Court deems appropriate under the circumstances.

Dated: March 20, 2009

Respectfully submitted,

GLENN DRIVER, DEMIKO D. MCCASTER, ROSAMAR MALLARI, JOYCE A. BRITTON, MICHAEL H. HICKS

s/Jamie G. Sypulski
Jamie G. Sypulski
One of the Attorneys for Plaintiffs

Jamie G. Sypulski
Law Office of Jamie G. Sypulski
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603
312/360-0960

Douglas M. Werman
Maureen A. Bantz
Werman Law Office, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
312/419-1008

Attorneys for Plaintiffs