# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GLENN DRIVER, DEMIKO D. )
MCCASTER, ROSAMAR MALLARI, )
JOYCE A. BRITTON, and MICHAEL ) **Case No. 06 C 6149**
H. HICKS, on behalf of themselves and )
all other persons similarly situated, )
known and unknown, ) **Magistrate Judge Geraldine Soat Brown**
  Plaintiffs, )
 )
v. )
APPLEILLINOIS, LLC d/b/a )
APPLEBEE'S NEIGHBORHOOD )
GRILL & BAR, W. CURTIS SMITH, )
JAMES BORKE, J. TIMOTHY )
BRUGH, ARCHIE IODICE, )
et al, )
  Defendants. )
 )
 )

## MEMORANDUM OPINION AND ORDER

The five named plaintiffs Glenn Driver, Demiko McCaster, Rosamar Mallari, Joyce Britton and Michael Hicks (collectively, "Plaintiffs") were formerly employed by defendant AppleIllinois, LLC ("AppleIllinois"), as servers and bartenders at an Applebee's restaurant in Ford City, Illinois. (Third Am. Compl. ¶¶ 2-6). They bring claims against AppleIllinois under the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (*Id.* ¶ 1.)[1] Plaintiffs (except Glenn Driver) now move for class certification

---

[1] Plaintiffs also name as defendants certain members and managers of AppleIllinois. (Third Am. Compl. ¶¶ 8-16.) This opinion refers to all defendants collectively as "AppleIllinois."

of their IMWL and IWPCA claims. (Pls.' Mot. for Class Cert.) [Dkt 121.] AppleIllinois opposes

the motion. That motion is granted in part and denied in part as set out below.[2]


## BACKGROUND

*The lawsuit*

This lawsuit was originally filed as a putative class action in the Circuit Court of Cook

County, Illinois and was removed by AppleIllinois to the federal court. [Dkt 1.] The parties

consented to magistrate judge jurisdiction. [Dkt 53.][3] The current Third Amended Complaint

alleges five counts. In the present motion, Plaintiffs seek class certification under Fed. R. Civ. P.

23 for Counts I, II and III (the counts brought under the IMWL and IWPCA). Counts IV and V

allege FLSA claims on behalf of the named Plaintiffs only, not as a FLSA collective action. Thus,

there is no problem here of a potential tension between a FLSA "opt-in" class and a Rule 23 "opt-

---

[2] The parties' submissions related to the motion are cited as follows: Plaintiffs' Third Amended Complaint: "Third Am. Compl." [dkt 141]; AppleIllinois' Answer and Defenses to Pls.' Third Am. Compl.: "Answer" [dkt 150]; Plaintiffs' Memorandum in Support of the Motion for Class Certification: "Pls.' Mem." [dkt 123]; Memorandum by Defendants AppleIllinois, LLC [*et al.*] in Opposition to Plaintiffs' Motion for Class Certification: "Defs.' Mem." [dkt 178]; Reply in Support of Plaintiffs' Motion for Class Certification: "Pls.' Reply" [dkt 181]; Plaintiffs' Supplemental Exhibits to Plaintiffs' Memorandum: "Pls.' Suppl. Exs." [dkt 203]; Defendants AppleIllinois, LLC et al.'s Supplemental Exhibits in Support of their Opposition: "Defs.' Suppl. Exs." [dkt 212]; Supplemental Memorandum by Defendants: "Defs.' Suppl. Mem." [dkt 218]; Supplemental Memorandum by Plaintiffs: "Pls.' Suppl. Mem." [dkt 219]; Memorandum by Defendants . . . re the *Fast* Minute Order: "Defs.' *Fast* Mem." [dkt 222]; Plaintiffs' Supplemental Memorandum . . . re the *Fast* Minute Order: "Pls.' *Fast* Mem." [dkt 224].

[3] Consent to magistrate judge jurisdiction by the named parties binds the unnamed class members. *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998).

out" class.[4]

*The parties*

AppleIllinois, LLC, is an Illinois limited liability company that currently owns and operates 34 Applebee's restaurants throughout Illinois pursuant to franchise agreements with Applebee's International, Inc. (Answer ¶ 7; Defs.' Mem., Ex. 96, Decl. of Scott Cortner ¶ 6.)[5]  Plaintiffs' proposed classes would include employees working at all of AppleIllinois' restaurants.  (Pls.' Mot. for Class Cert. ¶ 2.)

Plaintiffs were tipped employees who worked at a single AppleIllinois location – the Ford City, Illinois restaurant – for less than a year.  (Answer, ¶¶ 3-6.)  The Ford City location opened for business in June 2006. (Cortner Decl. ¶ 12.)  Demiko McCaster was employed as a bartender from May 2006 to January 2007.  (Pls.' Mem., Ex. 3, Decl. of Demiko McCaster ¶ 1.)  Rosamar Mallari was employed as a server from mid-May 2006 through August 2006.  (Pls.' Mem., Ex. 4, Decl. of Rosamar Mallari ¶ 1.)  Joyce Britton was employed as a server from June 2006 through January 2007.  (Pls.' Mem., Ex. 5, Decl. of Joyce Britton ¶ 1.)  Michael Hicks was employed as a server from June 2006 through January 2007.  (Pls.' Mem., Ex. 6, Decl. of Michael Hicks ¶ 1.)

Plaintiffs submitted a presumably typical franchise agreement AppleIllinois entered into with

---

[4] A separate lawsuit, *Oropeza v. AppleIllinois,* LLC, No. 06 C 7097 (N.D. Ill.), brought by two persons employed by AppleIllinois as kitchen managers, was filed as an FLSA "opt-in" class action on behalf of similarly situated persons employed by AppleIllinois who were not paid at the overtime rate for hours worked in excess of 40 hours per week.  The plaintiffs in that case also bring claims on their own behalf only under the IMWL, IWPCA, 42 U.S.C. § 1981, and Title VII.

[5] The number of restaurants AppleIllinois has owned and operated has fluctuated some through the years.  In 2009, AppleIllinois owned and operated 34 Applebee's restaurants.  (*See* Cortner Decl. ¶¶ 5-6.)

Applebee's International, Inc. (Pls.' Suppl. Exs., Ex. 53, Applebee's Neighborhood Grill & Bar Franchise Agreement ("Franchise Agreement").)[6] As relevant to the present motion, the Franchise Agreement requires AppleIllinois to operate the restaurants in conformity with Applebee's International's comprehensive restaurant system, adhering to its standards and policies. (Franchise Agreement Sect. 2.) As a franchisee, AppleIllinois is responsible for the restaurants' compliance with Applebee's International's operating standards, methods, techniques and material, and for training restaurant employees in accordance with those standards, methods and techniques. (Franchise Agreement Sect. 6.) The Franchise Agreement also requires AppleIllinois to use a point of sales ("POS") electronic recordkeeping system provided by Applebee's International, and to complete and submit reports to Applebee's International on a weekly, monthly and annual basis containing specific financial and sales data. (Franchise Agreement Sect. 10.) As a result, the records of AppleIllinois' various restaurants are meant to be kept in a uniform manner. Plaintiffs submitted sample computer printouts of "payroll details reports" from the POS system. (Pls.' Suppl. Exs., Exs. 50, 51.)

To operate its restaurants, AppleIllinois employs various hourly employees, who are divided into "directly tipped positions" (servers, bartenders, and car side servers), "in-directly tipped positions" (hosts/hostesses); and "non-tipped positions" (line cooks/Expo [expediting], General

---

[6] The Franchise Agreement submitted by Plaintiffs is dated May 31, 2006, and pertains to the operation of an Applebee's restaurant located at 7519 South Cicero Avenue, Chicago, Illinois. (Franchise Agreement preamble and ¶ 1.) Seemingly, AppleIllinois entered into a separate franchise agreement for each Applebee's restaurant it operates in Illinois, but only portions of that particular Franchise Agreement were tendered to the court. AppleIllinois has not suggested that the Franchise Agreement for Cicero Avenue differs materially from agreements relating to other locations. Thus, the other franchise agreements are presumed to be substantially similar to the one in the record.

Utility (GU) workers, prep cooks and service/kitchen professionals). (Pls.' Suppl. Exs., Ex. 52, Apple Sauce, Inc./AppleIllinois, LLC Corporate Policy ("AppleIllinois Wage Policy") at 11.)[7] AppleIllinois pays the "directly tipped" and "in-directly tipped" positions at the "tip credit" rate, that is, an amount less than the prevailing minimum wage, taking an allowance (or tip credit). (*Id*. at 11; *see also, e.g.,* Defs.' Mem., Ex. 80, Decl. of Steven Schiller ¶ 4; Pls' Mem., Ex. 42, Decl. of Juan Oropeza ¶ 4.) Non-tipped employees are to be paid minimum wage or above. (Pls.' Suppl. Exs., Ex. 52 at 11.)

*The motion for class certification*

Plaintiffs propose two IMWL classes and one IWPCA class. The first proposed IMWL class is defined as:

> All persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip-credit wage rate, and who performed non-tipped duties, like dishwashing, for which they did not receive minimum wage.

(Pls.' Mem. at 8.) The second proposed IMWL class, which is a subset of the first, is defined as:

> All persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip-credit wage rate, who performed non-tipped duties, like dishwashing, for which they did not receive minimum wage and who worked more than forty (40) hours in any individual workweek, but did not receive overtime pay at the rate of one and one-half times their regular rate of pay for all time in excess of forty (40) hours.

---

[7] At the argument on the motion, counsel for AppleIllinois stated that Apple Sauce, Inc. is an independent company providing AppleIllinois with administrative, legal and human resource services and support for a fee. According to counsel, AppleIllinois' executive committee establishes the policies and practices for all of AppleIllinois' restaurants, yet maintains a lean administrative staff, consisting of a human resources manager who, in turn, takes guidance from Scott Cortner, Vice President of Human Resources at Apple Sauce, Inc., on training and administrative functions.

(*Id*. at 9.)  Plaintiffs' proposed IWPCA class is defined as:

> All persons employed by Defendant AppleIllinois, LLC, as hourly employees from October 6, 2001, to the conclusion of this action who were not paid for all time worked in individual workweeks.

(*Id*.) Under those definitions, the IMWL classes would be made up of tipped employees, like servers and bartenders, while the IWPCA class would be made up of hourly workers including so-called "back of the house" workers such as cooks, as well as tipped employees like servers and bartenders.

 In support of their motion, Plaintiffs submitted the declarations of 42 former AppleIllinois employees.  These declarants, primarily servers, but also a few bartenders, hosts/hostesses, carside servers and kitchen managers, were employed at 26 different AppleIllinois locations for varying lengths of time.  (*See* Pls.' Mem., Exs. 2-43.)  Opposing certification, AppleIllinois submitted the declarations of 95 current employees working at approximately 26 different AppleIllinois restaurants. (Defs.' Mem., Exs. 1-95.)

*The tip credit wage rate*

Some background on the "tip credit wage rate" is necessary in order to understand Plaintiffs' claims.  The IMWL requires employers to pay workers (with some exceptions) a minimum hourly rate. 820 Ill. Comp. Stat. §105/4(a)(1).  However, for employees "engaged in an occupation in which gratuities have customarily . . . been recognized as part of the remuneration," the employer may calculate as part of the hourly wage rate an allowance for gratuities not to exceed 40% of the applicable minimum wage rate. 820 Ill. Comp. Stat. § 105/4(a)(1)(c).  That allowance is the "tip credit."

The FLSA also allows a tip credit, subject to certain conditions:

The additional amount on account of tips may not exceed the value of the tips

actually received by an employee. The [tip credit] shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).

The FLSA is relevant to Plaintiffs' IMWL claims because the IMWL parallels the FLSA and, as the parties agree, the same analysis generally applies to both statutes. (*See* Defs.' Mem. at 2; Pls.' Mem. at 4 n. 7 (citing, *inter alia*, *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n. 3 (7th Cir. 1993).) *See also Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 CV 5755, 2004 WL 1882449 at *4 (N.D. Ill. Aug. 18, 2004) (citing *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 4th Dist. 1987)); *O'Brien v. Encotech Constr.,* No. 00 CV 1133, 2004 WL 609798 at *7 (N.D. Ill. Mar. 23, 2004). The Illinois Administrative Code also provides that FLSA regulations are to be used as guidance in interpreting the IMWL. Ill. Admin. Code tit. 56, pt. 210.120 (2009).

The FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers. *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 282 (7th Cir. 1993) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The employer bears the burden of proving its entitlement to exemptions. *Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002). Likewise, the employer bears the burden of proving its entitlement to the tip credit.

Section 3(m) of FLSA makes clear the intent of Congress to place <u>on the employer</u> the burden of proving the amount of tips received by 'tipped employees', and the amount of tip credit, if any, which the employer may claim. Since Sec 3 (m) is not an exemption from the MW [minimum wage], but merely allows the employer to claim up to 40 percent of the MW as tip credit, the employer is responsible for ascertaining that the MW provisions are complied with in compensating 'tipped employees.'

U.S. Dept. of Labor, Field Operations Handbook § 30d00(b) (Rev. 563) (Dec. 9, 1988) (emphasis

in original). *Accord Bernal v. Vankar Enterprises, Inc*., 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) ("Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits") (citing among others *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage.") The IMWL was also enacted to protect employees. *Lewis v. Giordano's Enterprises, Inc.*, No. 1-08-2944, ___ N.E.2d ___, 2009 WL 5125252 *12 (Ill. App. Dec. 23, 2009). Under the IMWL, the employer has the burden of providing evidence supporting the tip credit allowance:

> The Director shall require each employer desiring an allowance for gratuities to provide substantial evidence that the amount claimed, which may not exceed 40% of the applicable minimum wage rate, was received by the employee in the period for which the claim of exemption is made, and no part thereof was returned to the employer.

820 Ill. Comp. Stat. 105/4 (c).

To claim a tip credit, AppleIllinois is obligated to notify its tipped employees of the tip credit provisions of the FLSA. 29 U.S.C. § 203(m). As further discussed below, the parties dispute the extent to which AppleIllinois provides the notice and whether the notice it provides is legally adequate.

*Tip pooling*

Although both directly and in-directly tipped positions are paid at the tip credit rate, AppleIllinois maintains different tip practices for each position. Servers receive tips directly from customers but give a portion of those tips to hosts and bartenders through AppleIllinois' tip sharing policy. (*See, e.g.,* Oropeza Decl. ¶ 5; Defs.' Mem., Ex. 1 Decl. of Brian Ackerman ¶¶ 5, 21, 22.)

Bartenders receive tips directly from customers, but they also receive money by sharing tips with other bartenders and through tip pooling with servers. (*See, e.g.,* Ackerman Decl. ¶¶ 5, 49-51; McCaster Decl. ¶¶ 2, 8.) Hosts and hostesses receive money through tip pooling with servers, but generally do not receive tips directly from customers. (*See, e.g.,* Pls.' Mem., Ex. 38, Decl. of Lorayne Williams ¶ 2; Defs.' Mem., Ex. 64, Decl. of Brent Perrotti ¶ 12.)

Pursuant to AppleIllinois' tip sharing policy, servers contribute, or "tip out," the equivalent of 2.5% of their sales each shift to a pool, which is then shared with hosts/hostesses and bartenders. (Cortner Decl. ¶ 15.)[8] It is unclear whether a server's contribution is calculated according to the server's gross sales or net sales. Plaintiffs state that servers contribute 2.5% of "gross" sales each shift. (Pls.' Mem. at 3; *see also* Oropeza Decl. ¶ 5.) The declarations of former servers submitted by Plaintiffs, however, state simply that servers contributed a percentage of the "sales [the server] rang up in a given shift." (*See, e.g.*, Pls.' Mem., Ex. 2, Decl. of Glenn Driver ¶ 2; Mallari Decl. ¶ 2.) AppleIllinois says that servers contribute a percentage of their "net" sales. (Answer ¶ 24; *see also, e.g.,* Ackerman Decl. ¶ 22; Ducat Decl. ¶ 26.)

There is evidence suggesting that AppleIllinois managers do not provide or retain a reconciliation of the tip pool funds, and that, on occasion, they used money from the tip pool to make up for shortages in the cash register and to cover the bill of "walk off" customers. (Driver Decl. ¶ 13; McCaster Decl. ¶ 8; Pls.' Mem., Ex. 18, Decl. of Robert Cantu ¶ 6, Ex. 40, Decl. of Valerie Zoppa ¶ 6, Ex. 41, Decl. of Jennifer Swords ¶ 11; Defs.' Mem., Ex. 41, Decl. of Adam Kurdziel ¶ 62, Ex. 64, Perrotti Decl. ¶ 13.)

---

[8] Some stores have a lower tip pool rate if hosts were not scheduled for a shift, including at the Ford City and Homewood locations. (Defs.' Mem., Ex. 16, Decl. of Diana Ducat ¶ 26, Ex. 35, Decl. of Chamora Ivery ¶ 23.)

# LEGAL STANDARD

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.* 109 F.3d 338, 334 (7th Cir. 1997)).

To have a class certified, Plaintiffs must satisfy the four prerequisites of Fed. R. Civ. P. 23(a): (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Plaintiffs must also satisfy at least one of the subsections of Rule 23(b). *See Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Plaintiffs here seek certification under Rule 23(b)(3), which requires them to demonstrate that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]. Rule 23(b)(3) includes a list of factors for courts to consider in analyzing the predominance and superiority criteria: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of litigation already commenced by the class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. The Rule 23(b)(3) manageability requirement "encompasses the whole range of

practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974).

In deciding whether to allow a case to proceed as a class action, a court should make whatever factual and legal inquires are necessary under Rule 23. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). However, the decision on class certification turns on whether the requirements of Rule 23 are met, not on the merits of the claims. *Eisen*, 417 U.S. 177; *Thomas v. City of Peoria*, 580 F.3d 633, 635 (7th Cir. 2009). Thus, the "focus [is] not [on] the substantive strength or weakness of the plaintiffs' claims, but rather whether the path that will need to be taken to decide the merits renders the case unsuitable for class treatment." *George v. Kraft Foods Global, Inc.* 251 F.R.D. 338, 343 (N.D. Ill. 2008) (citations omitted).

As the party seeking class certification, Plaintiffs bear the burden of demonstrating that certification is proper. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006) (citing *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)). They must also provide a workable class definition by showing that the members of the class are identifiable. *Id.* Failure to establish any one of the requirements precludes class certification. *Retired Chicago Police Assn. v. City of Chicago*, 7 F.3d 584, 596 (7th Cir 1993).

## DISCUSSION

### I.     The numerosity and adequacy requirements

The numerosity requirement means that proposed class must be so numerous that joinder of all members is impractical. Rule 23(a)(1). Plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. *See Marcial v. Coronet Ins. Co.*,

880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. *See Hispanics United of DuPage Co. v. Village of Addison, Ill.*, 160 F.R.D. 681, 688 (N. D. Ill. 1995) (quotations and citations omitted).

AppleIllinois does not dispute that the requisite numerosity is established for any of the proposed classes. Plaintiffs' review of AppleIllinois' records shows that from October 2003 through mid-2007, AppleIllinois employed in excess of 10,000 people as tipped employees and 18,000 as hourly workers. (Pls.' Mem. at 10, Ex. 44, Decl. of Adriana P. Rodriguez ¶¶ 3, 4.) Accordingly, each of the proposed classes is so numerous that joinder is impracticable.

The named plaintiffs must fairly and adequately protect the interests of the class. Rule 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police*, 7 F.3d at 598 (internal quotations and citations omitted).

AppleIllinois does not challenge Plaintiffs' showing of adequacy of representation. Plaintiffs' counsel is competent and experienced in FLSA and Illinois wage law class action suits and have acted as representative counsel in numerous actions in federal and state court. (Pls.' Mem., Ex. 48, Decl. of Douglas Werman ¶¶ 4, 5; Ex. 49, Decl. of Jamie Sypulski ¶ 5.) The named plaintiffs here have a sufficient interest in the outcome of the case to ensure their vigorous advocacy, and there are no indications that their claims conflict with those of other members of the proposed classes. Accordingly, this element is also satisfied.

Because AppleIllinois contests that the other requirements of class certification are met, those requirements are discussed in connection with each of Plaintiffs' claims.

## II.     Plaintiffs' IMWL tip credit claims[9]

Plaintiffs assert that AppleIllinois violated the IMWL by failing to pay tipped employees the minimum wage because AppleIllinois improperly took a tip credit in calculating wages paid to its tipped employees.  They claim that AppleIllinois was not entitled to take the tip credit because it had certain policies and practices that violated the tip credit regulations in four different ways:

1.     By failing to inform tipped employees of the provisions of the tip credit subsection of the FLSA (Third. Am. Compl. ¶ 22);

2.     By requiring tipped employees to contribute 2.5% of sales to a tip pool, which Plaintiffs allege is excessive and beyond what is customary and reasonable (*id.* ¶¶ 24-25);

3.     By using the tip pool money for AppleIllinois' own purposes, for example, to make up alleged shortages in the bar cash register (*id.* ¶ 24); and

4.     By requiring tipped employees to perform unrelated, non-tip producing duties while continuing to pay them at the reduced tip credit rate (*id.* ¶ 23).

Rule 23(d)(4) permits an action to be brought or maintained as a class action with respect to "particular issues."  Accordingly, this opinion considers whether class certification is appropriate as to any of the four issues that make up this IMWL claim.

---

[9] Discussed separately below is Plaintiffs' claim that AppleIllinois violated the IMWL by failing to record – and therefore failing to pay for – all hours worked.

A.      Failure to notify tipped employees of tip credit provisions of Subsection 203(m)

*The issue*

Plaintiffs allege that AppleIllinois failed to provide members of the IMWL class proper notice of the tip credit provisions of the FLSA as required under 29 U.S.C. § 203(m).  (Pls.' Mem. at 7.)  For an employer to claim a tip credit, it must give the employee proper notice that it is crediting the employee's tips against its minimum wage obligation.  The FLSA states in relevant part:

> The preceding 2 sentences [relating to the tip credit] shall not apply with respect to any tipped employee *unless such employee has been informed by the employer of the provisions of this subsection*, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (emphasis added).  "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage . . . ." *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 403 (3rd. Cir. 1994) (citation omitted).

Neither the FLSA nor the Department of Labor ("DOL") regulations define what constitutes adequate notice, and the Seventh Circuit has not addressed that issue.  Other courts of appeals have concluded that, at a minimum, the employer must inform its tipped employees that it intends to treat tips as satisfying part of its minimum wage obligation.  *See Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 299 (6th Cir. 1998); *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) (reading "section 3(m) [29 U.S.C. § 203(m)] to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations").

AppleIllinois' response to the present motion focuses primarily on the merits of the issue, arguing that the evidence shows that the "vast majority of members, and perhaps all members" of the putative class were notified of the provisions of the tip credit law. (Defs.' Mem. at 28.) In fact, AppleIllinois had earlier filed a motion for partial summary judgment on that issue, which was denied without prejudice. (*See* Am. Mot. Partial Summ. J. on Count IV [dkt 73]; Order Sept. 23, 2008 [dkt 86].) On the present motion, however, the question is not whether AppleIllinois has met the notice requirement, it is whether Plaintiffs have demonstrated that the class action mechanism is appropriate for resolving this dispute.

According to AppleIllinois' Regional Human Resources Manager, Marty Sarsany, it is AppleIllinois' policy and practice to inform each tipped employee orally that AppleIllinois will take a tip credit against the minimum hourly wage, to post state and federal department of labor posters in well-traveled areas of each restaurant's kitchen, and to distribute tip credit information forms to each tipped employee upon hire. (Defs.' Local R. 56.1(A)(3) Stmt., Ex. A, Decl. of Marty Sarsany ¶¶ 5, 6.) [Dkt 68.][10]

According to Mr. Sarsany, upon employment, hourly tipped employees receive a packet of information including the Employee Handbook which contains AppleIllinois' "Voluntary Tip-Sharing Agreement" ("Tip-Sharing Agreement").[11] (Sarsany Decl. ¶ 17.) The Tip-Sharing

---

[10] AppleIllinois submitted Mr. Sarsany's declaration conjunction with its earlier motion for partial summary judgment. That declaration and other exhibits AppleIllinois submitted suggest what AppleIllinois' evidence would be as to its policy and practice regarding notice. Accordingly, this opinion refers to Mr. Sarsany's declaration and other exhibits where helpful to the analysis of the present motion.

[11] Both parties submitted copies of the Tip-Sharing Agreement. The copy submitted by Plaintiffs differs slightly from the version submitted by AppleIllinois, but the content appears the same. (*Compare* Pls.' Mem., Ex. 47 *with* Defs.' Mem., Ex. 103.) For consistency, this opinion will

Agreement states in part:

> I understand that if my regular hourly wage is less than standard minimum wage, then part of the tips I receive may be used by my employer to satisfy minimum wage requirements.

(*Id*. at Ex. A-6.)  The remainder of the form addresses the restaurant's tip pool and the manner in which tipped employees may participate in the pool.  (*Id*.)  According to Mr. Sarsany, each tipped employee is required to sign the form, and a copy is maintained in the employee's personnel file. (Sarsany Decl. ¶ 19.)  The Tip-Sharing Agreement directs managers to place the form in the employee's file.  (*Id*. at Ex. A-6.)  Mr. Sarsany states that he reviews each employee's personnel file to ensure that it contains a signed copy of the Tip-Sharing Agreement.  (Sarsany Decl. ¶ 19.)

In response to the current motion, AppleIllinois submitted declarations of at least three current general managers, all of whom state that they "explain to all tipped employees [upon hire and during the orientation process] that tipped employees receive the current Illinois tip credit rate, which is an amount less than minimum wage, supplemented by the tips they receive."  (Defs.' Mem., Ex. 17, Decl. of Jay Dye ¶ 5; Ex. 38, Decl. of Christos Karountzos; Ex. 80 ¶ 8, Schiller Decl. ¶ 5.) AppleIllinois' also states that it is its policy to display two posters in each of its restaurants: one published by the Illinois Department of Labor and one by the U.S. Department of Labor.  (Sarsany Decl. ¶¶ 5-6, 9, 11, 14, 15.)

AppleIllinois also submitted declarations of current employees stating: "I also remember signing a tip-sharing agreement stating that I would be paid less than minimum wage plus tips." (Perrotti Decl. ¶ 8; Ducat Decl. ¶ 9; Defs.' Mem., Ex. 9, Decl. of Carleen Cavanaugh ¶ 14.)  Some declarations of current employees also state: "I was told by management during orientation when I

cite to AppleIllinois' version.

first started that I would be paid less than minimum wage plus tips." (Cavanaugh Decl. ¶ 14; Ducat Decl. ¶ 9.) Other servers state simply: "Throughout my employment, management has made me aware of the fact that my compensation is made up of an amount less than minimum wage plus tips." (Ackerman Decl. ¶ 6, Defs.' Mem., Ex. 4, Decl. of Heidi Bennigen ¶ 7.)

Plaintiffs claim that the Tip-Sharing Agreement is inadequate both as to wording and substance. (Pls.' Mem. at 8.) They also dispute AppleIllinois' claims about its notification practices. Plaintiffs submit declarations of former tipped employees who state: "At no time when I began working at Applebee's, nor at any time during the course of my employment, was I ever informed about the provisions of the tip credit law." (Driver Decl. ¶ 14, McCaster Decl. ¶ 9, Pls.' Mem., Ex. 12, Decl. of Elizabeth Boedeker ¶ 5.)

*The class definition*

As stated above, Plaintiffs' proposed class for IMWL claims, including this issue, consists of tipped employees who performed non-tipped duties but were paid at the tipped credit rate. However, Plaintiffs' complaint on this issue is not limited to tipped employees performing non-tipped duties. (*See* Third Am. Compl. ¶ 22 (stating "Defendants did not inform their tipped employees of the provisions of the tip credit subsection").) Plaintiffs' counsel acknowledged at the argument that if Plaintiffs prevail on this issue, it would, in their view, invalidate AppleIllinois' ability to take the tip credit for any tipped employee. Accordingly, the proper class as to this issue is: all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate.

*Commonality and predominance*

A named class representative may sue on behalf of a class only if there are questions of law or fact common to the class. Rule 23(a)(2). "The commonality requirement is not difficult to meet." *Smith v. Aon Corp*., 238 F.R.D. 609, 614 (N.D. Ill. 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of fact is said to exist where a defendant has "engaged in standardized conduct towards members of the proposed class." *Id*.

Predominance tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although related to Rule 23(a)'s commonality requirement, the predominance inquiry is "far more demanding." *Id*. at 624. "The Rule 23(a)(2) prerequisite requires that common questions exist. Rule 23(b)(3) requires that they predominate. . . . [I]f the predominance standard is met, the Rule 23(a)(2) prerequisite is necessarily satisfied." Alba Conte & Herbert Newberg, *Newberg on Class Actions*, vol. 2, § 4:22 at 152-53 (4th ed. 2002). Plaintiffs' burden at the class certification stage is not to prove every element of liability, but rather to demonstrate that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members. *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 311-312 (3rd Cir. 2008). The fact that the extent of each class member's personal damages might vary does not preclude certification "if there are substantial common issues that outweigh the single variable of damages amounts." *Arreola*, 546 F.3d at 801. But plaintiffs must show that the issues common to the class outweigh any individual questions. *See Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 837-838 (N.D. Ill. 2008); *Dhamer v.*

*Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529 (N.D. Ill. 1998).

The common question on this issue is whether AppleIllinois provided proper notice of the tip credit provisions of Subsection 203(m) to its tipped employees. Because AppleIllinois contends that it has a standardized policy and practice in place to provide such notice to all its tipped employees, this issue is common to the class.

Likewise, the common questions predominate over questions relating to any class member. The existence of AppleIllinois' policy regarding notification under Subsection 203(m), the manner in which the policy is carried out, and whether those policies and practices are adequate as a matter of law are all susceptible to common proof, a conclusion which is reinforced by the materials submitted by AppleIllinois in connection with its earlier motion for partial summary judgment.

*Typicality*

The proposed class representatives' claims must be typical of the putative class. Rule 23(a)(3). The typicality requirement is closely related to the commonality requirement, *Keele*, 149 F.3d at 595, and is "meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large," *Oshana*, 472 F.3d at 514 (internal quotations and citations omitted). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Id*. (internal quotations and citations omitted). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). "Typicality refers to the nature of the claims of the representative, not the individual

characteristics of the plaintiff." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998). Typicality is a "low hurdle" that "requires neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Assn. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005).

Here, the class representatives' claims are typical of the class as a whole. They claim that AppleIllinois policies and practices regarding notice were not adequate. AppleIllinois does not suggest that the proposed class representatives were treated differently from other AppleIllinois employees under what AppleIllinois claims is a standard policy and procedure. The typicality requirement has been met.

*Superiority*

The court must consider whether the proposed class action is superior to other methods available for resolving the claim. Rule 23(b)(3). A class should be certified when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory comm. n. (1966)).

Such is the case here. Because AppleIllinois claims to have uniform practices and procedures about tip credit notice applicable to all of its restaurants and all of its tipped employees, the issue of whether that practice is legally sufficient is most efficiently determined on a class basis.

AppleIllinois argues in a general way that the provision of attorneys' fees and enhanced damages for violations of the IMWL and IWPCA provide litigants sufficient incentive to bring

individual claims. (Defs.' Mem. at 30.) Notably, with the exception of the *Oropeza* case described in note 4, no other case against AppleIllinois has been brought to the court's attention, and the *Oropeza* case does not raise the issue of tip credit notice. Furthermore, individual adjudication of each potential class member's claim would impose a burden on the court and be inefficient for AppleIllinois as well as for the class members. It is hard to imagine that 10,000 individual lawsuits would be a more efficient way for the court to resolve this issue, or that AppleIllinois really wants to defend 10,000 lawsuits with the potential for an award of attorneys' fees to successful plaintiffs in each case.

Significantly, this case originated in the Illinois state courts and was removed by AppleIllinois to the federal court because of the Plaintiffs' individual FLSA claims. The claims for which class certification are sought are all claims based on Illinois law. Illinois courts recognize that the IMWL and IWPCA were enacted to protect employees. *Lewis*, 2009 WL 5125252 at *12. In *Lewis*, the court also recognized the value of the court's supervision of an IMWL class action rather than individual settlements as a way of achieving that public policy. *Id.* A number of courts in this district have recognized that "a defendant's removal of a state class action significantly diminishes the merits of its challenge to the superiority of class certification under Rule 23(b)(3)," particularly in the context of IMWL claims. *Acosta v. Scott Labor, LLC*, No. 05 C 2518, 2006 WL 27118 at *4-5 (N.D. Ill. Jan. 3, 2006) (discussing *Sorensen v. CHT Corp.*, 2004 WL 442638 (N.D. Ill. 2004) and *Yon v. Positive Connections, Inc.*, 2005 WL 628016 (N.D. Ill Feb. 2, 2005)).

Class certification is the superior method of resolving this issue. Accordingly, a class consisting of all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage

rate is certified with respect to the issue of tip credit notification.

B.    <u>Excessive Tip Pool Contributions</u>

*The issue*

Plaintiffs claim that AppleIllinois' policy of requiring servers to contribute 2.5% of the sales each shift is excessive and beyond what is "customary and reasonable." (Pls.' Mem. at 3, 6-7.) Neither the FLSA nor the interpreting DOL regulations define the parameters of a permissible tip pooling arrangement. An opinion letter issued by the Administrator of the Wage and Hour Division of the DOL, however, provides: "A valid tip pooling arrangement . . . cannot require waiters and waitresses to contribute a greater percentage of their tips than is *customary and reasonable*." Wage and Hour Administrator Opinion WH-380, 1976 WL 41732 (March 26, 1976) (emphasis added). Thus, the limitation that a tip contribution be no more than is "customary and reasonable" is not contained in the FLSA, but rather is a standard formulated by the DOL in a 1976 opinion letter. The FLSA requirement of a minimum wage does, however, impose an absolute limit on tip sharing: A server could not be required to tip out such a high percent of tips that the server no longer received the minimum wage. *Kilgore*, 160 F.3d at 303 n. 7.

In the absence of express limitations under the FLSA, courts have upheld a variety of tip pool arrangements. *See, e.g., Kilgore*, 160 F.3d at 302-03 (three percent of total gross sales held valid); *Dole v. Cont. Cuisine, Inc.*, 751 F. Supp. 799, 803 (E.D. Ark. 1990) (five to seven percent of server's daily gross sales held valid); *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 718 n.16 (N.D. Ind. 1998) (ten percent of tips not presumptively invalid); *but see Dole v. L & J, Inc.*, No. LR-C-89-339, 1990 WL 250980 at *1-2 (E.D. Ark. Mar. 7, 1990) (four percent of daily gross sales held invalid because tips

were shared with employer and because contribution was not customary and reasonable). The question on the present motion, however, is not whether the 2.5% tip pool contribution is valid. Rather, it is whether Plaintiffs can satisfy the elements necessary for class certification pursuant to Rule 23(a) and (b).

*The proposed class*

At the argument, Plaintiffs' counsel acknowledged that the proposed IMWL class definition does not fit this claim. Plaintiffs contend that if the tip pool is unlawful, AppleIllinois is not entitled to take a tip credit for all employees who participated in the tip pool, not merely (as Plaintiffs' class definition suggests) tipped employees earning a tip credit wage rate who performed non-tipped duties for which they did not receive minimum wage. Rather, the class for this claim should include all tipped employees who participated in the tip pool.

Also, AppleIllinois states that until June 13, 2005, servers contributed the equivalent of 2% of their sales each day to the tip pool, not the 2.5% that Plaintiffs claim is unreasonable and excessive. (*See* Cortner Decl. ¶ 14.) Plaintiffs, on the other hand, have submitted declarations by former servers whose employment by AppleIllinois ended before June 13, 2005 but who say that they were required to tip out 2.5%. (*See., e.g.,* Pls.' Mem., Ex. 7, Decl. of Michael Annaballi ¶¶ 1, 2; Boedeker Decl. ¶¶ 1,2; Ex. 13, Decl. of Rachel Boller ¶¶ 1, 2.) The class for this issue, then, is: All persons employed by Defendant AppleIllinois, LLC, from October 6, 2003 to the conclusion of this action who worked as tipped employees earning a sub-minimum, tip credit wage rate and who participated in AppleIllinois' tip pool at a time when AppleIllinois required a contribution by servers of 2.5% of sales.

*Class certification requirements*

AppleIllinois does not really deny that the requirements of commonality and typicality can be met with respect to this issue. AppleIllinois has a standard tip sharing policy that applies to all of its restaurants, according to which servers currently contribute, or tip out, the equivalent of 2.5% of their sales each shift to a larger pool, which is then shared with hosts/hostesses and bartenders. The common question is the legality of that policy. No individual inquiry is necessary because the tip sharing policy uniformly applies to all tipped employees at all AppleIllinois restaurants. AppleIllinois does not suggest any individual questions that might predominate over the common question. The named plaintiffs' claims are typical of the class, because they arise from the same general course of conduct. The requirements of commonality, typicality and predominance are met as to this issue.

Although AppleIllinois argues that the tip pooling issues fails to meet the predominance requirement, its real argument is that "AppleIllinois' practice is not unlawful." (Defs.' Mem. at 28.) In fact, AppleIllinois is asking the court to decide the merits of the claim before considering whether a class should be certified. (*See* Defs.' Mem. at 28 n.26.) That is contrary to the directives of the Supreme Court and Seventh Circuit. *See Eisen*, 417 U.S. 177; *Thomas*, 580 F.3d at 635. "First ruling on the merits of the federal claims, and then denying class certification on the basis of that ruling, puts the cart before the horse . . . ." *Thoma*s, 580 F.3d at 635 (citing prior cases). Among other objections to proceeding that way, to do as AppleIllinois suggests would deprive AppleIllinois of the benefit of res judicata against the other members of the class if AppleIllinois prevails. *See id.* (observing that the defendants' resistance to class certification was "perverse[ ]" because "if the class had been certified the judgment for the defendants would spare them further suits by members of the

class").

Furthermore, the merits of this issue are not as clear-cut as AppleIllinois suggests. Although the Eleventh Circuit declined to give the DOL opinion letter even persuasive value (*Kilgore*, 160 F.3d at 303), other courts have not been as dismissive. *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) (recognizing DOL opinion letters for "some persuasive authority" although upholding tip pool in that case). In *Dole v. L & J, Inc.*, 1990 WL 250980 at *2, the court, citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), applied the "customary and reasonable" test from the opinion letter as one reason for finding the tip pool invalid.[12]

Moreover, as the Eleventh Circuit acknowledged, even disregarding the opinion letters, the minimum wage imposes an absolute limit on any tip sharing arrangement. *Kilgore,* 160 F.3d at 303 n.7. There is some evidence that in practice AppleIllinois' tip pooling arrangement does not always result in tipped employees being paid the minimum wage, and that a manual payroll review and adjustment is required.[13] Plaintiffs are entitled to an adjudication on the merits of this issue,

---

[12] In *Skidmore*, the Court stated that the opinions of the Administrator of the Wage and Hour Division are not controlling authority but constitute a body of experience and informed judgment to which courts and litigants properly may resort for guidance. 323 U.S. at 140. The weight to be given that judgment in a particular case depends on the opinion's persuasive value. *Id.*

[13] AppleIllinois submitted the declarations of several current general managers who state, substantially, the same thing: "When I review the payroll report at the end of each payroll period, I verify that for each of the tipped employees' shifts, the amount of tips that particular tipped employees received plus the tip credit hourly rate equals at least the minimum wage for each hour that employee worked." (*See, e.g.,* Defs.' Mem., Ex. 37, Decl. of Derek Jontz ¶ 12; *see also* Defs.' Mem., Exs. 17, 38, 65, 75, 77, 80.) The fact that general managers undertake this review every pay period suggests the possibility that an employee's tips – including the employee's share of the tip pool – plus the tip credit hourly rate might be less than the minimum wage absent such review. Indeed, Mr. Jontz continues:

> When a tipped employee has not received at least the minimum wage for each hour
> worked during a particular shift, I indicate that fact on my payroll report. I indicate

including discovery and the presentation of evidence about the way the tip pool works in practice. Adjudicating this issue on a class basis "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision" as to all servers participating in the pool, the goals of Rule 23. *See Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory comm. n. (1966)). A class action is the superior method of resolving this issue

Accordingly, a class is certified as to this issue consisting of all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate and who participated in AppleIllinois' tip pool requiring servers to contribute 2.5% of sales.


C.      Misuse of Tip Pool Proceeds

        *The issue*

Plaintiffs allege that AppleIllinois violated the IMWL by using tip pool contributions for impermissible purposes such as covering cash register shortages. (Pls.' Mem. at 3, 7.)  If the employer retains any of the tips, the tip pool is deemed invalid, and the employer loses the tip credit. *See Bernal*, 579 F. Supp. 2d 810 (restaurant improperly deducted from servers' paychecks or nightly tips losses due to cash register shortages and unpaid tabs; "To the extent [servers] were not permitted to retain their tips to pay for shortages and unpaid tabs, Defendants disqualified themselves from

---

that fact so that AppleIllinois' payroll department, who receives my payroll report will make an appropriate upward increase to that employee's wages. The employee then receives at least minimum wage for all hours worked.

(Jontz Decl. ¶ 13.)

taking advantage of the FLSA tip credit provisions."); *Brennan v. Haulover Shark and Tarpon Club, Inc.*, No. 74-1276-Civ.,1986 WL 587 at *16 (S.D. Fla. Jan. 27, 1986) (dinner clubs violated minimum wage provisions by withholding percentage of tips for "vacation fund" for long-term employees and requiring employees to pay for shortages caused by "walkouts," mistakes in addition, and returned credit card charges, which reduced their wages to below minimum wage).

### The proposed class

As in the case of the notice issue discussed above, Plaintiffs' proposed class definition is too narrow for this issue. If Plaintiffs were successful in having the tip pool declared invalid, Plaintiffs would argue that AppleIllinois is unable to take the tip credit as to any employees, not merely ones who performed non-tipped duties. The class as to this issue would be all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate. AppleIllinois does not dispute that such a class would satisfy the numerosity requirement.

### Commonality and predominance

To support their claim that AppleIllinois used tip pools improperly, Plaintiffs attach the declarations of some former tipped employees who state that managers would, on occasion, use money from the tip pool to compensate for shortages in the cash register. (*See* Cantu Decl. ¶ 6; Zoppa Decl. ¶ 6; Swords Decl. ¶ 11; McCaster Decl. ¶ 8.) At least one declaration submitted by AppleIllinois of a current Applebee's bartender corroborates Plaintiffs' claim: "On approximately six or seven occasions, my manager took money out of my tip share to make up for a cash register

shortage at the bar." (Perrotti Decl. ¶ 13.) Further, according to at least one of these declarations, managers would not share with tipped employees a reconciliation of the tip pool funds. (Cantu Decl. ¶ 2.) Counsel for AppleIllinois conceded at the argument that the written calculations or "spreadsheets" purportedly used by managers to calculate tip contributions and distributions were neither shared with tipped employees nor retained by AppleIllinois.

AppleIllinois argues these are isolated incidents of a few tipped employees involving a few managers, and there is no existing policy or practice for the use of tip pool funds other than for their intended purpose. (Defs.' Mem. at 16-17.) Further, according to AppleIllinois counsel, these incidents prompted AppleIllinois to investigate, make the injured employees whole and discharge the manager involved. One current Applebee's bartender declares that when there was a discrepancy in the amounts he received from the tip pool, he was reimbursed for the shortage and the manager who kept his tips was terminated. (Kurdziel Decl. ¶¶ 3, 62.) Notably, while plaintiff McCaster declares that AppleIllinois improperly used tip pool proceeds to, for example, cover cash register shortages, he is the only one of the five named plaintiffs to testify to manager's misuse of tip pool money. (McCaster Decl. ¶ 8.)

Plaintiffs have failed to satisfy the commonality requirement with respect to this issue. The declarations of a handful of employees regarding isolated incidents with managers does not present a question of fact common to the class. While there may be more witnesses who can attest to managers' misuse of tip funds, in the absence of any indication of a policy or practice of AppleIllinois of improperly using tip pool proceeds (as opposed to the improper actions of some managers), Plaintiffs have not demonstrated that AppleIllinois engaged in standardized conduct towards members of the proposed class. *See Keele,* 149 F.3d at 594. Having failed to demonstrate

commonality, Plaintiffs have necessarily failed to meet the preponderance requirement.

Accordingly, the motion to certify a class is denied as to this issue. Of course, a finding that class treatment is not appropriate for this issue does not preclude an injured employee from pursuing a claim on an individual basis or the plaintiffs from seeking to certify a class on a restaurant-by-restaurant basis, but that is not the present motion.

D.     Employees paid at the tip credit rate while performing non-tipped duties

*The issue*

An employer may take a tip credit "only for hours worked by [an] employee in an occupation in which he qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59. The regulations recognize that in some situations, however, an employee may be employed in a dual job, such as a hotel maintenance employee who is simultaneously employed as a waiter. 29 C.F.R. § 531.56(e). In such a situation, the employee is considered employed in two occupations and is a tipped employee only for the time he works as a waiter; the employer may not take a tip credit for the time the employee spends in his occupation of maintenance worker. *Id.* The regulations further recognize:

> Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (emphasis added).

The employer must maintain and preserve records that show, among other things, which employees are paid in part by tips, and, for those employees, how many hours in each workday are

worked in occupations in which the employee receives tips and how many are worked in any occupation in which the employee does not receive tips.  29 C.F.R. § 516.28(a).

Plaintiffs here claim that AppleIllinois had a practice of using tipped employees in non-tipped occupations without paying them the minimum wage for that time.  Plaintiffs' claim has two parts: first, that AppleIllinois used tipped workers to do duties like dishwashing that are not related to tipped activities but are really a separate occupation; and second, that AppleIllinois required tipped workers to work "off hours," that is, before and after the restaurant opened for business, which, according to Plaintiffs, can never be a tipped occupation because there are no customers in the restaurant to provide tips.  (Pls. Mem. at 5-6.)  AppleIllinois strenuously argues that this issue cannot be certified for class treatment because the determination of liability would be "restaurant-specific and worker-specific."  (Defs.' Mem. at 16.)

### Similar claims in other cases

A number of other courts have wrestled with similar claims by tipped workers and whether such claims are appropriate for class certification.  In *Dole v. Bishop*, 740 F. Supp. 1221, 1228 (S. D. Miss. 1990), the court found that waitresses at two restaurants owned by the same enterprise were entitled to full statutory minimum wage during time they spent in the afternoon before the restaurant opened doing cleaning and food preparation such as cleaning bathrooms and chopping vegetables, which, the court held, were not incidental to the waitresses' tipped duties.  Notably, *Dole* was not a class action brought by individual plaintiffs, but rather a civil action by the Secretary of Labor.  On the other hand, in *Pellon v. Business Representation Intl., Inc*., 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008), the court rejected a claim by skycaps that the

employer improperly paid them at the tip credit rate. The court held that all of the duties the plaintiffs performed were "at worst" related to their skycap duties and not a separate occupation, even if there was overlap with the duties of other occupations. *Id* at 1313. The court in *Pellon* distinguished the *Dole* case as involving "time spent performing non-waitress duties [that] occurred before the restaurant opened and was easily separable from the time performing waitress duties." *Id*.

The court in *Fast v. Applebee's Intl., Inc.*, 502 F. Supp. 2d 996 (W.D. Mo. 2007), *vacated in part by* No. 06-04146-CV-C-NKL, 2009 WL 4344562 (W.D. Mo. Aug. 26, 2009), initially took a different approach. The plaintiff there claimed, as Plaintiffs do here, that he should have been paid minimum wage, not the tipped wage rate, for time he spent on duties that were unrelated to his tip-producing work as a bartender, but he also claimed that he should be paid minimum wage for non-tipped duties that were related to his bartender work because they exceeded 20% of his total time. *Id*. at 1001. Based on a U.S. Department of Labor Field Operations Handbook interpretation of 29 C.F.R. § 531.56(e), the court initially concluded that a tipped employee's duties must fall into one of three categories: tip-producing duties, duties incidental to tip-producing work, and duties unrelated to tip-producing work. *Id.* at 1002. The court said that the employer could pay at the tip credit rate for the second category only if the employee's time on related duties was less than 20% of his total time. *Id.* The court rejected the defendant's position that the employee could be paid at tip credit rate for all time spent in related duties, even if that time exceeded 20% of his total time. *Id.* at 1003. In a subsequent ruling, the court certified an FLSA "opt-in" class of servers and bartenders who were directed to perform duties that would not generate tips to time in excess of 20% of their shift. *Fast v. Applebee's Intl., Inc.*, 243 F.R.D. 360 (W.D. Mo. 2007). But the court subsequently vacated the original order in part, and directed further briefing on the tip credit issues.

*Fast*, 2009 WL 4344562.

A district judge in this district adopted the recommendation of the magistrate judge to certify a FLSA "opt-in" class but not to certify a Rule 23 class of tipped employees who claimed that the employer required them to perform duties that did not involve customer contact (and thus would not generate tips), including work before and after closing and "sidework" during the time the restaurant was open. *Ervin v. OS Rest. Servs., Inc.*, No. 08 C 1091, 2009 WL 1904544 (N.D. Ill. July 1, 2009). The district judge agreed with the magistrate judge's recommendation to allow conditional certification under the FLSA to a class of tipped employees working in a single restaurant for their claim that the restaurant had a practice of "using tipped employees to do non-tipped jobs." 2009 WL 1904544 at *3. Notably, the standard for conditional certification of an opt-in class is a "low threshold." *Id*. at *4. The district judge further agreed with the magistrate judge that the plaintiffs had not demonstrated that class certification under Rule 23 was a superior method of handling the claims when the FLSA claim had already been certified for opt-in class treatment. *Id*. at *1-3. In this case, however, Plaintiffs' FLSA claims have been brought as individual rather than collective actions.

### Evidence in this case

Between them, the parties in this case have submitted more than 100 declarations by present and former tipped employees, as well as other materials such as AppleIllinois' internal policy documents and POS records. For example, Plaintiffs submitted AppleIllinois' "Position Description" for servers, which lists the specific functions, duties and qualification standards of servers. (Pls.' Mem, Ex. 45.) Servers must be able to "[p]articipate[] in the clearing and resetting

32

of dining room tables," wipe down table tops and legs, pick up debris from the floor and wipe down booth seats. (*Id.*)

Plaintiffs also submitted AppleIllinois' internal "Labor/ Management Standards . . . Best Demonstrated Practices" document. (Pls.' Mem., Ex. 46.) That document states, in part:

> BOH [Back of the House] savings are possible by utilizing FOH [Front of the House] Associates to complete some or all of the following:
>
> • Servers portion prep items during slow times.
> • All FOH Associates can act as the GU for slow shifts.
> • All FOH Associates can act as the Expo during slow times.
> • *When using FOH tipped, and or tipped shared associates to perform BOH functions be sure to have them time in using the appropriate job code.* Utilizing these associates will allow you to not call in additional BOH associates to complete these functions, but at the same time you will be able to field a larger server crew if business levels increase later during the shift.

(*Id.* (emphasis added).)[14]

It is undisputed that "GU" (general utitlity) and "Expo" (expediter) positions are non-tipped occupations requiring at least minimum wage. (Defs.' Suppl. Exs., Decl. of Candy Randall ¶ 6.) Thus, it appears that AppleIllinois anticipated that its tipped employees would actually be in a dual occupation situation as described in 29 C.F.R. § 531.56(e), and directed that the time be recorded separately.

The employees' declarations submitted by both sides confirm that tipped employees were, in fact, regularly used to perform functions like dishwashing, food preparation and cleaning, including vacuuming and cleaning bathrooms. (*See* Pls.' Reply at 4-6, summarizing tasks identified

---

[14] "Front of the House" refers to the area of the restaurant to which diners have access. "Back of the House" refers to the area of the restaurant where food and certain beverages are prepared, plated and placed on trays for service to diners. (Defs.' Mem. at 8 n.6.)

in each of the declarations.) Plaintiffs state in their declarations that they and other tipped employees were required to wash dishes, clean floors and bathrooms, and take out garbage, but were always paid at the tipped credit rate, regardless of the work they were required to do. (*See, e.g.*, McCaster Decl. ¶¶ 2, 4-6.) Plaintiffs Driver, McCaster and Mallari state that when the Ford City restaurant was first opened it was fully staffed with both tipped and non-tipped workers, but in a few weeks the scheduled hours for non-tipped positions like GU and Expo dropped off and the servers were required to do those jobs. (Driver Decl. ¶¶ 4-5; McCaster Decl. ¶¶ 4-5, Mallari Decl. ¶¶ 4-5.)

The POS records submitted by Plaintiffs show the date, time and position each employee clocked in and out, as well as the pay rate for that position. For example, employee number 1207 clocked in on March 23, 2006 at 12:05 p.m as a server at a rate of $3.90 per hour, and clocked out at 4:14 p.m.; that same employee (number 1207) then clocked back in at 6:46 p.m. in an "Expo" position at the rate of $7.00 per hour and clocked out of that position at 7:53 p.m. (Pls.' Mem., Ex. 51 at 1.) POS records apparently exist for all employees at all of AppleIllinois' restaurants during the class period.

At the argument on the motion, Plaintiffs' counsel stated that the records demonstrate a number of facts supporting their claim. First, some tipped employees who submitted declarations stating that they performed GU work like washing dishes recorded no time at the GU non-tipped rate. (*See, e.g.*, Defs.' Mem, Ex. 78, Decl. of Daryl Scarbrough ¶ 46, stating that he washed dishes approximately 500 times between 2003-2008 for 15-20 minutes each time.) Second, the records show that at some restaurants there were two-week pay periods in which no GU workers clocked in, demonstrating, Plaintiffs argue, that tipped workers must have been doing GU duties without clocking in at non-tipped rates, and that AppleIllinois knew or should have known that from its own

records.  (*See* Pls.' Mem, Ex. 50, POS records for the Bolingbrook restaurant from January 8, 2007 to January 21, 2007.)

Defendants argue that trying to recreate the amount of time spent by any tipped employee in non-tipped duties would be a very difficult task, and  impossible on a class-wide basis. They submit declarations to emphasize that the duties of tipped employees, including the amount and type of "side work," varied depending on their role (host, server or bartender) and the shift to which they were assigned.  Some of the employees whose declarations were submitted by AppleIllinois, like Rebecca Morsovillo, state that they were never required to do expediting, mopping floors, etc., because there were always GU, Expo and other workers assigned with the servers.  (*See, e.g.*, Defs.' Mem, Ex. 59, Decl. of Rebecca Morsovillo ¶ ¶ 25, 48.)[15]  On the other hand, Nicole Rataschak, whose declaration was also submitted by AppleIllinois, states that she is regularly assigned daily cleaning tasks such as cleaning blinds and washing windows.  (Defs.' Ex. 70, Decl. of Nicole Rataschak ¶ 33.)

After reviewing the materials submitted by both sides, the court agrees with AppleIllinois that the approach initially adopted by the court in the *Fast* opinion (for which Plaintiffs here originally argued) –  based on a 20% limit on related but non-tipped work – is not workable in a Rule 23 class action setting.  AppleIllinois argues that the more workable approach is to determine whether a particular duty is part of a tipped occupation. (Defs.' Mem. at 22 n. 20.)  This appears to be consistent with the DOL regulation: "Such *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e) (emphasis added).

---

[15] Notably, Ms. Morsovillo has only been employed by AppleIllinois at the Crestwood, Illinois restaurant since April 2007, after the filing of this lawsuit.  (Morsovillo Decl. ¶ 3.)

The parties' use of such terms as "side work," "ancillary duties," "incidental work" "opening work" or "closing work" and the like is unnecessarily confusing. The real distinction is whether a particular task is a *related duty* to the tipped occupation. That a task is performed when the restaurant is closed does not necessarily mean that it is unrelated to the tipped occupation, although the fact that there is no customer interaction may be relevant in determining whether the duty is related to a tipped occupation.[16]

### Commonality and predominance

The common question is whether AppleIllinois required tipped employees to engage in duties unrelated to their tipped occupations without paying them at the minimum wage rate. Plaintiffs claim that, notwithstanding AppleIllinois' expressed policy that time workers spent in BOH occupations was to be clocked in as such, as a standard practice in AppleIllinois restaurants, that time was not separately clocked in, and thus was paid only at the tip credit wage rate. That practice, Plaintiffs claim, disqualifies AppleIllinois from entitlement to pay workers at the tip credit rate. AppleIllinois strenuously disputes the merits of Plaintiffs' claim, but liability is not the issue on class certification.

---

[16] *See, e.g., Dole*, 740 F. Supp. at 1228 (time spent cleaning bathrooms and preparing food had to be paid at minimum wage because those tasks are not incidental to servers' tipped duties, not merely because they were done before the restaurant opened); *Myers*, 192 F.3d at 550-51 (affirming district court's finding that servers who performed duties as "salad preparers" were in a non-tipped occupation because "the salad preparers abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work"); Defs.' Mem., Ex. 106, described as a U.S. Dept. of Labor, Wage & Hour Deputy Administrator Opinion (Dec. 20, 1985), denying tip credit rate for time spent by server before the restaurant opened in which server spent substantial time doing preparatory work for entire restaurant.

To establish the predominance requirement of a class action, Plaintiffs must demonstrate that there is a common method of proof for determining whether there is liability as to the defined class. It was on that point that a similar claim under Connecticut law foundered in *Peruta v. Outback Steakhouse of Fla., Inc.*, 913 A.2d 1160 (Conn. Super. 2006). Based on the limited evidence presented by the plaintiffs in that case, the court in *Peruta* was reluctant to "grapple with" the task of deciding which duties were "service" or "non-service" under the applicable Connecticut regulation. *Id*. at 1171-1174. It also concluded that trying to decide whether more than 20 percent of the servers' time was spent on "non-service duties" might require testimony from individual class members. *Id*. The court distinguished an earlier case, *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 (D. Conn. 2002), in which the defendant had provided a working definition of the duties of the proposed class. *Id.*

In this case, the evidence described above shows that AppleIllinois created and maintained "Position Descriptions" that identified the duties of tipped employees – servers, bartenders and hosts – and duties of non-tipped employees like Expo and GU. Although the interpretation of "related duties" under the FLSA and the regulations (and for purposes of the IMWL) is a legal issue for the court, AppleIllinois' description of the duties of each position gives a starting point that applies to the entire class.

AppleIllinois also encouraged managers in each restaurant to use tipped employees in dual occupations – to perform the duties of both tipped and non-tipped employees. In fact, virtually all of the tipped employees who submitted declarations, even those whose declarations were submitted by AppleIllinois, stated that they performed duties that it might be argued are unrelated to their tipped occupation. The issue on liability is whether in practice that work was separately recorded

and appropriately paid. The records available through the POS system appear to document the answer to that question because they show what positions were filled at what time, and for each employee what time was recorded at the minimum wage rate or above. For example, if it is determined that window washing is not a "related duty" to being a server, the records will show whether Ms. Rataschak was paid at the non-tipped rate for doing that work. As another example, those records will show whether GU and Expo workers were scheduled for the same time periods that Ms. Morsovillo worked as a server at the Crestwood, Illinois restaurant.

AppleIllinois submitted a summary of POS records prepared by its Payroll Manager, Candy Randall, indicating that employees clocked in and clocked out using different codes for tipped positions and codes for non-tipped positions, presumably in accordance with the "Labor/Management Standards . . . Best Demonstrated Practices" document. (Randall Decl. Exs. A, B.) While AppleIllinois' point in submitting that summary was to dispute liability, the summary demonstrates that the merits of Plaintiffs' claim can be determined on a class basis.

Plaintiffs' theory is that AppleIllinois violated the IMWL by systemically using tipped employees to do work not related to their tipped occupation while paying the employees at the tip credit rate for that time. In so doing, Plaintiffs argue, AppleIllinois has forfeited its entitlement to take the tip credit for any of the employees' time. It would be premature to determine what remedy would be appropriate if Plaintiffs prove liability under their theory. However, even if individual calculation of damages were required, that does not foreclose class certification if the issue of liability is amenable to common proof, which appears to be the case here.

*Typicality*

Here, the class representatives' claims are typical of the class as a whole. They claim they were required to perform duties not related to their tipped occupation, such as cleaning and taking out garbage, but were always paid at the tip credit rate. AppleIllinois has not suggested that the records and policies discussed above did not apply to the named plaintiffs. The requirement of typicality is met here.

*Superiority*

Considering the evidence presented, including that described above, under the standards of Rule 23, the court concludes that a class action is superior to other methods of fairly and efficiently adjudicating the controversy. There are no other lawsuits that have been filed by class members against AppleIllinois on this issue, and nothing to suggest that class members have an interest in individually controlling separate actions. Because all of the time and payment records for all of the class members have been recorded and maintained under a centralized POS system, the evidence to determine whether in practice employees were paid minimum wage for time spent in duties unrelated to their tipped occupation can be efficiently presented. In contrast, few individual plaintiffs would have the resources to take discovery about and analyze the POS records. Also, it must be recalled, this issue is part of Plaintiffs' claim under the IMWL, which reflects a public policy to protect employees, and this issue, too, was part of the lawsuit AppleIllinois had removed from the state court. The superior method of adjudicating the issue of liability is not thousands of individual lawsuits but one class action. If there are individual determinations to be made of damages, that does not override the superiority of a class action to determine liability. "The establishment of these

common issues w[ill] allow class members affected by each issue to recover. The individual determination of whether each member was affected is more in the nature of a damages calculation than a liability determination." *Cruz v. Unilock Chicago, Inc.*, 892 N.E.2d 78, 102 (Ill. App. 2008) (reversing denial of class certification and directing trial court to certify a class for claim under IMWL).

Accordingly, a class is certified as to the issue of whether AppleIllinois used tipped employees to perform duties of non-tipped occupations while compensating them at the tip credit rate. That class consists of persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation for which they were not paid at the minimum wage rate.

### III.    Plaintiffs' IMWL and IWPCA "off the clock" time claims

*The issue*

In addition to claiming that AppleIllinois underpaid them because it was not entitled to take the tip rate credit, Plaintiffs claim that AppleIllinois failed to pay for all time worked by hourly employees, either by requiring "off the clock" work or by altering time entries. (Third Am. Compl. ¶ 43.) Plaintiffs allege that AppleIllinois instituted practices that resulted in its employees working certain time without compensation:

> Some employees were instructed by their supervisors to 'punch out,' but continue to work off the clock; some employees were unknowingly clocked out by a manager while they worked; other employees had accrued work time reduced by supervisors.

(*Id.*) The result, according to Plaintiffs, was that AppleIllinois failed to pay Plaintiffs and other

hourly employees (including non-tipped "back of the house" employees as well as tipped employees) for all the time they worked. (*Id*.) Plaintiffs bring that claim under the IWPCA, which requires employers to pay employees "all wages earned." 820 Ill. Comp. Stat. §115/3.

Plaintiffs further assert, on behalf of all tipped employees, that the failure to pay for all hours worked resulted in tipped employees not being paid overtime pay for hours worked in excess of 40 hours, and that if the tipped credit is not allowed for tipped employees' straight hour time, the tip credit must also be disallowed on the overtime rate for tipped employees. (Third Am. Compl. ¶¶ 35-36.) That claim is brought under the maximum hour provisions of the IMWL.[17] Plaintiffs' counsel acknowledged at the argument that, as far as they have learned, time that was recorded as overtime had been paid at the overtime rate.

*The proposed classes*

Plaintiffs seek to certify an IWPCA class consisting of:

All persons employed by Defendant AppleIllinois, LLC, as hourly employees from October 6, 2001, to the conclusion of this action who were not paid for all time worked in individual workweeks.

(Pls.' Mem. at 9.) As Plaintiffs acknowledged at the argument, this claim is limited under the IWPCA to hours not in excess of 40 in a given week, so as not to overlap with the *Oropeza* case. (*See* n. 17 above.) Plaintiffs' IMWL claim is brought on behalf of a class of all tipped employees who have not been paid all overtime wages to which they are entitled. (Third. Am. Compl. ¶ 35.)

---

[17] Plaintiffs' counsel explained at the argument on the motion that the *Oropeza* case was brought on behalf of non-tipped hourly workers for allegedly unpaid overtime under the same theory – that there were unrecorded hours worked. The hourly workers' claims here are for unrecorded, unpaid hours worked not in excess of 40 in any given week.

In their motion for class certification, however, Plaintiffs identify this IMWL class as tipped employees who performed non-tipped duties and who were not paid one-and-one half times their regular rate for all hours worked. (Pls.' Mot. for Class Cert. at 9.) That limitation to "employees who performed non-tipped duties" seems inconsistent with the allegation of the Complaint as well as the gravamen of the claim.

*Commonality and predominance*

Plaintiffs describe the standardized conduct on these claims as AppleIllinois' failure to properly compensate class members for all time worked. (Pls.' Reply at 9.) Challenging certification, AppleIllinois argues that there is no company-wide policy or practice requiring off-the-clock work or calling for the alteration of time entries. Rather, AppleIllinois asserts, the claims of the named plaintiffs are discrete, individualized claims involving isolated incidents at a single location during a discrete time period and are, therefore, neither common nor typical of all proposed class members. (Defs.' Mem. at 15-16, 18.) And, according to AppleIllinois, because these claims cannot meet the commonality or typicality requirements, they necessarily cannot satisfy the more demanding predominance requirement. (Defs.' Mem. at 20.)

Four of the five named plaintiffs state in their declarations that they were asked to punch or clock out of the POS time system before the end of their shift and told to continue to clean or perform sidework. (Driver Decl. ¶¶ 10, 11; McCaster Decl.¶¶ 7, 8; Britton Decl. ¶¶ 6, 7, 9; Hicks Decl. ¶¶ 5, 7, 9.) They also state that managers would clock them out without their knowledge before the end of their shift or would alter their hours in the POS time system. (Driver Decl. ¶ 11; McCaster Decl.¶ 7; Britton Decl. ¶ 9; Hicks Decl. ¶ 9.)

Plaintiffs further support their claim of "off the clock" work with 19 declarations from former tipped employees who worked at 17 different restaurants. (*See* Pls.' Mem., Ex. 7, Decl. of Michael Anaballi; Pls.' Mem., Exs. 9, 10, 11, 14, 15, 17, 21, 22, 25, 26, 27, 29, 31, 33, 35, 37, 38, 41). These declarants state that AppleIllinois managers required them to work before "clocking in" or after "clocking out," and often reduced hours in the system because servers "were generally not permitted to have clock time exceeding 40 hours in a week, regardless of the amount of actual time worked." (Pls.' Mem., Ex. 15, Decl. of Amy Bridgeman ¶ 5, stating that managers would either tell a server to punch out but keep working, or they would reduce hours in the time system; *see also* Ex. 21, Decl. of Rebecca Mikuls ¶ 6, stating, "[W]hen working back-to-back shifts I was required to punch out from my first shift, but then help out in the front of the house or kitchen, then punch in later to start my second shift.")

At least three of these declarants further allege that managers altered their time. (*See* Pls.' Mem., Ex. 10, Decl. of Paris Bester ¶ 5; Ex. 15, Decl. of Amy Bridgeman ¶ 5; Ex. 33, Decl. of Anthony Walsh ¶ 6.) For example, Anthony Walsh states: "The managers had a practice of changing the time in the computer so that it would appear that I worked less hours than I actually worked. This happened regularly, and I had arguments with the managers because of this practice." (Walsh Decl. ¶ 6.) Paris Bester states: "I complained to the restaurant management that our hours were being changed; nothing was done. I worked over 40 hours in many weeks, but the managers altered the hours so that they fell below 40 hours for the week. One manager admitted to me that the hours were altered." (Bester Decl. ¶ 5.)

More than 10 of the employees whose declarations were submitted by AppleIllinois state that on at least one occasion they were not clocked for all time worked, clocked out or told to clock out

by a manager before the shift end. (*See* Defs.' Mem., Ex. 8, Decl. of Ginger Carillo; Defs.' Mem., Exs. 16, 20, 25, 30, 35, 40, 53, 69, 73, 83.) For example, Laura Krupienski, who has been employed by AppleIllinois since April 2007, states: "From approximately April 2007 through the fall of 2008, there were times that I would attempt to clock out at the end of my shift and learn that a manager had already clocked me out before the end of my shift. . . . I believe that I performed approximately 20 hours of work off of the clock washing dishes during this period of time." (Defs.' Mem., Ex. 40, Decl. of Laura Krupienski ¶17.) Several declarants state that they forgot to clock in before the start of their shift. (*E.g.* Defs.' Mem., Ex. 20 Nicholas Flanagan ¶16, 17; Ex. 30, Decl. of Ora Henderson ¶¶ 15, 16; Ex. 39, Decl. of Tiffany Kirchner ¶¶ 15-16.) For example, Tiffany Kirchner states that: "There have been occasions [approximately three times per month] in which I have forgotten to clock in at the start of my shift. I will then clock in when I remember to do so. I do not always inform my manager when this occurs because it is my fault." (Kirchner Decl. ¶ 15.) Nicholas Flanagan attests that his time was corrected after he informed his manager. (Flanagan Decl. ¶ 17.) Ora Henderson attests that her time was not corrected after she informed her manager. (Henderson Decl. ¶ 16.)

After considering the evidence presented, the court concludes that the classes cannot be certified as defined by Plaintiffs. While there is certainly evidence that not all hours of all employees were recorded (and, therefore, not all hours were compensated), the practices that led to the under-reporting differed from restaurant to restaurant so that the common questions do not predominate across the proposed classes of workers in all restaurants.

*Cruz v. Unilock Chicago, Inc.*, 892 N.E.2d 78, 105 (Ill. App. 2008), illustrates the point. There, an Illinois appellate court directed the trial court to certify a class of former and current

employees of the defendant's manufacturing plant who claimed that not all time worked had been compensated. Notably, all the class members worked in one location, the defendant's Aurora manufacturing plant. *Id*. at 83, 97. The plaintiffs claimed that the defendant had a rule and uniform practice requiring employees to be at their work area both before and after their shift, but that pre-shift and post-shift time was not compensated. *Id*. at 84-85. Also, the defendant allegedly programed its timekeeping system to deduct 30 minutes automatically from each employee's daily time to reflect a lunch break. *Id*. at 85. The appellate court concluded that a class must be certified because the proposed class was narrowly targeted to a single facility where, plaintiffs had demonstrated, there was an "early-in" policy, a widespread editing of time records, and "time-rounding" to which all or virtually all of the class members were subjected. *Id.* at 96-98. Because the policies and practices applied to all of the proposed class, the common issues of liability predominated, notwithstanding individual proof of damages. *Id* at 103.

Here, in contrast, there is evidence of a number of practices that differed from restaurant to restaurant. For example, a current employee at the restaurant in Bradley, Illinois states that she is required to attend a pre-shift meeting for 5-10 minutes before every shift and not allowed to clock in until after the meeting. (Defs.' Mem., Ex. 83, Decl. of Maggie Souligne ¶ 12.) None of the other declarants testify to a similar pre-shift meeting requirement. Four of the five named plaintiffs, all of whom worked at the Ford City restaurant, state that the managers would change the time in the system to record less than the actual time worked, but only four other declarants, out of all of the declarations submitted, state that their time was altered.[18] A number of declarants state that they

---

[18] Those four are the three described above (Paris Bester (Tinley Park), Amy Bridgeman (Crestwood), and Anthony Walsh (Grand Avenue)) and also Ginger Carrillo (Bloomingdale) (Defs.' Mem., Ex. 8, Decl. of Ginger Carrillo ¶ 16).

were clocked out early either by the manager or at the manager's direction, but the circumstances differ, and many of the declarants – even those whose declarations were submitted by Plaintiffs – do not describe unreported time.[19]

Unlike the "dual occupation" issue described above, there is no proof submitted of a central policy from AppleIllinois headquarters establishing or encouraging time altering or "off the clock" work. The evidence suggests that there might be such practices in individual restaurants, but Plaintiffs have not established that there is a common method of proof to demonstrate liability as to all members of the class at who worked at more than 30 different restaurants. Plaintiffs have not established the predominance requirement as to the classes they seek to certify. Accordingly, the motion to certify the proposed classes as to these issues is denied. However, this ruling is without prejudice to any motion Plaintiffs or other members of the class may bring to certify classes consisting of employees who work or worked at a particular restaurant.[20]

## CONCLUSION

For the reasons set out above, Plaintiffs' motion for class certification is granted as follows:

1. On Plaintiffs' claim under the IMWL with respect to the issue of tip credit notification, a class is certified consisting of all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-

---

[19] By the court's count, almost half – 19 of the 42 – of the declarations submitted by Plaintiffs do not mention unreported time.

[20] As previously discussed, an FLSA "opt-in" class was certified in the *Oropeza* case for a similar claim of unreported and unpaid hours. The FLSA has a lower threshold for conditional certification than Rule 23. But, importantly, the denial of class certification on that issue here should not be taken as any indication or suggestion regarding any aspect of the *Oropeza* case.

minimum, tip credit wage rate.

2.   On Plaintiffs' claim under the IMWL with respect to the issue of the allegedly unreasonable tip sharing pool, a class is certified consisting of all persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate and who participated in AppleIllinois' tip pool requiring servers to contribute 2.5% of sales.

3.   On Plaintiffs' claim under the IMWL with respect to the issue of non-tipped duties performed for tip credit rate wages, a class is certified consisting of persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation for which they were not paid at the minimum wage rate.

In all other respects, the motion for class certification is denied.


IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge


March 2, 2010