UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN DRIVER, DEMIKO D. MCCASTER, ROSAMAR MALLARI, JOYCE A. BRITTON and MICHAEL H. HICKS, on behalf of themselves and all other persons similarly situated, known and unknown,<br>    Plaintiffs, | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06 C 6149<br><br>Magistrate Judge Geraldine Soat Brown |
| v. | ) | |
| APPLEILLINOIS, LLC d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, W. CURTIS SMITH, JAMES BORKE, J. TIMOTHY BRUGH, ARCHIE IODICE, et al.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion for Summary Judgment on Defendant W. Curtis Smith's Status as 'Employer' Under 29 U.S.C. § 203(d). (Pls.' Mot.) [Dkt 303.] Defendants AppleIllinois, LLC, W. Curtis Smith, Jerry Kreger, Doreen Borke as representative of the estate of James Borke and Archie Iodice (collectively, "defendants") filed their opposition to the motion (Defs.' Opp'n) [dkt 313], and plaintiffs filed their reply (Pls.' Reply) [dkt 320]. For the reasons set forth below, plaintiffs' motion is denied.

**BACKGROUND**

This case involves plaintiffs' claims against defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. §§ 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. §§ 115/1 *et seq*. (Third Am. Compl. ¶ 1.) [Dkt 141.] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 53.]

Summary judgment was recently granted to the plaintiff class on their claim in Count I under the IMWL, and to the named plaintiffs on their individual claims in Count IV under the FLSA. (Aug. 27, 2012 Mem. Op. and Order.) [Dkt 363.] The issue on the present motion is whether on defendant W. Curtis Smith should be held to be an "employer" under those statutes, which would make Smith individually liable for any damages awarded to the plaintiffs. (Pls.' Mem. at 1.) [Dkt 304.]

An employer under the FLSA includes "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d). Likewise, an employer under the IMWL includes "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 Ill. Comp. Stat. § 105/3(c). The FLSA's definition of employer is expansive, and there can be more than one person or entity considered an "employer" responsible for compliance with the statute. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *see, e.g., Falk v. Brennan*, 414 U.S. 190, 195 (1973). Whether the facts demonstrate that a person or entity qualifies as an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985).[1]

---

[1] The FLSA and case law interpreting it are relevant to the class's IMWL claim because the IMWL parallels the FLSA and the same analysis has generally been applied to both statutes. If there is a difference, the stricter interpretation applies under the IMWL. (*See* August 27, 2012 Mem. Op.

Plaintiffs argue that Smith was intimately involved with the day-to-day operations of AppleIllinois, LLC ("AppleIllinois") and that his authority and involvement in the practices at issue here sufficiently establish his personal liability. (Pls.' Mem. at 4-7.) Defendants argue that Smith was not involved in day-to-day decisions involving employees, and that he does not exercise the kind of control over employment relationships at AppleIllinois necessary to establish personal liability under the statutes. (Defs.' Opp'n at 3-8.)

As the movants, plaintiffs must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine dispute of material fact exists, the court construes all facts and draws all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255.

---

and Order at 2-4.)

## FACTS[2]

The background of this case was set out in detail in the August 27, 2012 Opinion, and will not be repeated here except to the extent necessary for this opinion.

Defendant AppleIllinois is an Illinois limited liability company that currently owns and operates 34 Applebee's restaurants within Illinois. (Defs.' LR Resp. ¶ 6.) It is undisputed that plaintiffs are present or former employees of AppleIllinois. (August 27, 2012 Mem. Op. and Order at 8.) Smith is the president, a member and a manager of AppleIllinois. (Defs.' LR Resp. ¶ 8.) Interestingly, although defendants admit that fact, Smith himself initially testified that he was "not sure" whether he was president of AppleIllinois, although he later acknowledged that he was. (Dep.

---

[2] The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. Their submissions are cited herein as: Plaintiffs' Local Rule 56.1(a)(3) Statement of Material Facts in Support of Motion for Partial Summary Judgment ("Pls.' LR Stmt.") [dkt 305]; Defendants' Answer to Plaintiff's Local Rule 56.1(a)(3) Statement of Material Facts ("Defs.' LR Resp.") [dkt 312]; Defendants' Local Rule 56.1(b)(3)(c) Statement of Additional Facts Submitted in Response to Plaintiffs' Motion for Summary Judgment ("Defs.' Add'l Facts") [dkt 314]; and Plaintiffs' Response to Defendants' Local Rule 56.1(b)(3)(c) Statement of Additional Material Facts ("Pls.' Resp. Add'l Facts") [dkt 321].

Defendants' motion to strike paragraph 8 and certain other paragraphs of Plaintiff's Local Rule 56.1 Statement of Facts as vague, conclusory, speculative and lacking foundation, which was not presented as a separate motion but rather buried in its responsive statement, is denied. (*See* Defs.' LR Resp. ¶ 8.) Local Rule 56.1 "serves an important function by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). The submission of arguments and non-responsive facts in a Local Rule 56.1 statement defeats its purpose. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). When reviewing Local Rule 56.1 statements, the court need not "wade through improper denials and legal arguments in search of a genuinely disputed fact." *Id.* at 529; *accord Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The court reviews each Local Rule statement carefully and disregards any intertwined argument, conclusion or unsupported fact.

Curtis Smith at 20, 24.)[3]

In the 1990's, Smith and the late James Borke purchased a group of approximately 23 established Applebee's restaurants in the Chicago area. (Defs.' LR Resp. ¶ 19.) That presumably was the start of the current AppleIllinois restaurants. Since AppleIllinois' inception, Smith has owned between 30% and 50%. (Pls.' Resp. Add'l Facts ¶ 20.) Smith currently owns 50% of AppleIllinois. (Defs.' LR Resp. ¶ 8.) The only other owner is the estate of the late James Borke. (*Id.*) Smith is the only living member with an ownership interest in AppleIllinois. (*Id.*).

Describing the management and ownership structure of AppleIllinois is somewhat challenging. Defendants state that "AppleIllinois is structured as a managing membership." (Defs.' Add'l Facts ¶ 3.) Although plaintiffs do not expressly deny that statement, neither party explains what a "managing membership" is. Also, it appears that changes occurred over the course of this lawsuit. At various times relevant to this litigation, Smith has shared ownership of AppleIllinois with as many as four other people, and at various times there have been as many as three managers. (Defs.' LR Resp. ¶ 8; Pls.' Resp. Add'l Facts ¶ 20.) Not every member, however, was a member-manager; some were just members. (Smith Dep. at 36.) Defendants Jerry Kreger and Archie Iodice were just members, with a 5% interest each. (*Id.*) Also, James Borke, who had been a member-manager, had not been doing anything for the company for three or four years before he died. (*Id.* at 33.)

With one exception, however, plaintiffs apparently do not dispute that Smith reports to the

---

[3] Both parties submitted and cite excerpts of certain deposition transcripts with the briefing on this motion [dkt 305, 306, 315, 320] and with the briefing on their cross motions for summary judgment on the dual jobs claims [dkt 299, 318, 319]. Depositions cited herein therefore are cited to the transcript but may be found in various locations on the docket. Other exhibits are cited with reference to their docket number.

other managing members of AppleIllinois who make corporate decisions collectively. (Pls.' Resp. Add'l Facts ¶ 3.) That exception is former managing member Timothy Brugh who denied that he was involved in the management or operation of AppleIllinois. (*Id.*) Neither party explains how the collective decision-making works in the current situation where Smith is the only living member.

Smith works out of AppleIllinois' headquarters in Crestview Hills, Kentucky, but he is only there for about five months out of the year. (Defs.' LR Resp. ¶ 17; Pls.' Resp. Add'l Facts ¶ 1.) He testified that when he is not in the office he keeps in contact by telephone and through the Internet, and by way of AppleIllinois reports that are available to him. (Smith Dep. at 30.) According to Smith, he visits restaurants that his companies own about once a week during winter months when he is in Florida, but only once or twice in total during the remaining months of the year. (Smith Dep. at 96.)

The parties do not disagree on Smith's higher-level functions. Plaintiffs admit that Smith's duties as president of AppleIllinois include providing leadership and direction in achieving AppleIllinois' objectives; planning, implementing and evaluating the organization's fiscal function and performance; evaluating and advising on long range planning; planning and developing contracts; and ensuring that AppleIllinois' mission, program, products and services are consistently presented. (Pls.' Resp. Add'l Facts ¶ 2.)

Where the parties disagree is on Smith's degree of control of, and involvement in, day-to-day and employee affairs. (*See* Defs.' LR Resp. ¶ 8.) Smith testified that his primary responsibility is working with banks and business development and that he has no other specific daily duties for AppleIllinois. (Smith Dep. at 24-27.) He testified that he is not familiar with what duties AppleIllinois tipped employees perform or what duties are set forth in AppleIllinois' position

6

descriptions. (Smith Dep. at 131-32.) Smith further testified that he is unfamiliar with the day-to-day activities at individual restaurants. (Smith Dep. at 217.) Chief operating officer Ron Long echoed that testimony, stating that only the general manager of a particular restaurant would know the actual practices of that restaurant. (Dep. of Ronald Long at 247.)

Smith does participate in AppleIllinois' Executive Committee, which he says meets to discuss the "overall situations" of AppleIllinois, and not its individual restaurants. (Smith Dep. at 62.) The Executive Committee is comprised of Smith, vice president of human resources Scott Cortner, chief operating officer Ron Long and vice president of finance Jerry Kreger. (Dep. of Scott Cortner at 41.) Cortner, Long and Kreger all report to Smith, and Smith sets their compensation. (Cortner Dep. at 29-31; Long Dep. at 26-27; Dep. of Jerry Kreger at 29.)

Defendants depict the other members of the Executive Committee as having day-to-day management of AppleIllinois. Long testified that he leads and directs all facets of restaurant operations, and visits AppleIllinois restaurants three to four times per week. (Long Dep. at 11, 55.) According to Long, the operations team works with the human resources team to create AppleIllinois' employee manuals. (*Id*. at 54.)

Kreger prepares AppleIllinois' monthly financial statements, tax returns and tax deposits, and he serves as AppleIllinois' main contact with the banks and outside accountants. (Pls.' Resp. Add'l Facts ¶ 13; Kreger Dep. at 18.)

Cortner testified that, among other things, he is responsible for overall compensation practices, benefits, management development, compliance, assisting operations, recruitment and hiring. (Cortner Dep. at 34.) Defendants acknowledge that Smith could be involved in decisions relating to wage rates of employees, but state that Cortner and Kreger actually make those decisions.

(Defs.' LR Resp. ¶ 11.) Smith testified that Cortner has the authority to issue wage policies without Smith's approval and that he could not recall every having participated in a discussion regarding employee wage rates. (Smith Dep. at 19, 127-28.) Cortner similarly testified that he is responsible for establishing acceptable pay ranges for hourly employees and that Smith's only role regarding hourly wages is as a member of AppleIllinois' Executive Committee. (*See* Cortner Dep. at 40-44.) Many people at AppleIllinois have the authority to terminate employees, including not only Long and Smith but also regional human resources managers and regional vice presidents. (Pls.' Resp. Add'l Facts ¶ 10.) Smith is the only person at AppleIllinois, however, with authority to enter into an employment contract. (Defs.' LR Resp. ¶ 10.) Smith hired Cortner, supervises him and sets his compensation. (*Id*. ¶ 13)

In addition to the Executive Committee, other employees have administrative functions. Scott Purcell is the regional vice president in charge of restaurant operations. (Pls.' Resp. Add'l Facts ¶ 18.) Local restaurant managers report to a team of five area directors who in turn report to Purcell. (*Id*.) Candy Randall, AppleIllinois' payroll director, handles office payroll and oversees the staff processing payroll for AppleIllinois. (*Id*. ¶ 16.) She reports to Kreger. (*Id*. ¶ 14.) AppleIllinois' information technology director, controller and financial analyst also report to Kreger. (*Id*.)

Plaintiffs argue, however, that the Executive Committee meeting minutes show much more involvement by Smith than he acknowledges. Those meeting minutes reflect that Executive Committee discussions included such topics as how to eliminate hourly vacation, whether to change the price of coffee in the restaurants, whether to paint a particular restaurant and how to staff a newly opening restaurant. (Defs.' LR Resp. ¶ 23.) They also show that during an April 29, 2008

discussion of the differing labor guides used at the Illinois and Indiana restaurants, Smith stated, "[W]e need one guide for the whole company." (Defs.' LR Resp. ¶ 23.)

The core of plaintiffs' FLSA and IMWL claims involves tipped employees' performance of general restaurant cleaning and other "sidework" duties unrelated to tipped work and/or substantial amounts of nontip-producing work. (August 27, 2012 Mem. Op. and Order at 46.) Smith testified that he was not involved in preparing the sidework lists and that he did not recall ever seeing them. (Smith Dep. at 67, 131-32.) Although AppleIllinois has had different sidework lists over time, Cortner worked with Long and legal counsel in revising them in 2008.[4] (Pls.' Resp. Add'l Facts ¶ 4; Cortner Dep. at 103.) Plaintiffs point out, however, that Executive Committee minutes reflect that on April 15, 1999, Smith reported on a meeting agenda item entitled: "Cleaning the restaurant ourselves (enclosure)." (Defs.' LR Resp. ¶ 20.) The enclosure indicates that, based on the Chicago Applebee's experience, Florida Applebee's restaurants could save $70,000 annually by using restaurant employees to perform cleaning and discontinuing third party cleaning crews. (*Id.*) Smith testified however that he could not recall having a discussion about it at an Executive Committee meeting and that he did not know whether AppleIllinois used third party cleaning crews. (Smith Dep. at 55, 170-71.)

Paychecks are issued over Smith's signature, but according to Smith, it may be a "mechanical" (presumably electronic) signature. (*Id.* at 25.) According to Kreger, both he and Smith can write checks of any amount on behalf of AppleIllinois. (Kreger Dep. at 36-37.)

Plaintiffs point to the conflict resolution process set forth in AppleIllinois' employee

---

[4] The parties did not submit evidence as to how AppleIllinois originally created the sidework lists.

handbook, which says that Smith may be contacted personally by employees if communications with immediate supervisors and second level supervisors prove unable to resolve a conflict. (Pls.' LR Stmt., Ex. H.) [Dkt 299-1.] The policy further provides that, as vice present of human resources, Cortner also "is responsible for giving input into this process." (*Id*.) Smith testified that he has never been presented with an issue regarding employee pay under this policy. (Smith Dep. at 107.) He further testified that he does not know how corporate policies are disseminated to employees. (Smith Dep. at 80.)

On July 22, 2005, Plainfield AppleIllinois server Kristin Wolfer called AppleIllinois' "Hotline" to ask whether it was "normal" to have servers run dishes through the "GU" (or, dishwasher). (Defs.' LR Resp. ¶ 21.) The Hotline records indicate that Wolfer's call was resolved the next day, but Cortner does not remember the call or whether or how it was resolved. (Defs.' LR Resp. ¶ 22.) Smith testified that he was unaware of the call. (Smith Dep. at 106.)

Named plaintiffs Joyce Britton, Michael Hicks and Demiko McCaster do not know or have any recollection of meeting Smith. (Pls.' Resp. Add'l Facts ¶ 11.) Named plaintiff Rosamar Mallari recalls Smith being introduced at a restaurant opening but never speaking with him. (*Id*.; Dep. Rosamar Mallari at 60.) [Dkt 315-5.] Named plaintiff Glenn Driver could not identify Smith and could not recall whether he had ever met him. (Pls.' Resp. Add'l Facts ¶ 11.)

### DISCUSSION

When determining who is an employee or an employer under the FLSA, the focus is the "'economic reality'" of the situation. *Karr*, 787 F. 2d at 1207 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also Falk*, 414 U.S. at 195 (holding that "substantial control

of the terms and conditions of work" justifies considering management company an employer). The Seventh Circuit has observed that the FLSA's definition of employer is broad enough to permit naming even another employee as a defendant, "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the violation." *Riordan*, 831 F.2d at 694 (citing rule in *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), but not reaching issue). Other courts of appeals also look to the "economic reality" to determine employer status. *See, e.g., Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (personal liability of corporate officer depends on involvement in day-to-day operation or direct responsibility for supervision of employee); *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (economic reality test includes asking whether party has power to hire and fire; supervises or controls work schedules or conditions of employment; determines rate and method of payment; and maintains employment records); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965-66 (6th Cir. 1991) (president/co-owner who had operational control of significant aspects of corporation's day-to-day functions including compensation of employees was employer); *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) (corporate officers with significant ownership interest and operational control of significant aspects of day-to-day functions were employers).

Courts agree that operational control is relevant to determining whether an individual is an employer under the FLSA and is thus personally liable for FLSA violations. *Alvarez Perez*, 515 F.3d at 1160 (citing *Patel*, 803 F.2d at 637-38); *RSR Sec. Servs., Ltd.*, 172 F.3d at 139; *Elliot Travel & Tours, Inc.*, 942 F.2d at 965; *Agnew*, 712 F.2d at 1511. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer, along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Agnew*,

11

712 F.2d at 1511. The issue is not whether an individual controlled every aspect of the employees' conduct, but rather, whether the individual had control over the alleged violation of the statute. *See Riordan,* 831 F.2d at 694; *Dole v. Simpson*, 784 F. Supp 538, 545 (S.D. Ind. 1991). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez*, 515 F.3d at 1160 (quoting *Patel*, 803 F.2d at 638); *accord Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262-63 (8th Cir. 1963). Personal liability has been found in this district where the individual possesses significant ownership interest coupled with day-to-day control of operations, including involvement in the supervision and payment of employees. *See Solis v. Intl. Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 748-49 (N.D. Ill. 2011) (collecting cases).

Here, there are some undisputed facts which collectively suggest that Smith could be deemed an employer under the FLSA. First, it is undisputed that Smith owns a significant portion (half) of AppleIllinois, and is its president. (Defs.' LR Resp. ¶ 8.) He has the power to hire and fire employees, and he did in fact, hire, supervise and set the compensation for Cortner, the vice president of human resources. AppleIllinois is structured as a "managing membership," and Smith is now the only living managing member. Although Smith testified that he focuses on working with the banks and business development, the Executive Committee meeting minutes reflect his participation in discussions on a variety of issues. Indeed, it was Smith who, according to the minutes, discussed the savings AppleIllinois could enjoy in Florida if third party cleaning crews were replaced with AppleIllinois employees, based on the Chicago experience. (*Id*. ¶ 20.)

The evidence is less clear however, with regard to Smith's actual role with the employees and the violations at issue, and there are too many disputed issues of material fact for summary judgment

to be granted. Although it is undisputed that Smith has the authority to set wage rates and to hire and fire, defendants strenuously deny that he exercises that authority. Smith testified that he is not involved in the day-to-day operations of AppleIllinois restaurants, that he is not familiar with AppleIllinois' job descriptions or sidework lists and that he did not recall discussing the use of AppleIllinois employees to clean the restaurants. He testified that Cortner independently sets AppleIllinois' wage policy, and Cortner echoed this testimony in describing his own duties and responsibilities. Smith further testified that he does not know the duties that tipped employees are tasked with performing at AppleIllinois. None of the named plaintiffs testified as to any interaction with Smith beyond an introduction at a restaurant opening, nor does the record establish that Mr. Smith ever supervised any class members or controlled their schedules. Although he had the authority to do so, there is no evidence that Mr. Smith hired or fired any member of the class.

Plaintiffs stress Cortner's testimony that ultimate responsibility for the decisions of AppleIllinois belong to Mr. Smith because "it's his company." (Cortner Dep. at 67-68.) But what that means in terms of the actual decisions that give rise to FLSA and IMWL violations has not been established on this record. "Economic reality looks to the substance of a person's control, not the title the person holds." *Simpson*, 784 F. Supp. at 547.

Plaintiffs also emphasize that under AppleIllinois' conflict resolution policy Smith is "the ultimate decision-maker as it relates to 'the rules of conduct, policies, or practices,'" of AppleIllinois. (Pls.' Reply at 2 (quoting Pls.' LR Stmt., Ex. G at P 51-52 [dkt 299-1].) The AppleIllinois handbook states that an employee may write to the president with any unresolved complaint and that the decision of the president will be final. But the record does not establish Smith's involvement in the creation of the handbook, and he testified that he did know how the handbook was created or how

policies were disseminated to AppleIllinois' operational employees. (Smith Dep. at 80.) In the face of such disputed evidence, the role described in the handbook does not establish as a matter of law that Smith is an employer under the FLSA.

Plaintiffs further argue that regardless of his personal role, Mr. Smith should be liable for AppleIllinois' FLSA violations because he hired and supervised AppleIllinois' managing executives. (Pls.' Mem. at 7; Pls.' Reply at 3.) Hiring and firing upper-level management *may* be indicative of control (*see, e.g., RSR Sec. Servs., Ltd.*, 172 F.3d at 140), but reliance on that fact "would make almost any corporate officer of any company an employer for FLSA purposes, since at least one corporate officer at every company is either involved in employment decisions or supervises someone who is involved in employment decisions." *Solis v. Velocity Express, Inc.*, No. CV 09-864, 2010 WL 2990293 at *3 (D. Or. July 26, 2010). On the present motion, as in *Velocity Express*, there is testimony that operational decisions were made at multiple levels of management and that decisions that affected the class were made by executives other than Smith.

The evidence on the present motion is different from that in another case in this district, *Intl. Detective*, 819 F. Supp. 2d at 748-49, upon which plaintiffs rely. In that case, summary judgment was granted establishing employer liability for FLSA violations on the part of the sole corporate owner who controlled all corporate activities, signed all paychecks and was responsible for payroll, accounting and invoicing, and another defendant who maintained employee time records and oversaw scheduling, hiring, firing and compensation. *Id*. at 749. Instead, this case is more like *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 781-90 (N.D. Ill. 2011), where plaintiffs' motion for partial summary judgment on defendant's FLSA employer status was denied despite the corporation's co-owners undisputed absolute power over the company's purse strings, their power

14

to hire and fire restaurant managers and their directive that employees not be scheduled overtime hours. In that case, there was evidence suggesting that the co-owners had delegated actual day-to-day operation of the business and supervision of employees to others. While the court in *Villareal* expressed skepticism about the defendants' claimed complete delegation of the business operation and the supervision of employees, it concluded that the defendants' position was not "so incredible as to warrant disregarding it as a matter of law." *Id.* at 787.

Here too, it may be that Smith's involvement is greater than he claims. But that decision can not be made without weighing conflicting evidence, judging credibility and adjudicating disputed material facts. In determining whether summary judgment is warranted, courts do not make "credibility determinations, weigh evidence, or decide what inferences to draw from the facts." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (internal quotation and citation omitted). Construing the evidence before the court in the light most favorable to defendants, as the court is required to do on the present motion, the court cannot find on this record that plaintiffs have established as a matter of law that Smith exercised such control over the decisions that gave rise to the FLSA/IMWL violations found here so as to make him personally liable to the plaintiffs for those violations. This is not, of course, a determination that Smith could not be found personally liable. It is only a determination that the decision will have to be made after a trial.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs' Motion for Summary Judgment on Defendant W. Curtis Smith's Status as 'Employer' Under 29 U.S.C. § 203(d) [dkt 303] is denied.

**IT IS SO ORDERED.**

*Geraldine Soat Brown*
_____
**Geraldine Soat Brown
United States Magistrate Judge**

September 19, 2012