**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GLENN DRIVER, *et al.*,

      Plaintiffs,

      v.

APPLEILLINOIS, LLC, *et al.*,

      Defendants.

Case No. 06 CV 6149

Magistrate Judge Soat Brown

**OPPOSITION BY DEFENDANTS APPLEILLINOIS, LLC;
W. CURTIS SMITH; DOREEN BORKE, AS EXECUTRIX OF THE ESTATE OF
JAMES BORKE; JERRY KREGER; AND ARCHIE IODICE
TO PLAINTIFFS' MOTION AND MEMORANDUM REGARDING
TOTAL LOSS OF TIP CREDIT ENTITLEMENT**

Hallie Diethelm Caldarone
Paul J. Stroka
JACKSON LEWIS LLP
150 N. Michigan Avenue
Suite 2500
Chicago, Illinois 60610
Tel: (312) 787-4949
Fax: (312) 787-4995

Paul DeCamp
JACKSON LEWIS LLP
10701 Parkridge Boulevard
Suite 300
Reston, Virginia 20191
Tel: (703) 483-8305
Fax: (703) 483-8301

Counsel for Defendants AppleIllinois, LLC;
W. Curtis Smith; Doreen Borke, as
Executrix of the Estate of James Borke;
Archie Iodice and Jerry Kreger

## INTRODUCTION

Plaintiffs' entire theory of this case is that they were *actually* employed not in a single occupation, but rather in two or more occupations, some tipped and some non-tipped. The record plainly demonstrates, and Plaintiffs do not suggest otherwise, that the overwhelming majority of the time Plaintiffs spent working for AppleIllinois was in activity that by any plausible standard clearly meets the definition of a tipped occupation. Plaintiffs offer zero authority, logic, or public policy justification for treating an alleged defect in the compensation they received for their supposedly *non-tipped* occupation(s) as somehow affecting the validity of the compensation they received for their indisputably *tipped* occupation(s).

The law authorizes AppleIllinois to take a tip credit for the time Plaintiffs spent in their tipped occupation(s), and AppleIllinois did exactly that. Plaintiffs have asked this Court to adopt a first-in-the-nation damages standard providing for absolute forfeiture of the tip credit any time an employer runs afoul of the U.S. Department of Labor's dual jobs regulation. Such a rule would improperly convert the FLSA, and by extension the IMWL, from a remedial statute designed to ensure a basic level of compensation into a draconian forfeiture regime that threatens to impose surprise, massive, retroactive, bankrupting liability even for good-faith mistakes, with unwarranted windfalls for Plaintiffs wholly disproportionate to any harm arguably suffered.

Plaintiffs offer not a shred of statutory language, legislative history, case law, or other authority to suggest that Congress intended such a harsh and unreasonable result, which would have the practical effect of making the tip credit simply too radioactive for employers to be willing to risk using it. The FLSA does not obligate this Court to check its common sense at the door. Plaintiffs' damages theory should be rejected in its entirety, and AppleIllinois' damages framework should be applied in this case.

1

## ARGUMENT

**I.  ALL AUTHORITY RELEVANT TO PLAINTIFFS' DUAL-JOBS CLAIM SUPPORTS APPLEILLINOIS' CALCULATION OF DAMAGES.**

Plaintiffs' dual-jobs claim damages should be computed based only on the time each Plaintiff actually spent performing unrelated duties or non-tip-producing duties (if more than 20% of the time). Plaintiffs' argument for total loss of the tip credit fails because the Illinois Minimum Wage Law ("IMWL") does not allow for a forfeiture of the tip credit, and the Fair Labor Standards Act ("FLSA") calls for total forfeiture of the tip credit in only two circumstances, neither of which is present here.

**A.  Plaintiffs Completely Ignore The IMWL Upon Which Their Dual-Jobs Claim Is Based.**

Plaintiffs brought their dual jobs class claims under the IMWL, yet their damages theory completely ignores both the statute and relevant case law. Indeed, in their memorandum on damages, Plaintiffs fail to cite the Illinois statute or any case law interpreting the IMWL. This is because complete forfeiture of the tip credit and the award of backpay for the hours that class members worked in tipped occupations would contravene the plain language of the IMWL.

Even if an employer does not satisfy the IMWL requirements for taking the tip credit, the IMWL still does not provide for a complete forfeiture of the tip credit. *See* 820 ILCS § 105/12(a) (limiting backpay awards to the amount of underpayment of the statutory rate). Furthermore, the only case addressing this issue found that the IMWL does not provide for forfeiture of the tip credit. *See Monson v. Marie's Best Pizza, Inc.*, No. 08-CH-11616, slip op. (Cook Cty. Cir. Ct. Mar. 23, 2010) (holding the IMWL "does not provide for a remedy of forfeiture of the tip credit").

Here, with respect to potential Plaintiff class members' work in their tipped occupations, AppleIllinois has met all three requirements for taking the tip credit under the IMWL. The tip

2

credit was properly taken for Plaintiff class members when the employee was (1) "engaged in an occupation in which gratuities have customarily and usually constituted and [sic] have been recognized as part of the remuneration purposes," (2) because the tip credit did not exceed 40 percent of the applicable minimum wage, and (3) the amount claimed was received by plaintiff class members, and no part of their tips were returned to AppleIllinois. *See* 820 ILCS § 105/4(a). Thus, for the time Plaintiffs were performing related duties and/or were performing tip-producing duties (or non-tip-producing duties less than 20% of the time), AppleIllinois properly took tip credit for this time, and Plaintiffs have no basis to recover it. Plaintiffs chose to bring their class claims under the IMWL, which provided them certain procedural advantages. They now attempt to ignore the statute's standards because they are in complete contravention of Plaintiffs' damages theory. Plaintiffs cannot cherry pick the portions of the statute that are to their advantage and ignore the remaining terms.

**B.     All Relevant Federal Authority Directs The Court To Calculate Damages Based Solely On The Hours Class Members Worked In A Non-Tipped Occupation.**

A complete forfeiture of the tip credit would disregard all relevant authority under the FLSA. The FLSA regulations, as well as all DOL guidance provided through opinion letters, portions of the Field Operations Handbook, and FLSA Fact Sheet #15, instruct the Court to determine damages based solely on the number of hours class members worked in non-tipped occupations. In addition, the only relevant case law supports the same result.

**1.     Plaintiffs' theory of damages ignores the FLSA, the dual-jobs regulation, and DOL guidance.**

AppleIllinois meets the FLSA requirements for taking the tip credit with respect to the work performed by class members in their tipped occupations. The FLSA specifies two situations which would disqualifies an employer from taking the tip credit: (1) if an employee is

3

not informed by the employer of its use of the tip credit, and (2) all tips have either not been retained by the employee or have not been pooled among employees who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m); 29 C.F.R § 531.59 (b).

Neither situation is at issue with respect to Plaintiffs' dual-jobs claim. AppleIllinois' motion for summary judgment regarding Plaintiffs' notice claims has been fully briefed by the parties. Plaintiffs have no pending class claims regarding AppleIllinois' compliance with the second factor. All tips received by tipped employees were either retained by the tipped employee or were pooled among other tipped employees. AppleIllinois properly took the tip credit when Plaintiffs worked in the tip occupation.

As this Court found, "[t]he tip pool regulation answers the question: who may be included in a valid tip pool? The dual jobs regulation answers the question: for what hours of employment can the employer take the tip credit?" Dkt. # 363 at 48-49. Plaintiffs agreed with the Court that the dual jobs regulation applied for purposes of liability, but now argue for purposes of damages that the notice and tip pool regulations should be considered, all the while either completely ignoring or attempting to rewrite the dual-jobs regulation. Plaintiff cannot have it both (or multiple) ways.

"The tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a 'tipped employee.'" 29 C.F.R.§ 531.59(b). The dual jobs regulation states that "where a maintenance man in a hotel also serves as a waiter . . . [he] is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man." 29 C.F.R. § 531.56(e). If Plaintiffs' damages theory is followed, the Court would be required to redline the regulation to read "where a maintenance

man in a hotel also serves as a waiter . . . [he] is employed in two occupations, and no tip credit can be taken for [add: <u>any of</u> ] his hours of employment." Such rewriting is not permitted.

Plaintiffs' theory of damages also ignores DOL guidance on this issue that supports AppleIllinois' theory of damages. *See* Aug. 8, 1979 DOL Op. Ltr. (instructing that "*no tip credit can be taken for the <u>time spent</u>* in preparing vegetables for the salad bar") (emphasis added); Mar. 28, 1980 DOL Op. Ltr. ("where there is a clear dividing line between the types of duties performed by a tipped employee . . . *no tip credit may be taken for the <u>time spent</u>*" in the non-tipped occupation) (emphasis added);  DOL Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (March 2011) ("When an employee is employed by one employer in both a tipped and a non-tipped occupation, such as an employee employed both as a maintenance person and a waitperson, *the tip credit is available only for the hours spent by the employee in the tipped occupation*.") (emphasis added).

> **2.      Plaintiffs ask the court to rely on the same line of case law to determine damages that they just urged the court to ignore for determining liability.**

It is particularly confounding that Plaintiffs now try to piggyback their damages theory on the tip pool regulation and case law.  Plaintiffs recently and successfully argued to this Court that the case law involving the tip pool regulation and what occupations are properly included in a tip pool were irrelevant to their dual-jobs claim.  Now, talking out of the other side of their mouth, Plaintiffs cite tip pool case law in support of their "total loss of tip credit" damages theory.  Plaintiffs' cited case law is inapplicable in this context.

This Court also found that the tip pool case law is inapposite in this case.  The Court stated that "it is simply not correct to extrapolate . . . from the decisions about who may participate in a valid tip pool to a conclusion that all work done by those employees—no matter what the work and no matter for how long—may be paid at a tip credit rate" because it would

"ignore both the actual text of the dual jobs regulation and the DOL's own interpretation of that regulation as reflected in the Handbook." Dkt. # 363 at 49. The converse then is also true. To say that no matter how long an employee works in a tipped occupation, he or she may *not* be paid for those hours at a tip credit rate would ignore Illinois law, the dual jobs regulations and DOL's long-standing interpretations of the dual job regulation. Plaintiffs cannot ask the Court to analyze their substantive claims under the dual jobs regulation, but then seek damages pursuant to case law pertaining to the notice and tip pooling statute and regulations.

Plaintiffs' page-long string cite identifies cases in which the tip credit was lost for all hours worked when (1) the employer failed to notify the employees and/or (2) the employees were not permitted to retain all of their tips, through either the operation of an improper tip pool or some other deduction by the employer. Plaintiffs' notice claim is not at issue in this briefing. Therefore, the cases cited by Plaintiffs in which courts held the forfeiture of the tip credit for each hour worked to be an appropriate remedy when the employer failed to give notice are inapplicable. *See Solis v. Min Fang Yang*, 2009 U.S. App. LEXIS 15344 (6th Cir. July 10, 2009); *Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3d Cir. 1994); *Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977); *Heng Chen v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007). Those cases involved an error affecting the wages employees received for their work in *tipped* occupations. Plaintiffs here, by contrast, assert violations only with respect to their wages for work in what they contend were ***non-tipped*** occupations.

Plaintiffs have no class claim that tipped employees were not permitted to retain all of their tips or that they were subject to an improper tip pool. Thus, the cases cited by Plaintiffs in which courts held the forfeiture of the tip credit for each hour worked to be an appropriate calculation of damages when employees did not retain all of their earned tips are also of no

consequence to the Court's assessment of damages in this case. *See Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011); *Chisolm v. Gravitas Rest. Ltd.*, 2008 U.S. Dist. LEXIS 28254 (S.D. Tex. Mar. 28, 2008); *Heng Chen v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770; *Vance v. Ala Carte Entm't Inc.*, 2003 U.S. Dist. LEXIS 27118 (N.D. Ill. Apr. 14, 2003); *Chu Chung v. New Silver Palace Rest.*, 246 F.Supp.2d 220 (S.D.N.Y. 2002); *Cuevas v. Bill Tsagalis, Inc.*, 149 Ill. App.3d 977 (Ill. App. Ct. 1986).

The common thread in the notice and tip pool cases cited by Plaintiffs is that the court found that the employer violated the tip credit regulations for <u>all hours</u> in which the plaintiffs worked. In contrast, courts that found that an employer violated the tip pooling requirements for only *some* of the shifts worked by tipped employees, required repayment of the tip credit only *for those shifts*. For example, the Sixth Circuit in *Myers v. Copper Cellar* found that the employer improperly included salad preparers in the tip pool with servers. *See* 192 F.3d 546 (6th Cir. 1999). A salad preparer was not, however, assigned to every shift. The Sixth Circuit affirmed the lower court's finding that the plaintiffs failed to prove their damages by producing evidence regarding the *total* number of hours worked at the tip-credit rate. *Id.* at 552-53. Instead, the court noted that damages were properly limited only to the shifts that salad preparers worked and participated in the tip pool. *Id.* Like the Court in *Myers*, this Court should limit damages only to the time Plaintiffs spent in a non-tipped occupation.

Each case cited by Plaintiffs, save for *Dole v. Bishop*, is irrelevant to the appropriate damages calculation in a dual jobs case. *See* 740 F. Supp. 1221, 1226 (S.D. Miss. 1990). In *Dole*, trial testimony revealed that the employer paid servers at the tip credit rate for hours that the servers performed non-tipped duties before the restaurant opened including cleaning bathrooms, chopping vegetables, and making puddings and ice creams. The court determined

that the proper backpay calculation was the difference between the tip credit rate paid to the servers and the minimum wage rate due for the time the servers spent working in a non-tipped occupation. *Id.* at 1228. This is the same method of calculation anticipated by the district court in *Fast v. Applebee's Int'l, Inc.*, and is the same calculation that should be used here. *See Fast*, No. 06-4146, 2010 U.S. Dist. LEXIS 19571 (W.D. Mo. Mar. 4, 2010).

### C.    Equity Also Requires The Court To Calculate Damages Based Only On The Hours Class Members Worked In Non-Tipped Occupations.

Finding that the Plaintiffs can recover the tip credit for all hours worked despite that fact that they properly worked the vast majority of the time properly in a tipped occupation is inequitable and would amount to a windfall for Plaintiff class members. As Plaintiffs point out, minimum wage and overtime statutes are remedial in nature. *See* Pls.' Mot. and Mem. at 4. "[P]laintiffs are entitled to be made whole, ***not to a windfall*** at the defendant's expense." *Roman v. Maietta Constr. Inc.*, 147 F.3d 71, 76-77 (1st Cir. 1998) (emphasis added); *see also Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 683-84 (7th Cir. 2010) (rejecting plaintiff's more "employee-friendly" method of backpay calculation when the method did not comport with statute or case law).

The Court has determined that an employee who performs a task "unrelated" to his or her tipped occupation for even a minute or two triggers the dual jobs regulation. The Court also held that an employee who performs "non tipped" tasks "related" to his or her tipped occupation in excess of 20% of his or her shift also triggers the dual jobs regulation. Under this liability scheme, a Plaintiff class member may perform related, tip-producing duties 99% or more of the time but be a class member by virtue of spending 1% or less of the shift on an unrelated task. Plaintiffs' damages theory would require AppleIllinois to pay that class member "damages" for

the 99% of his or her working time for which he or she was properly working in a tipped occupation at a tipped credit rate. Reason and equity do not support such a windfall.[1]

In this case, the Court must acknowledge that for the vast majority of the time Plaintiff class members properly performed work in a tipped occupation. Plaintiffs make no assertion to the contrary. Had Plaintiffs spent a majority of their time working outside of the tipped occupation, Plaintiffs could and would have brought this case based on the tip pool regulations instead of the dual jobs regulation. Because the Plaintiff class members worked predominantly in tipped occupations, the only plausible means for Plaintiffs to state a claim was through the dual jobs regulation. Plaintiffs cannot now abandon the regulation upon which this Court based its liability determination in favor of a different one for determining damages. Disgorgement of the tip credit for all hours worked, instead of only for the hours worked in a non-tipped occupation, would be unjust and would be disproportionate to the "harm" this Court has found.

## II.   PLAINTIFFS' PROPOSED USE OF REPRESENTATIVE TESTIMONY MUST BE REJECTED.

In their Motion and Memorandum, Plaintiffs acknowledge that they retain the initial burden of "producing sufficient evidence to show the amount and extent of that work" performed for which they have not been properly compensated. *See* Pls.' Mot. and Mem. at 9. Plaintiffs, however, make a passing reference in their memorandum that they can satisfy their *Mt. Clemens* burden in this case through "representative testimony" to "establish the amount of time spent in

---

[1]   Plaintiffs' damages theory would result in a windfall for the additional reason that Plaintiffs have already received the full minimum wage for all hours they worked, including for the hours AppleIllinois took a tip credit. The FLSA requires that if employers elect to use the tip credit, they still need to ensure that tipped employees receive at least the minimum wage when tips and the tip credit amount are combined. *See* 29 CFR 531.59 (b). If not, the employer must make up the difference. *See id.* AppleIllinois ensured that Plaintiffs received full minimum wage for each hour they worked and, Plaintiffs make no argument to the contrary.

tipped and non-tipped duties." *Id.* at 9-10. Use of representative testimony in this case would be wildly inappropriate.

This case involves 10,000-plus potential dual-jobs claim class members who worked in one of more various positions (server, host, bartender, etc.), who performed different duties in each position, and whose tasks varied depending on which of the dozens of different restaurants they worked at, which of the shifts they worked on, and to which supervisor they reported. The potential class members' tasks also varied depending on what year they worked at a given restaurant and varied depending on who was the supervisor that year, that week, or that shift. Given the unlimited combination of factual variations[2] amongst the potential class members regarding how much time they performed unrelated or non-tip-producing tasks (or whether they performed such tasks at all), representative testimony is inappropriate.

Several courts have refused to use representative testimony in class actions such as here, where due to nature of the claims involved, the experiences of the plaintiff class members varied significantly. In *Espenscheid v. Directsat USA, LLC*, the court rejected the plaintiffs' suggested

---

[2]     For example, potential class members' duties and tasks varied depending on what restaurant they worked at and which shift they worked. *See* attached declarations, Group Exhibit 2. Many servers, depending on which restaurant they worked at, never performed certain "unrelated" duties (as defined in part by the Court), including never cleaning the bathroom, cleaning windows, cleaning the cooler or freezer, washing pots or pans, loading the dishwasher, expediting food, and taking out the garbage. *See id.* Other servers claim to have performed several of these tasks. Potential class members' experiences also vary depending on which job they held. For example, many bartenders performed almost none of the "unrelated" duties, as many have never expedited food, cleaned the chandelier, wiped down wood paneling, cleaned the bathroom, vacuumed, rolled silverware, cleaned the windows, cleaned the cooler or freezer, washed pots or pans, loaded the dishwasher, or hosed down the back of the house during any bartender shift. *See id.* Many hosts are tasked with cleaning bathrooms for a few minutes per hour and otherwise perform no unrelated duties. Many hosts have never expedited food, cleaned the chandelier, wiped down wood paneling, vacuumed, rolled silverware, cleaned the windows, cleaned the cooler or freezer, washed pots or pans, loaded the dishwasher, or hosed down the back of the house during any host shift. *See id.*

use of representative testimony in a Rule 23 wage and hour class action.[3] 2011 U.S. Dist. LEXIS 56062, No. 09-cv-625 (W.D. Wis. May 23, 2011) (Exhibit 1). The District Court for the Western District of Wisconsin, in rejecting the use of representative testimony, held that:

> In this case, however, there are many complicating factors that undermine the conclusion that one technician's testimony is representative of an absent technician's experiences. Thus, there is too great a chance that the determination by a jury of the "average" number of uncompensated hours worked by class members each week would be unreliable and would result in rewarding some technicians who have already been compensated fully, and simultaneously reducing the awards to which others are entitled.
>
> One of the complicating factors in that the quantity of work available to technicians varied according to the time and location. In some offices, technicians report an average of around 30 hours a week while at other offices, the average is closer to 40 or 50. Thus, the amount of nonproductive work, such as the number of customers calls each day, the amount of equipment to load and unload and the number of satellites that must be built at home, would vary depending on time and location. *The wide variability in weekly hours worked implies strongly that one technician's experiences may not be a proxy for others*.

*Id*. at *19 (emphasis added).

Like the technicians in *Espenscheid*, the experiences and time spent performing certain tasks by potential dual-jobs claim class members' vary depending on which job they held, and also by shift, by restaurant, by year, and by supervisor. This wide variability in tasks performed as exhibited by all of the declarations submitted in this case "implies strongly" that one class member's experiences in this case may not be a proxy for others. *See id*. ("Given the wide variability and inconsistencies in technician testimony, it would be difficult for a jury to determine what experiences are representative of the entire group of technicians at issue in this case without gross margins of error.").

---

[3] In *Espenscheid*, the court decertified the Rule 23 wage and hour class action on the eve of trial, after denying a previous motion to decertify, and after interlocutory appeals on the certification decisions were denied, because it found "substantial variations" among the class members in their "individual experience" and found that representative testimony would lead to "gross margins of error." 2011 U.S. Dist. LEXIS 56062, at *20-23.

In light of the Court's recently revised dual-jobs class definition (Dkt. # 363), permitting representative testimony in this case to determine damages for the class would lead to even greater "gross margins of error" than the court anticipated in *Espendscheid*. In *Espendscheid* there were only 2,300 class members and the court found representative testimony unworkable. Here, there are over 10,000 potential class members here who worked in 34 different restaurants and have even greater variability in their work experiences than the technicians did in *Espendscheid*. Representative testimony to prove damages for the entire dual-jobs class is completely unsuitable and would result in gross margins of error.

Another district court in *Proctor v. Allsups Convenience Stores, Inc.*, rejected the use of representative testimony when faced with disparate factual allegations from more than 1,000 plaintiffs and the reality that the uncompensated time for the numerous plaintiffs was neither uniform nor of a predetermined duration. 250 F.R.D. 278, 283-84 (N.D. Tex. 2008). The *Proctor* court noted:

> The Plaintiffs have not suggested any alternative ways to try the case or any ways to address the disparate factual allegations of the more than 1,000 Plaintiffs. Plaintiffs do suggest that the 3% of the class who was deposed could serve as a representative group. It is true that representative testimony can sometimes suffice so that not every plaintiff must testify. A representative sample of employees can provide the proof of a prima facie case of a FLSA violation. Although the 2nd Circuit has affirmed representative testimony of only 2.7% of a class, that case involved "actual consistency" among the testimony "both within each category [of employee] and overall"; there was "no contradictory testimony"; the abuse arose from a policy that was consistently applied; and the uncompensated "periods at issue were the employees' lunch hours, which are predictable, daily-recurring periods of uniform and predetermined duration." In this case, there is no consistency among the testimony, there is no consistently applied policy resulting in working off the clock, ***and the time spent working off the clock is not alleged to be uniform or of a predetermined duration***.

*Id.* (citations omitted). Recognizing the difficulties associated with fairly adjudicating a case with disparate facts and no uniform or predetermined duration of uncompensated time and the

limitations of representative discovery, the *Proctor* court decertified the class action.[4] *See id.*

("Management of this case and procedural concerns also support decertification."). As in

*Proctor*, there is no uniform or predetermined duration of uncompensated time in this case, i.e.,

no uniform time spent by Plaintiffs performing unrelated or non-tip-producing tasks. Thus,

representative testimony is completely insufficient and inappropriate here.

Another district court rejected the use of representative testimony in an FLSA collective

action based on non-payment of worked meal periods stating: "[i]n truth, whether Plaintiffs

missed a meal break and reported it varies from assignment to assignment and from [plaintiff] to

[plaintiff]. Attempting to generalize a [plaintiff's] experience using a representative sample

would be a highly inaccurate method of determining the validity of Plaintiffs' claims." *Reed v.

Country of Orange*, 266 F.R.D. 466, 458 (C.D. Cal. Jan. 8, 2010); *see also Camilotes v.

Resurrection Health Care Corp.*, No. 10-cv-366, 2012 U.S. Dist. LEXIS 143583 (Oct. 4, 2012

N.D. Ill.) ("Plaintiffs' 'representative' testimony in this case would not, in fact, be representative

of the class as a whole because of the myriad of factual differences" underlying their claims.)

(Exhibit 3) .It is simply impossible that the testimony from an individual plaintiff (or even

hundreds of Plaintiffs) could be truly representative where there are so many different shifts,

locations, managers, positions, and duties.

---

[4]    Moreover, in the cases in which courts have authorized the use of representative evidence, they
have consistently featured a uniform pattern or consistent practice that justified its usage. *See, e.g.,
McLaughlin v. Dial Am. Mktg., Inc.*, 716 F. Supp. 812, 825 (D. N.J. 1989) (representative testimony for
unpaid hours performing a "task [that] was straightforward and uniform" relating to a discrete policy that
demonstrated minimum wage violations for *every* employee); *Brennan v. Gen. Motors Acceptance Corp.*,
482 F.2d 825, 829 (5th Cir. 1973) (approving damage calculations where all employees were only "paid
for forty to forty-two hours"). The contrast between cases permitting representative testimony and
Plaintiffs' case is striking, and those stark differences operate as a bar to the use of representative
testimony as the basis upon which to award damages to the entire dual-jobs class.

Nothing in *Mt. Clemens* suggests that normal due process principles cease to apply in class actions. *See generally Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946). What *Mt. Clemens* would allow is for each class member to satisfy his or her burden of proof with a slightly relaxed quantum of evidence, not that one class member's less substantial evidence can or should then be generalized and deemed applicable to other class members. Under these circumstances, using representative evidence to support damages awards for non-testifying Plaintiffs would be completely improper and would violate AppleIllinois' right to due process.

**B.    Due Process Requires That AppleIllinois Be Afforded The Opportunity To Rebut The Alleged Damages For Each And Every Plaintiff Class Member.**

As explained in AppleIllinois' opening Memorandum, courts recognize that defendants must be afforded the opportunity to present testimony from managers, supervisors, or co-workers to rebut the plaintiffs' evidence of the amount and extent of time spent for which they were not properly compensated. *See Reich v. Gateway Press, Inc.*, 13 F. 3d 685, 701-02 (3d Cir. 1994) (finding that defendants must be given the opportunity to present evidence to negate the inferences to be drawn from the testimony of the representative plaintiffs). Even if representative testimony is found to be appropriate in this case, which it is not, AppleIllinois must be afforded the opportunity to rebut each of the Plaintiff class members' damages assertions. In other words, AppleIllinois must be afforded an opportunity to rebut general damage estimates as applied to each individual plaintiff in the dual-jobs class and not just the testifying plaintiffs. *See, e.g., Martin v. Selker Bros., Inc.*, 949 F. 2d 1286, 1298 (3d Cir. 1991) (reducing individual plaintiff's back pay award where evidence showed that he worked fewer hours than those reflected in representative testimony).

Due process dictates that AppleIllinois be given the opportunity to put forth rebuttal evidence for *each and every* non-testifying Plaintiff. *See Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 937 (S.D. Tex. 2009) (recognizing defendant will "also be able to contest each individual plaintiff's claim at the damages stage"); *Duran v. U.S. BankNat. Assn.*, 203 Cal. App. 4th 212, 254 (2012) (limiting the presentation of evidence of liability to the testifying plaintiffs violated defendant's due process rights); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 370 (D.N.J. 1987) (finding that a failure to permit defendant to raise a "defense particular to each . . . plaintiff would deprive defendant of the Fifth Amendment right to due process"). Pursuant to the Supreme Court's holding in *Wal-Mart v. Dukes* (and previous Supreme Court cases), AppleIllinois is entitled to litigate its statutory defenses to *each* individual class members' alleged damages. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560 (2011).

Because of AppleIllinois' due process right to present evidence contesting each of the over 10,000+ individual plaintiff class members' claim for damages, decertification of the dual-job class as recently defined by the Court pursuant to its August 27, 2012 Order is mandated. *See Gatewood v. Koch Foods of Miss.*, Case No. 3:07CV82-KS-MTP, 2009 U.S. Dist. LEXIS 113896, at *71-72 (S.D. Miss. Oct. 20, 2009) (finding that a "plethora of individual issues" raised by defendant's defenses presented serious due process concerns which required decertification) (Exhibit 4).

## CONCLUSION

For these reasons, the proper measure of damages is as set forth above and in AppleIllinois' opening Memorandum, and not a total loss of the tip credit as Plaintiffs suggest.

Respectfully submitted,


/s/ Paul DeCamp

Hallie Diethelm Caldarone
Paul J. Stroka
JACKSON LEWIS LLP
150 N. Michigan Avenue
Suite 2500
Chicago, Illinois  60601
Tel:  (312) 787-4949
Fax: (312) 787-4995

Paul DeCamp
JACKSON LEWIS LLP
10701 Parkridge Boulevard
Suite 300
Reston, Virginia  20191
Tel:  (703) 483-8305
Fax: (703) 483-8301

Counsel for Defendants AppleIllinois, LLC;
W. Curtis Smith; Archie Iodice; Jerry
Kreger; and Doreen Borke, Executrix of the
Estate of James Borke

November 16, 2012

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 16, 2012, he caused a true and correct copy of the foregoing document to be filed with the Court by the Court's ECF/CM electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.


/s/ Paul DeCamp

4811-0684-2385, v. 1