**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GLENN DRIVER, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.  06 C 6149** |
| **v.** | ) | |
| | ) | |
| **APPLEILLINOIS, LLC d/b/a** | ) | **Magistrate Judge Geraldine Soat Brown** |
| **APPLEBEE'S NEIGHBORHOOD** | ) | |
| **GRILL & BAR,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Following the entry of summary judgment in favor of plaintiffs and against defendant AppleIllinois, LLC ("AppleIllinois"), there was a lengthy hiatus in this case because AppleIllinois filed a bankruptcy petition.  [Dkt 411.]  The individual defendants then moved this court to stay proceedings on this case as to them [dkt 413], and the court deferred action on the pending motions. Counsel for the parties have reported that AppleIllinois is being liquidated as part of the bankruptcy proceeding and plaintiffs' claims against AppleIllinois will be dealt with in the bankruptcy proceeding.  According to counsel, all individual defendants except Curtis Smith have reached a settlement with plaintiffs, although nothing has been formally presented to this court with respect to those defendants. [Dkt 422 ¶ 1.]  Plaintiffs now move for decision on the pending motions so that the case can proceed against Smith, who has continued to file various memoranda on his own behalf on the pending motions.

1

Despite the bankruptcy stay, the decision must necessarily refer to AppleIllinois which employed plaintiffs as tipped employees in Applebee's restaurants. If Smith is personally liable, which has yet to be determined, his liability would result from a finding that he, as well as AppleIllinois, was an "employer" of plaintiffs under the Fair Labor Standards Act ("FLSA") or the Illinois Minimum Wage Law (IMWL").[1] Plaintiffs' motion for summary judgment to determine Smith's status as an employer was previously denied because there are questions of fact. [Dkt 365.] Counsel for both parties request that the court decide the pending motions before a trial on Smith's status. Plaintiffs' motion to issue decisions as to Smith [dkt 422] is granted.

Most of the briefs on the pending motions were filed before AppleIllinois' bankruptcy petition by counsel then representing AppleIllinois and the individual defendants, including Smith. Arguments previously made on behalf of all defendants are considered herein to have been made by Smith since this ruling governs only the ongoing case against Smith and any individual defendants who have not, in fact, reached a settlement.[2]

---

[1] An employer under the FLSA includes "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d). Likewise, an employer under the IMWL includes "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 Ill. Comp. Stat. § 105/3(c). The FLSA's definition of employer is expansive, and more than one person or entity can be an "employer" responsible for compliance with the statute. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *see, e.g., Falk v. Brennan*, 414 U.S. 190, 195 (1973). Whether the facts demonstrate that a person or entity qualifies as an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985).

The FLSA and case law interpreting it are relevant to the class's IMWL claim because the IMWL parallels the FLSA and the same analysis has generally been applied to both statutes. If there is a difference, the stricter interpretation applies under the IMWL. (*See* Aug. 27, 2012 Mem. Op. and Order at 2-4.) ("Summ. J. Op.") [Dkt. 363.]

[2] Of course, any settlement of this class action with any party is subject to approval by the court.

2

Before the court are the parties' submissions on the determination of damages for the plaintiffs' IMWL dual jobs claim, and Defendants' Motion to Decertify the Dual-Jobs and Notice Claims.[3] (Dkt 368-69, 375-78, 382, 388-89, 393, 397, 401, 427, 429.) Plaintiffs have also moved for a pretrial order establishing that AppleIllinois is liable for the total amount of the tip credit. (Dkt 369.) For the reasons set out below, both plaintiffs' and defendants' motions are denied.

## BACKGROUND

The history of this case is set out in a number of previous opinions and will not be repeated here except as necessary.[4] In summary, the plaintiffs, who were tipped employees at Illinois Applebee's restaurants, brought claims against AppleIllinois and certain individual defendants on behalf of a plaintiff class under the IMWL and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/1, *et seq.*, and on behalf of the individual plaintiffs under the FLSA. (Not. of Removal.) [Dkt 1.]

Several IMWL classes were certified, including on the plaintiffs' so-called "dual jobs" claim in which the plaintiff class alleges that AppleIllinois and the individual defendants violated the IMWL by requiring tipped employees to perform duties of nontipped occupations while paying them at a sub-minimum tip credit wage rate. (Certif. Op. at 40.)[5] Summary judgment was granted to the

---

[3] Because summary judgement has been granted to defendants on plaintiffs' IMWL notice claim, the motion to decertify is moot as to that claim. (*See* Mem. Op. & Order, Jan. 8, 2013.) ("Notice Claim Op.") [Dkt 387.]

[4] *See* Summ. J. Op.; Mem. Op. & Order, Mar. 2, 2010 ("Certif. Op.") [dkt 231]; Mem. Op. & Order, Mar. 2, 2012 ("Second Certif. Op.") [dkt 334]; Notice Claim Op.") [dkt 387].

[5] Under certain conditions both the IMWL and the FLSA allow employers to claim a reduction from their minimum wage obligations for workers who earn gratuities. See 820 Ill. Comp.

class on their IMWL dual jobs claim and to the individual plaintiffs on their similar FLSA dual jobs

claims. (Summ. J. Op.)

The evidence on the cross-motions for summary judgment showed that "as a regular practice,

AppleIllinois [defined to include the individual defendants] employed its tipped workers in 'dual

jobs,' that is, in both tipped and non-tipped occupations." (*Id.* at 37.) More than 100 employee

declarations (many of which were filed by AppleIllinois) and other evidence showed that

AppleIllinois had a policy and practice of making AppleIllinois' tipped employees perform non-

tipped work such as cleaning bathrooms, mopping floors, washing dishes, rolling silverware,

"expoing" meals, cleaning chandeliers, and washing walls. (Summ J. Op. at 17-30, 46-47.)

AppleIllinois paid the tipped employees at the tip-credit wage rate for all of their time (with

immaterial exceptions), including time spent doing nontipped work. (*Id.* at 46-47.) AppleIllinois

also had specifically identified tasks for nontipped workers who were paid at least the minimum

wage, but on days when not enough nontipped employees were scheduled, the tipped employees did

those tasks but were paid at the tip-credit rate. (*Id.* at 37-39.)

The regulations under the IMWL, like those under the FLSA, contemplate that an employee

may perform "dual occupations" for an employer, one a tipped occupation and the other nontipped.

*See* Ill. Admin. Code tit. 56, pt. 210.720; 29 C.F.R. § 531.56(e). In such a situation, however, an

employer is required to keep detailed records, specifying among other things:

> (d)    Hours worked each workday in any occupation in which the employee does
> not receive gratuities and the total daily or weekly straight time payment
> made by the employer for such hours.

---

Stat. § 105/4(c); 29 U.S.C. § 203(m). That allowance is called the "tip credit."

(e)     Hours worked each workday in an occupation in which the employee received tips or gratuities, and total daily or weekly straight time earnings for such hours.

Ill. Admin. Code tit. 56, pt. 210.720; *accord* 29 C.F.R. § 516.28.  AppleIllinois did not keep records to separate out the time its tipped employees spent performing non-tipped work.  (Summ. J. Op. at 13-14.)

The court found that AppleIllinois had unlawfully underpaid its tipped workers because it had "failed to pay tipped workers at the rate required by the IMWL" for their untipped work.  (*Id.* at 47.)  AppleIllinois:

"[U]sed tipped employees to do the duties of non-tipped employees at tip credit rates";
. . .

"[R]egularly required [tipped employees] to perform tasks that cannot be considered 'related' to their tipped occupation under any reasonable construction of that term";
 . . .

[and]

"[Required] tipped employees . . . to spend 'a substantial amount of time (in excess of 20 percent)' performing sidework duties that were not tip producing."

(Summ. J. Op. at 39, 41, 43-44.)  As result of the summary judgment findings as well as developments in the law since the original class certification decision, the plaintiff class definition was amended to consist of:

Persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who: a) performed duties unrelated to their tipped occupation for which they were not paid at the minimum wage rate; and/or b) performed nontip-producing duties a substantial amount of the time (in excess of 20%) of their shift and were not paid at the minimum wage for that time.

5

(*Id*. at 46.)

Liability having been determined, the parties were ordered to file submissions setting out their positions about the determination of damages on the plaintiff class's dual jobs claim. (Dkt 364.) Shortly thereafter, AppleIllinois brought its second motion to decertify the dual jobs class.


## DISCUSSION

### I.    Damages under the IMWL and FLSA.

According to plaintiffs, by failing to pay tipped employees at least the full minimum wage when they worked in nontipped occupations, AppleIllinois forfeited the tip credit for all of the hours its tipped employees worked. (Dkt 369 at 3-8.) As part of their submission on damages, plaintiffs move for an order declaring that forfeiture. (*Id*. at 4.) Under plaintiffs' theory, the determination of damages, whether against AppleIllinois or the individual defendants, is simple: plaintiffs are entitled to the difference between the tip-credit rate and the applicable minimum wage rate for every hour they worked during the class period, which can be easily determined from AppleIllinois' timekeeping and payroll records. (*Id*. at 3; dkt 376 at 4 n. 1.)

Plaintiffs alternatively argue that, if AppleIllinois has not entirely forfeited its tip credit claim, then plaintiffs are at least entitled to the difference between the tip credit rate and the minimum wage rate for the time in which they were engaged in nontipped occupations. (Dkt 369 at 8-9; dkt 376 at 7-10.) They propose to establish that through AppleIllinois' corporate records and the representative testimony of certain class members. (Dkt 369 at 8-10; dkt 376 at 10-11.)

Smith responds that a total loss of the tip credit would be disproportionate to the dual jobs violation that was found. (Dkt 375 at 9.) According to Smith, plaintiffs' claim to damages must be

6

limited to the hours in which it is determined that individual plaintiffs worked in nontipped occupations. (Dkt 368 at 2-6; dkt 375 at 3.) Smith argues that a classwide determination of damages through representative testimony is inappropriate here. (Dkt 368 at 12-16; dkt 375 at 9-15.) In fact, Smith argues, plaintiffs' dual jobs claim is so intensely individualized and fact-based that merits trials would have to be held for each tipped employee to determine not only whether the employee is entitled to damages but also whether the employee is properly included within the plaintiff class at all. (Dkt 375 at 9-15.)

### A.     A dual jobs violation does not entirely forfeit the IMWL tip credit.

The defendants including AppleIllinois and Smith were found liable to the class under the IMWL and to the individual named plaintiffs under the FLSA. The IMWL parallels the FLSA, and as has been previously noted in this case, courts agree that the same analysis generally applies to both statutes. (*See* Summ. J. Op. at 3 and Notice Claim Op. at 7-8 (collecting cases and authorities). Where the FLSA and IMWL differ, however, they must be interpreted differently. (*See* Notice Claim Op. at 9 (collecting cases).)

Under the IMWL, the tip credit is an exemption to an employer's minimum wage obligation, and the employer bears the burden of proving entitlement to claim it. 820 Ill. Comp. Stat. § 105/4(c). The IMWL specifies the available remedies in a civil action brought by or on behalf of employees for wages to which they are entitled:

> If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with cost and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such

underpayments for each month following the date of payment during which such underpayments remain unpaid.

820 Ill. Comp. Stat. 105/12. The regulations similarly refer only to the recovery of such "underpayments," in addition to specified penalties and punitive damages. *See* Ill. Admin. Code tit. 56, pt. 210.1000-1050. The regulations do not mention tip credit forfeiture.

When plaintiffs worked in nontipped occupations while being paid at the tip credit rate, they were paid less than they are entitled by the IMWL. Forfeiture of the tip credit for all hours worked, however, is not contemplated by the IMWL and would result in an award to the plaintiffs of more than their "underpayments." Neither the IMWL nor its implementing regulations authorize such a recovery.

In an effort to avoid that conclusion, plaintiffs argue that forfeiture is expressly contemplated under the FLSA's tip credit provision, Section 203(m), where an employer has failed to comply with its requirements. (*See* dkt 369 at 4-8.) Because the Illinois Administrative Code looks to the federal regulations for guidance, and the Illinois Code seeks the stricter of the two interpretations, plaintiffs say, AppleIllinois' violation of FLSA Section 203(m) results in its total tip credit forfeiture under the IMWL as well.

The IMWL's remedy provision is clear on its face, however, and no reference to federal law is necessary. As this court previously held, the regulations cannot exceed their statutory authority, and cannot as a matter of statutory construction, import into the IMWL a greater obligation than is imposed by the statute itself. (*See* Notice Claim Op. at 8-9.)

The FLSA likewise does not suggest a total tip credit forfeiture for a dual jobs violation

8

because the circumstances in which the FLSA directs a total tip credit forfeiture do not apply here.

The FLSA provides:

> The [tip credit] *shall not apply* with respect to any tipped employee *unless* such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (emphasis added). That section suggests that there are two circumstances where the tip credit is entirely invalidated: (1) where the employer failed to inform its employees of the subsection's provisions; and (2) where the employees did not retain all earned tips except for valid tip pools. Neither circumstance has been found here.

In contrast, in defining dual jobs, the federal regulations specify:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, *and no tip credit can be taken for his hours of employment in his occupation of maintenance man.*

29 C.F.R. § 531.56(e) (emphasis added).

Courts that have considered the issue agree that the damages available under the FLSA for a dual jobs violation are based on the hours worked in the nontipped occupation. After finding that the defendant restaurant owners improperly paid their servers at the tip credit rate while requiring them to perform nontipped duties like cleaning bathrooms and chopping vegetables, a court ordered backpay based on the difference between the tip credit rate and the minimum wage rate for the time the servers worked in the nontipped occupation. *Dole v. Bishop*, 740 F. Supp. 1221, 1228-29 (S.D. Miss. 1990). Likewise, in an FLSA collective action with a dual jobs claim virtually identical to the

plaintiffs' IMWL class claim here, *Fast v. Applebee's Intl., Inc.*, No. 06-4146, 2010 WL 816639 (W.D. Mo. Mar. 4, 2010), *aff'd by* 638 F.3d 872 (8th Cir. 2011), the district court held that the plaintiffs must make a prima facie showing of which hours were not properly paid as a matter of just an reasonable inference. *Fast*, 2010 WL 816639 at *9. If the tip credit were completely forfeited by a dual jobs violation, there would be no need to make such a showing.

Plaintiffs here were underpaid for the time in which they were engaged in nontipped occupations, and thus they may recover the difference between the tip credit rate and the minimum wage rate for that time.[6] The next issue is how the damages calculation will be made.

### B. Representative evidence may be used to establish damages for the class.

Plaintiffs propose to establish the amount of damages by, among other things, AppleIllinois' time and payroll records, its policies and sidework lists and "representative evidence, including the declarations of then-current employees placed in the record by Defendants." (Dkt 376 at 3.) Smith contends that representative evidence cannot be used and that each class member must present sufficient evidence to establish that he or she performed certain work as well as the amount and extent of hours for which he or she was not properly compensated. (Dkt. 368 at 14-15.)

The roadmap for determining damages in an FLSA case (and by analogy, an IMWL case) is set out in prior case law, beginning with the seminal case of *Anderson v. Mt. Clemens Pottery Co.*,

---

[6] Smith observes that the none of the plaintiffs made less than the minimum wage for each hour worked including the hours doing nontipped tasks. (Dkt 375 at 9, n. 1.) If that is the case, it is because AppleIllinois improperly used the tips that plaintiff were entitled to retain to make up the difference between the minimum wage AppleIllinois should have been paying for nontipped tasks and the tip credit rate AppleIllinois paid them. That fact does not absolve AppleIllinois of its obligation to pay the minimum wage for time worked in a nontipped occupation.

328 U.S. 680 (1946) (superseded by statute on other grounds). The Supreme Court reversed the

lower court's conclusion that it was insufficient for employees to offer an estimated average of

overtime worked but unpaid. *Id.* at 686. The employee must prove that he performed work for

which he was not properly compensated, the Court said, but:

> [t]he remedial nature of this statute [FLSA] and the great public policy which it
> embodies, however, militate against making that burden an impossible hurdle for the
> employee. Due regard must be given to the fact that it is the employer who has the
> duty under § 11(c) of the Act to keep proper record of wages, hours and other
> conditions and employment, and who is in [a] position to know and to produce the
> most probative facts concerning the nature and amount of work performed.

*Id.* at 686-87. Once a plaintiff establishes a violation of the FLSA, determining damages should be

straightforward if the employer has kept time records as required by the statute. Where the employer

has failed to do so:

> The solution, however, is not to penalize the employee by denying him any recovery
> on the ground that he is unable to prove the precise extent of uncompensated work.
> . . . In such a situation . . . an employee has carried out his burden if he proves that
> he has in fact performed work for which he was improperly compensated and if he
> produces *sufficient evidence to show the amount and extent of that work as a matter
> of just and reasonable inference.* The burden then shifts to the employer to come
> forward with evidence of the precise amount of work performed or with evidence to
> negative the reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court may then award
> damages to the employee, *even though the result be only approximate.*

*Id.* at 687-88 (emphasis added).

That is the situation in this case. As discussed above, the IMWL, like the FLSA, obligates

employers to create and preserve records including the hours each employee worked in an occupation

in which the employee receives tips and the hours worked in an occupation in which the employee

does not receive tips. *See* Ill. Admin. Code tit. 56, pt. 210.720; 29 C.F.R. § 516.28. Smith

acknowledges that AppleIllinois did not record the time plaintiffs spent in nontipped occupations.

11

(*See* dkt 368 at 11 n. 9.) In a similar situation, the Eighth Circuit held that the plaintiffs could establish damages using the *Mt. Clemens* framework. *Fast*, 638 F.3d at 882.

Although *Mt. Clemens* did not use the term "representative evidence," that decision reversed the lower court's ruling that FLSA plaintiffs must prove with specificity the extent to which they did not receive earned wages. *Mt. Clemens*, 328 U.S. 686. Courts widely interpret *Mt. Clemens* to authorize the testimony of some employees to establish the FLSA damages for non-testifying employees by inference. *See, e.g.*, *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1279 (11th Cir. 2008); *Reich v. S. New England Telecomm.* Corp., 121 F.3d 58, 67-68 (2nd Cir. 1997); *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 781 (6th Cir. 1995); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3rd Cir. 1994); *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3rd Cir. 1991); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988). Varying amounts of representative testimony have been accepted as sufficient to establish nontestifying plaintiffs' damages. *See, e.g., S. New England Telecomm.*, 121 F.3d at 66-68 (affirming backpay award based in part on representative testimony of 2.5% of plaintiffs); *Ho Fat Seto*, 850 F.2d at 589 (affirming backpay to 23 nontestifying employees based on "fairly representative" testimony of five employees); *Donovan v. New Floridian Hotel*, 676 F.2d 468, 471-72 (11th Cir. 1982) (affirming backpay award to 207 employees based on testimony of 23 employees, USDOL compliance officer and management and office staff).

In considering the sufficiency of representative testimony, the critical inquiry is not the whether the testifying employees' testimony is uniform as to damages, but rather whether it is sufficient to establish the amount and extent all plaintiffs worked "as a matter of just and reasonable inference." *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (noting that

FLSA plaintiffs may estimate unreported time using any method that enables a just and reasonable inference); *S. New England Telecomm.*, 121 F.3d at 67-68 (plaintiffs not required to meet prima facie case "in complete detail as to the wages lost by each employee"; must produce sufficient evidence to show amount and extent of work as a matter of just and reasonable inference); *Ho Fat Seto*, 850 F.2d at 589 (*Mt. Clemens* "allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees"). Indeed, in *Ho Fat Seto*, 850 F.2d at 589, the Ninth Circuit Court of Appeals affirmed an award of backpay to nontestifying employees under the *Mt. Clemens* burden-shifting framework, while acknowledging that the testimony presented was "inconsistent in terms of exact days and hours of overtime worked."

Likewise, the sufficiency of the testimony does not depend on a straight statistical analysis, but rather on a thorough consideration of the quality of the testimony along with all of the other evidence presented. *See, e.g.*, *S. New England Telecomm.*, 121 F.3d at 67-68 ("Our focus is not on the numbers in isolation but on whether the district court could reasonably conclude that there was 'sufficient evidence to show the amount and extent of . . . [undercompensated] work as a matter of just and reasonable inference'" (quoting *Mt. Clemens*, 328 U.S. at 687)); *Selker Bros.*, 949 F.2d at 1298 (affirming backpay award to non-testifying employees of six gas stations based on representative testimony of employees from fewer than all stations; testimony and documentary evidence was sufficient to make just and reasonable inference as to damages); *Cole,* 62 F.3d at 781 (affirming backpay award to non-testifying employees based on USDOL investigator's reasonable estimates, employment records and certain employees' testimony).

Smith points to a recent Seventh Circuit decision affirming the district court's decertification of a previously-certified class action, "when it became apparent that the trial plan submitted by the

13

plaintiffs was infeasible." *Espenscheid*, 705 F.3d at 773. That case, however, is quite different from this. The plaintiffs in *Espenscheid* "rather truculently" opposed the district judge's suggested method of handling the proof and "refused to suggest a feasible alternative." *Id.* at 775. Because even on appeal the plaintiffs' counsel could not explain how the proposed evidence would be representative, the Seventh Circuit affirmed the district court's decision to decertify the class. The Seventh Circuit cautioned, however, that "in such a case, where it is class treatment or nothing, the district court must carefully explore the possible ways of overcoming problems in calculating individual damages." *Id.* at 776.

Although Smith argues that it is impossible for plaintiffs here to establish damages by representative evidence, the facts of this case, along with the directives of the *Mt. Clemens* and *Espenscheid* cases indicate that plaintiffs should be given the opportunity to do so. The evidence presented at summary judgment showed that all tipped employees were subject to AppleIllinois' common policy and practice requiring them to perform dual jobs. (Summ. J. Op. at 46-47.) For example, AppleIllinois' various sidework lists and its position descriptions specifying the duties of tipped and nontipped employees applied to AppleIllinois employees at all of the restaurants. (*Id.* at 12.) Plaintiffs must present adequate representative evidence such that a just and reasonable inference may be made (*see Espenscheid*, 705 F.3d at 774-75), but that does not mean each individual plaintiff must establish the precise amount of his or her damages. *See Mt. Clemens*, 328 U.S. at 688 (holding that where employer fails to keep required records or negate reasonableness of inference drawn from employee's proofs, "the court may . . . award damages to the employee" even if the result is "only approximate"); *Morgan*, 551 F.3d at 1279 (noting that where employer's records are inadequate, employees "can only approximate the number of hours worked and the amount of pay due"); *Allen*

14

*v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1317-18 (11th Cir. 2007) (reversing grant of summary judgment to defendant where plaintiffs' approximations of underpaid work could provide sufficient basis to establish damages without "precise, written documentation"); *S. New England Telecomm.*, 121 F.3d at 70 (finding district court's acceptance of plaintiffs' generous damages estimates over defendants' underinclusive estimates "consistent with the lesson of *Mt. Clemens*"); *Col*e, 62 F.3d at 780-81; (affirming district court's acceptance of investigator's "reasonable and generous estimate of the back wages due"); *Ho Fat Seto*, 850 F.2d at 589; *Dole*, 740 F. Supp. at 1227 n. 2 (finding plaintiffs' estimation of time spent on nontip-producing duties to be "fair and reasonable" under *Mt. Clemens*).

Smith is entitled, of course, to present evidence to negate the inferences plaintiffs seek to have drawn. *See Mt. Clemens*, 328 U.S. at 687-88. That does not, however, establish a need for the individual mini-trials that Smith suggests. *See Fast v. Applebee's Intl., Inc.*, No. 06-4146, 2009 WL 2391921 at *1 (W.D. Mo. Aug. 26, 2009) ("As to due process concerns, representative testimony is contemplated by the FLSA and Applebee's can defend with representative testimony just as plaintiffs seek to prove their claims with representative testimony.").

## II.    The motion to decertify the  IMWL dual jobs class is denied.

The evidence on summary judgment showed that one of the ways in which AppleIllinois required its tipped employees to work dual jobs was by requiring tipped employees to perform related but nontip-producing duties in excess of 20% of their time. The definition of the class was therefore amended to respond to the proof.  (*See* Summ. J. Op. at 46.)  Seizing on this amendment, AppleIllinois brought its second motion to decertify, arguing that the dual jobs class is

15

unascertainable. (Dkt 378 at 6-11.) According to AppleIllinois (and now Smith), the class is not sufficiently defined because membership in the class, especially where conditioned on the performance of nontip-producing duties more than 20% of the time, cannot be determined without a detailed examination of the merits of each individual's claim. (Dkt 378 at 10; dkt 388 at 1-2.) Plaintiffs oppose the motion, arguing that Smith is twisting a damages issue into another argument for decertification. (Dkt. 382 at 3.)[7]

Rule 23 requires that a class be "sufficiently definite to permit ascertainment of the class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Ascertainability relates to whether it is administratively feasible to identify members of the class. *See, e.g., Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) (affirming refusal to certify class of all learning disabled children in Indiana because the class would be "highly diverse" and difficult to identify). The ascertainability requirement serves several important functions. First, it avoids heavy administrative burdens inconsistent with the efficiency expected of class actions. *Marcus v. BMW of N. America*, 687 F.3d at 583, 593 (3rd Cir. 2012). Second, it "protects absent class members by

---

[7] AppleIllinois and the individual defendants also argue in a footnote that during an earlier oral argument, plaintiffs "waived" or "abandoned" the concept of including in the class tipped workers who worked nontipped duties more than 20% of the time. (Dkt 378 at 2 n.2, citing Ex.1 at 4.) That is not a correct reading of the transcript. In fact, plaintiffs' counsel was asserting the position that they take on the their submissions regarding damages: that AppleIllinois forfeited the entire tip-credit and therefore the time spent on doing nontipped related duties did not have to be determined.

Plaintiffs did not abandon or waive the assertion that requiring nontipped employees to perform related but untipped duties for a substantial period of time (defined by the Department of Labor regulations as 20% or more) while paying them at the tip credit rate violates the IMWL. This court initially defined the class more narrowly, but subsequent legal developments in the *Fast* case and the evidence on summary judgment proved that plaintiffs were correct on the law and facts with respect to that assertion.

facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action." *Id*. (internal quotations omitted). Finally, it protects defendants and enforces the preclusive effect of final judgments by ensuring that those who will be bound by the judgment are clearly identifiable. *Id*.

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *Manual for Complex Litigation* § 21.222 at 270 (4th ed. 2004). For this reason, the hinging of membership on the state of mind of the prospective member can make a class indefinite and unmanageable. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2007) (class of purchasers not sufficiently definite for consumer fraud claim which requires proof that purchaser was deceived); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) (noting difficulty in identifying class members whose membership depends on each individual's statement of mind); *Northside Chiropractic, Inc. v. Yellowbook, Inc.*, No. 09 CV 4468, 2012 WL 3777010 at *4 (N.D. Ill. Aug. 29, 2012) (finding unascertainable proposed class of persons "beguiled and misled" by defendant); *Wooley v. Jackson Hewitt, Inc.*, No. 07 C 2201, 2011 WL 1559330 at *4 (N.D. Ill. Apr. 25, 2011) (finding unascertainable proposed class of persons who paid IRS penalties because of preparer-initiated error).

Smith's argument suggests a fundamental misunderstanding not only of this court's previous decisions but also of the plaintiffs' dual jobs claim.[8] Plaintiffs' complaint alleged that AppleIllinois' policy and practice of requiring tipped employees to perform dual jobs while paying them at the tip credit rate violated the IMWL. (Third Am. Compl. ¶¶ 1,14.) [Dkt 141.] The certification decision discussed plaintiffs' claim that all tipped employees were subject to the complained of policy and

---

[8] This misunderstanding is also evident in Smith' brief and undeveloped argument that the defendants were prevented from obtaining sufficient discovery of the dual jobs claim. (*See* dkt 388 at 4 n. 2.)

practice. (Certif. Op. at 29-40.) The summary judgment decision determined that plaintiffs carried their burden of proof on that claim in alternate and overlapping fashion, both demonstrating the performance of unrelated duties and of related but nontip-producing duties more than 20% of the time. (Summ. J. Op. at 39-44.) It is simply incorrect to argue in the face of previous decisions in this case that the class is not identifiable and that liability to the class has not yet been established. (*See* dkt 388 at 2.) As discussed above and in the opinion on summary judgment, the liability determination was based not only on the declarations of current and former employees but also on the evidence applicable to all tipped employees. State of mind is not an issue here either for liability of the defendants or for membership in the class.

Smith notes that in granting summary judgment the court observed that the employee declarations "contain[ed] considerable variety, certainly enough to show individualized experiences." (Dkt 378 at 8 (citing Mem. Op. & Order at 45).) That observation reflected the fact that the declarations did not appear to be *pro forma* but rather reported the actual experiences of AppleIllinois tipped employees. Despite somewhat differing descriptions of the specific duties performed or the minutes it took to perform them, the declarations consistently evidenced AppleIllinois' systematic use of tipped employees in dual roles. That some tipped employees performed one or more duties that other tipped employees did not perform does not change the conclusion that AppleIllinois had a policy and practice of using tipped employees to perform work for which AppleIllinois should have paid them at the minimum wage. The remaining issue to be decided is the extent of that work as a matter of just and reasonable inference.

The fact that AppleIllinois employees performed different tasks in their dual jobs did not defeat certification (Certif. Op. at 30-38), did not support AppleIllinois' first motion for

18

decertification (Second Certif. Op. at 6), and does not require decertification now. The class is held together by the common question of whether AppleIllinois' policy and practice prevented employees from earning their minimum wage and the common proof responsive to that inquiry. *See Walmart v. Dukes*, __U.S. __, 131 S. Ct. 2541, 2551 (2011) (noting that what matters to class certification is the capacity to generate common answers). Unlike Smith' cited authorities, the differences Smith highlights among the plaintiff class go only to the extent of damages, and *Mt. Clemens* establishes a framework for that. The various amounts of time that AppleIllinois' tipped employees spent performing work for which they should have been paid the minimum wage is not an ascertainability question. It is an issue to be addressed in the consideration of damages.

The district court decisions cited by Smith in support of his ascertainability argument are similarly unpersuasive because they involve either individual plaintiffs or class claims not premised on an employer's commonly applied policies or practices.[9] In contrast, here:

---

[9]*See Camilotes v. Resurrection Health Care Corp.*, No. 286 F.R.D. 339, 346-52 (N.D. Ill. 2012) (decertifying collective action where plaintiffs had not established that practices complained of were system-wide); *Gatewood v. Koch Foods of Miss., LLC*, No. 3:07CV82-KS-MTP, 2009 WL 8642001 at *15-16 (S.D. Miss. Oct. 20, 2009) (decertifying action where plaintiffs acknowledged they were not subject to single pay practice of employer and evidence showed they were subject to differing timekeeping and compensation practices "determined by their specific positions, departments, and supervisors"); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282-83 (N.D. Tex. 2008) (decertifying action upon finding no evidence of "a single decision, policy, or plan . . . causing the Plaintiffs to work off the clock"); *Reed v. Co. of Orange*, 266 F.R.D. 446, 456 (C.D. Cal. 2010) (decertifying action where plaintiffs had not "provided substantial representative evidence of [a common practice or] policy").

Smith also cites *Nunes v. Chicago Import, Inc.*, No. 09 C 7168, 2011 WL 635584 (N.D. Ill. Feb. 11, 2011), but that case conflicts with his position. In *Nunes*, the court granted summary judgment to plaintiffs on FLSA liability and denied summary judgment as to damages. Later the court authorized the use of representative testimony at trial and entered judgment for the plaintiff class on that basis. *Nunes v. Chicago Import, Inc.*, N.D. Ill. Case No. 09 C 7168, dkt 105, 121, 122.

The evidence . . . demonstrates that using tipped employees to [perform dual jobs] was not an isolated, rare, or random occurrence, but rather the general practice at AppleIllinois restaurants across the various locations and throughout the class period. That resulted from sidework lists generated by AppleIllinois' corporate offices, and the fact that AppleIllinois permitted the practice of using tipped employees to do the work of GU [general utility] and expediter positions without requiring that the time be recorded at those job codes.

(Summ. J. Op. at 36-37.)

Smith's arguments notwithstanding, the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, __ U.S. __, 133 S.Ct 1426 (2013), does not change this conclusion. In *Comcast*, the Court reversed the Third Circuit's approval of the decision to certify a two million member class who sought damages for alleged violations of federal antitrust laws. 133 S.Ct at 1430. Only one of plaintiffs' proposed four theories of antitrust impact had been accepted by the district court at certification as capable of classwide proof. *Id*. at 1431. To establish their claimed damages, however, plaintiffs had relied solely on an expert's regression model that incorporated without segregation all of plaintiffs' theories of antitrust impact. *Id*. at 1432-33. The Court found error with the Third Circuit's refusal to consider whether the theory of antitrust impact was tied to the damages calculation, noting that *Wal-Mart v. Dukes*, 131 S. Ct. 2541, requires such an inquiry into the merits when necessary to determine whether Rule 23 is satisfied. *Id*. As the Court noted, "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23," and therefore, a certification analysis "will frequently entail 'overlap with [consideration of] the merits of the plaintiff's underlying claim.'" *Id*. at 1432 (*quoting Wal-Mart v. Dukes*, 131 S. Ct. at 2551, 2552). Because the plaintiffs had presented no other damages methodology, and there was no question that the regression model failed to measure only those damages attributable to the liability theory capable of classwide proof, "[q]uestions of individual damages calculations [would inevitably]

overwhelm questions common to the class," and the plaintiffs thus could not show Rule 23(b)(3) predominance. *Id.*

The Supreme Court described its *Comcast* decision as resting on "the straightforward application of class-certification principles," *Comcast*, 133 S.Ct at 1433, and its holding does not undo the "well nigh universal" recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3). *Id.* at 1437 (Ginsberg & Breyer, JJ., dissenting). As the Supreme Court noted in a decision issued only a month before *Comcast*, "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1196 (2013) (internal quotations omitted) (emphasis in original); *accord Messner v. Northshore University Health*, 669 F.3d 802, 815 (7th Cir. 2012) (noting text of Rule 23(b)(3) contemplates presence of individual issues). Likewise, in *Wal-mart v. Dukes*, 131 S. Ct. 2541, a decision relied upon by the Court in *Comcast* (and written by the same Justice), the Court observed, "[I]ndividualized monetary claims belong in Rule 23(b)(3)." 131 S.Ct. at 2558.

The Seventh Circuit recently rejected an interpretation of *Comcast* more expansive than its actual holding. In *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), the district court had certified a class of consumers who alleged a sudden stoppage defect in their washing machines, but denied to certify a class of consumers alleging a defect that caused mold. *Id*. at 797. The Seventh Circuit had ordered certification of both classes, but its opinion was subsequently vacated by the Supreme Court in light of *Comcast*. *Id*. On remand, the Seventh Circuit affirmed its prior ruling as to the mold class despite the presence of individual questions concerning damages. *Id*. at 799.

21

Whether the machines had a defect allowing mold to accumulate, it noted, was common to the entire class, "although damages are likely to vary across class members (the owners of the washing machines.)." *Id*. at 798. Complications that arise from design changes or separate state warranty laws could be handled by the creation of subclasses, the court noted. *Id*. at 802. Unlike the situation in *Comcast*, the court explained, there was no possibility in *Butler* "that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis." *Id*. at 800

Applying *Comcast* as expansively as Smith suggests would virtually prohibit class certification in wage and hour cases where the employer had failed to keep the statutorily required time records enabling damages to be fixed mechanically. Even if liability were commonly established in such cases, individual damages issues would always be present. That, however, is not a reason to deny certification. *See, e.g., Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (reversing denial of class certification in state wage and hour case, and observing that "damages determinations are individual in nearly all wage-and-hour class actions"). The predominance inquiry tests only whether proposed classes "are sufficiently cohesive to warrant adjudication by representation." *Amgen*, 133 S.Ct at 1196 (internal quotations omitted). "[C]ommon issues need only predominate, not outnumber individual issues" and common proof of damages "is not required." *Butler*, 727 F.3d at 801 (internal quotations omitted). As the Seventh Circuit explained in *Butler*:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, *the fact that damages are not identical across all class members should not preclude certification.*

*Id*. (emphasis added).

There is no indication in *Comcast* that the Court intended to undo the 67 years of decisions setting FLSA damages under the burden-shifting framework of *Mt. Clemens.* Seventh Circuit authority since *Comcast* only reinforces that conclusion. The *Mt. Clemens* framework remains the rule that controls here.[10]

In terms of the current class definition, the Seventh Circuit has recently cautioned against a class definition that includes within it a liability determination. *See Bolden v. Walsh Const. Co.*, 688 F.3d 893 (7th Cir. 2012).[11] In *Bolden*, the Seventh Circuit found problematic a Title VII class of employees who were denied overtime work "because of their race." *Bolden*, 688 F.3d at 895. "Using a future determination on the merits to specify the scope of the class makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the employer should prevail on the merits, this would deprive the judgment of preclusive effect." *Id*. If the definition could be altered by revising the language to fix the issue, the Seventh Circuit noted, the problem is reparable.

---

[10] Smith also argues that the propriety of applying *Comcast* to wage and hour cases is demonstrated by the Supreme Court's recent grant of certiorari and order to vacate and remand the Seventh Circuit's decision in *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012), *vacated by* 133 S.Ct. 1722 (2013), a decision cited in earlier opinions in this case. (Dkt 406 at 4.) Smith' argument overstates the significance of the remand order, which is not a determination on the merits in *Ross*, but rather only a return of the case to the Seventh Circuit for further consideration in light of intervening legal developments. *See Tyler v. Cain*, 533 U.S. 656, 666 n. 6 (2001). The *Ross* case was ultimately settled without any further action by the Seventh Circuit. *See Ross*, No. 09 C 5695 (N.D. Ill.) [dkt 403].

[11] Smith, quoting a brief passage from *Bolden*, 688 F.3d 893, argues that the duration of the class should be limited to the named plaintiffs' last employment dates. (*See* dkt 378 at 13 n. 10.) The concern expressed in *Bolden* relates to the lack of a connection in a so-called "across-the-board" discrimination case between the plaintiff's alleged injury and that of a proposed class. *See id; Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008). There is no similar concern here where the named plaintiffs have alleged and established that their injury is the same as that of the class.

23

*Id.* To avoid any such concern, the court adopts a modification to the IMWL dual jobs class definition (*see* dkt 382 at 4):

> Persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate.

The members of this class have been identified and have been sent notice of the lawsuit and the claims. (Dkt 388, Ex.1, Tr. Nov. 28, 2012 at 4.) The current class definition of each tipped employee is the same class that was certified for the claim that AppleIllinois failed to provide statutorily-required notice before taking the tip credit. Interestingly, although Smith' current motion seeks to have that class decertified as well (dkt 377), Smith received the benefit of class certification when this court granted its motion for summary judgment on that claim. (Notice Op.)

Smith fears that many tipped employees will now receive damages even though they neither performed unrelated tasks nor any substantial amount of related but nontip-producing duties. However, plaintiffs have the initial burden under *Mt. Clemens*. Smith has the right to present opposing evidence, but to the extent plaintiffs' evidence sufficiently creates a just and reasonable inference as to the class, under the well-settled *Mt. Clemens* framework, the burden shifts to Smith. *See Mt. Clemens*, 328 U.S. at 1192-93 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with" its statutory obligations.) Whether plaintiffs' evidence will establish damages for the class as a matter of just and reasonable inference remains to be determined.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a pretrial order finding AppleIllinois' total loss of the tip credit [dkt 369] is denied and defendants' motion for decertification [dkt 377] is denied. In addition, the individual defendants' motion to extend the automatic stay [dkt 413] is denied as moot, and plaintiffs' motion requesting that the court issue decisions regarding the individual defendants [dkt 422] is granted. A status hearing is set for November 12, 2013 to set a schedule for proceedings in the claim against Smith and any other individual defendants who have not reached a settlement.


**IT IS SO ORDERED.**

_Geraldine Soat Brown_
_____
Geraldine Soat Brown
United States Magistrate Judge


Dated: October 29, 2013