**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GLENN DRIVER, DEMIKO D. McCASTER ROSAMAR MALLARI, JOYCE A. BRITTON, and MICHAEL H. HICKS, on behalf of themselves and all other persons similarly situated, known and unknown,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 06 C 6149** |
| **v.** | ) ) | |
| **APPLEILLINOIS, LLC d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, W. CURTIS SMITH, JAMES BORKE, J. TIMOTHY BRUGH, ARCHIE IODICE, JERRY KREGER, and JOHN DOES 1-100,** | ) ) ) ) ) ) | **Magistrate Judge Brown** |
| **Defendants.** | ) | |

**INDEX OF ATTACHMENT AND EXHIBITS TO
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Order Preliminarily Approving the Class Action Settlement .................................... **Attachment 1**

Settlement Agreement...........................................................................................**Exhibit 1**

- Exclusion List ...........................................................................................Exhibit A

- Claim Form ...............................................................................................Exhibit B

- Notice of Class Action ........................................................................... Exhibit C

- A Long Form – Detailed Notice ...............................................................Exhibit D

Declaration of Jamie G. Sypulski .................................................................**Exhibit 2**

# ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GLENN DRIVER, DEMIKO D. McCASTER ROSAMAR MALLARI, JOYCE A. BRITTON, and MICHAEL H. HICKS, on behalf of themselves and all other persons similarly situated, known and unknown,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 06 C6149** |
| **v.** | ) ) | **Magistrate Judge Brown** |
| **APPLEILLINOIS, LLC d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, et al.** | ) ) ) ) | |
| **Defendants.** | ) | |

**ORDER PRELIMINARILY APPROVING THE
CLASS ACTION SETTLEMENT AGREEMENT,
SCHEDULING HEARING FOR FINAL APPROVAL, AND APPROVING
PROPOSED SETTLEMENT NOTICE TO CLASS MEMBERS**

WHEREAS, Named Plaintiffs have filed an unopposed motion requesting an order preliminarily approving the Parties' settlement of this Litigation as stated in the Class Action Settlement Agreement, which, together with the attachments and exhibits attached thereto (collectively, "Settlement Agreement"), set forth the terms and conditions for a proposed settlement of the Litigation and for dismissal of the Litigation;

WHEREAS, the Court has read and considered the Settlement Agreement and the briefing submitted in support of preliminary approval of the Settlement;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The Court hereby preliminarily approves the Settlement Agreement and the Settlement set forth therein as fair, reasonable and adequate. The Settlement Agreement is the result of arm's-length negotiations, facilitated by the Settlement Conference Program of the

Court of Appeals, between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular.

2.      Named Plaintiffs have filed an unopposed motion for leave to file the Fourth Amended Complaint, which adds a class action vacation pay claim under the Illinois Wage Payment and Collection Act, with Named Plaintiffs Lisa Mello and David R. Zajac.  Leave to file the Fourth Amended Complaint is granted.

3.      The Court previously approved Jamie G. Sypulski, of the Law Office Jamie Golden Sypulski, and Douglas M. Werman, of Werman Salas P.C., as Class Counsel in the *Driver* class certification, and the Court extends that approval to Class Counsel for the *Mello* Class.  Likewise, the Court previously approved the *Driver* Named Plaintiffs as Class Representatives, and hereby approves Named Plaintiffs Lisa Mello and David R. Zajac as the *Mello* Class Representatives.

4.      The Court approves the engagement of Kurtzman Carson Consultants, LLC, to act as Claims Administrator.  The costs of claims administration shall be paid out of the Settlement Fund.

5.      A hearing, for purposes of determining whether the Settlement should be finally approved, shall be held before this Court on _____, 2014, at ____ __.m., in Courtroom 1812 of the United States District Court, 219 South Dearborn, Chicago, Illinois.  At the hearing, the Court will hear final arguments concerning whether the Settlement of the Litigation on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and should be approved by the Court.  The Court will also hear at that time objections submitted by Class Members, if any.  The Court will also consider Class Counsel's

request for Service Awards to the Named Plaintiffs, and the request for an award of attorneys' fees and costs.

6.      The Court approves, as to form and content, the Claim Form and the Notice Forms, Exhibits B, C and D of the Settlement Agreement, and finds that the distribution of the Class Notice set forth in Sections V and VII of the Settlement Agreement: (1) meets the requirements of federal law and due process; (2) is the best notice practicable under the circumstances; and (3) shall constitute due and sufficient notice to all individuals entitled thereto.

7.      All Class Members who are entitled to opt-out of the Settlement Class and do not do so shall be bound by all determinations and judgments in the Litigation concerning the Settlement, whether favorable or unfavorable to the Settlement Class.

8.      Class Members shall be required to submit a Claim Form to participate in the Settlement and receive a monetary award.

9.      Class Members who wish to exclude themselves ("opt out") from the Settlement Class and not participate in the proposed Settlement must submit a written Request for Exclusion to the Claims Administrator. Each Class Member submitting a Request for Exclusion shall include his or her full name, address and telephone number, and must personally sign the Request.  The Request for Exclusion must be postmarked no later than ninety (90) days after the date of mailing of the Settlement Notice Packet.

10.     Class Members objecting to the terms of the settlement must do so in writing. The written objection must be sent to the Claims Administrator, and must thereafter be filed with the Clerk of the Court. The written objection must be postmarked no later than ninety (90) days after the date of mailing of the Settlement Notice Packet.

11.     Any Class Member of the *Driver* or *Mello* Class may enter an appearance in the Litigation, at his or her own expense, individually or through counsel of his or her own choice. Any Class Member who does not enter an appearance or opt out of the Settlement will be represented by Class Counsel.

12.     Any Class Member may appear at the Final Approval Hearing and show cause, if any, why: (1) the Settlement Agreement should or should not be approved as fair, reasonable, and adequate; (2) why a judgment should or should not be entered thereon; (3) why Named Plaintiffs should or should not receive Service Awards; and (4) why Class Counsel should or should not be awarded attorneys' fees and costs. However, no Class Member or any other person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the judgment to be entered thereon, or if awarded, Named Plaintiff Service Awards or the attorneys' fees and costs awarded to Class Counsel, unless that person has, no later than ninety (90) days after the date of mailing of Notice of Class Action Settlement, served, by hand or by first class mail, on the Claims Administrator, written objections, and copies of any papers and briefs in support thereof explaining the basis of the objection. All such objections shall be filed with the Clerk of the Court by Class Counsel and considered and ruled upon by the Court at the Final Approval Hearing. Any Class Member who does not submit his or her objection in the manner provided above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement as incorporated in the Settlement Agreement, the Service Awards, or an award of attorneys' fees and costs to Class Counsel, unless otherwise ordered by the Court.

13. All papers in support of the Settlement shall be filed no later than seven (7) days prior to the Final Approval Hearing, including Class Counsel's petition for an award of attorneys' fees and costs.

14. The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.


DATED: _____   _____
              Presiding Magistrate Judge Geraldine Brown

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GLENN DRIVER, DEMIKO D. McCASTER** | ) | |
| **ROSAMAR MALLARI, JOYCE A. BRITTON,** | ) | |
| **and MICHAEL H. HICKS, on behalf of** | ) | |
| **themselves and all other persons similarly** | ) | |
| **situated, known and unknown,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 06 C6149** |
| | ) | |
| **v.** | ) | **Magistrate Judge Brown** |
| | ) | |
| **APPLEILLINOIS, LLC d/b/a APPLEBEE'S** | ) | |
| **NEIGHBORHOOD GRILL & BAR,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement ("Settlement Agreement," "Settlement" or the "Agreement") is made and entered into by and between Plaintiffs Glenn Driver, Demiko McCaster, Rosamar Mallari, Joyce Brittan, Michael Hicks ("*Driver* Named Plaintiffs"), the *Driver* Class Members, Lisa Mello and David Zajac ("*Mello* Named Plaintiffs"), the *Mello* Class Members, and Defendants W. Curtis Smith, Doreen Borke, as executrix of the estate of James Borke, Archie Iodice, Jerry Kreger and Scott Cortner ("Defendants"). This Agreement shall be binding on and inure to the benefit of: (1) Named Plaintiffs and Class Members; and (2) Defendants and their estates, employees, insurers, agents, attorneys, insurers, successors, and assigns, subject to the terms and conditions hereof and the approval of the Court.

## Table of Contents

**Section** **Page**

I.       RECITALS ................................................................................................................ 1

II.      DEFINITIONS........................................................................................................... 6

III.     SETTLEMENT APPROVAL PROCEDURE............................................................. 11

IV.      DUTIES OF THE PARTIES PRIOR TO COURT PRELIMINARY APPROVAL ..... 12

V.       DUTIES OF THE CLAIMS ADMINISTRATOR ....................................................... 13

VI.      SETTLEMENT AMOUNT, SETTLEMENT ACCOUNT AND ALLOCATION....... 15

VII.     CLAIMS PROCEDURE............................................................................................ 21

VIII.    SERVICE AWARDS................................................................................................. 25

IX.      ATTORNEYS' FEES AND EXPENSES ................................................................... 26

X.       RELEASE BY NAMED PLAINTIFFS ..................................................................... 26

XI.      RELEASE BY CLASS MEMBERS .......................................................................... 27

XII.     NO ADMISSION OF LIABILITY............................................................................. 27

XIII.    DUTIES OF THE PARTIES RELATED TO FINAL COURT APPROVAL .............. 28

XIV.     PARTIES' AUTHORITY .......................................................................................... 28

XV.      MUTUAL FULL COOPERATION ........................................................................... 29

XVI.     DATA REASONABLY ACCURATE ....................................................................... 29

XVII.    NO PUBLICITY....................................................................................................... 29

XVIII.   FAIR, REASONABLE AND ADEQUATE SETTLEMENT...................................... 30

XIX.     VOIDING THE AGREEMENT ................................................................................ 30

XX.      NO PRIOR ASSIGNMENTS ................................................................................... 30

XXI.     ENFORCEMENT ACTIONS ................................................................................... 31

XXII.    COMMUNICATIONS .............................................................................................. 31

XXIII.    CONSTRUCTION ......................................................................................................... 32

XXIV.    CAPTIONS .................................................................................................................. 32

XXV.    MODIFICATIONS ......................................................................................................... 32

XXVI.    INTEGRATION CLAUSE ............................................................................................. 33

XXVII.    BINDING ON ASSIGNS ............................................................................................. 33

XXVIII.  COUNTERPARTS ....................................................................................................... 33

XXIX.    APPLICABLE LAW ..................................................................................................... 33

XXX.    RETENTION OF JURISDICTION ................................................................................ 34

**SECTION I**
**RECITALS**

1.     These Recitals are an integral part of this Agreement.

2.     On October 6, 2006, *Driver* Named Plaintiffs filed a class action complaint on behalf of themselves and similarly-situated persons against AppleIllinois, L.L.C. ("AppleIllinois"), in the Chancery Division of the Circuit Court of Cook County. The complaint alleged violations of minimum wage, overtime and straight-time violations under the Illinois Minimum Wage Law ("IMWL") and Illinois Wage Payment and Collection Act ("IWPCA"). 820 ILCS 105/1, *et seq.*; 820 ILCS 115/1, *et seq. Driver* Named Plaintiffs also alleged, on an individual basis, violations of the minimum wage and maximum hour provisions of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq.* AppleIllinois removed the case to the Northern District of Illinois on November 9, 2006, where it was assigned case number 06-6149 (the "*Driver* Litigation" or "*Driver*"). The central allegation of the complaint is that AppleIllinois violated the minimum wage provisions of the FLSA and the IMWL by failing to pay tipped employees minimum wage for performing non-tipped duties. *See* Doc. 141, Third Am. Compl., (filed April 22, 2009). In amended pleadings, *Driver* Named Plaintiffs brought the individual Defendants into the *Driver* Litigation. *Id.*

3.     On March 2, 2010, the Court granted in part *Driver* Named Plaintiffs' motion for certification in the *Driver* Litigation. *See* Doc. 231, Mem. Op. & Order, at 2, 46-47 (entered Mar. 2, 2010). Of the three IMWL claims originally certified by the Court under Rule 23(b)(3), the remaining certified class is the non-tipped duty or 'dual job' claim.[1] The current iteration of

---

[1]     Plaintiffs withdrew their excessive tip-out claim as a result of U.S. Department of Labor's revision to FLSA regulation, which occurred after the filing of the Litigation. Regarding

that definition is:

> Persons employed by Defendant AppleIllinois**,** LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate.

4.      Class notice was sent out on August 13, 2010.  The *Driver* Class list then included 12,312 individuals.  Eleven individuals opted-out of the *Driver* Litigation.  Ex. A, Notice Exclusion List.  The *Driver* Class list shall be filed with the Court prior to Final Approval. On August 27, 2012, the Court granted summary judgment on liability to the *Driver* Named Plaintiffs under the FLSA, and liability relating to the *Driver* Class claims under the IMWL.  *See* Doc. 363, Mem. Op. & Order, at 2, 50 (entered Aug. 27, 2012).

5.      On June 4, 2010, Plaintiff Lisa Mello brought a class action complaint under the IWPCA, alleging that AppleIllinois failed to pay hourly employees who separated from employment all earned vacation pay as part of the employees' final compensation.  *Mello v. AppleIllinois, LLC*, 10 C 3433 (N.D. Ill.) (the "*Mello I* Litigation" or "*Mello I*").  On December 5, 2011, then-Chief Judge Holderman granted class certification of two classes of hourly employees subject to the AppleIllinois vacation policy.[2]  *See* Doc. 69, Order, at 1, (entered Dec. 5, 2011).   As defined, the classes are:

> (a)      All persons separated from employment with AppleIllinois, LLC, in Illinois between August 17, 2002, and the present who were subject to AppleIllinois's Vacation Pay policy and did not receive all earned vacation pay benefits, and who were employed less than one year (the "Initial Year Subclass").

---

the "notice" claim, this Court ruled on January 8, 2013, that the employer's obligation to inform tipped employees of the tip credit provisions under the IMWL was satisfied.  *See* Doc. 387, Mem. Op. & Order, at 10 (entered Jan. 8, 2013).

[2]      By the time of the December 5, 2011 Order, David R. Zajac had joined the *Mello I* Litigation as an additional named plaintiff.

    (b)      All persons separated from employment with AppleIllinois, LLC, in Illinois between August 17, 2002, and the present who were subject to AppleIllinois's Vacation Pay policy and did not receive all earned vacation pay benefits, and who were employed for one year or more (the "Subsequent Year Subclass").

6.     The *Mello* Class list shall be filed with the Court prior to Final Approval.

7.     On July 21, 2012, in the midst of briefing on cross motions for summary judgment, Judge Holderman issued an order directing Plaintiffs to file a memorandum identifying the basis of subject matter jurisdiction. *See* Doc 94, Order, at 1, (entered Dec. 5, 2011). As a result of that inquiry, Plaintiffs sought to dismiss the case without prejudice and refile the case in the Chancery Division of the Circuit Court of Cook County. On September 17, 2012, Plaintiffs refiled in the Chancery Division of the Circuit Court of Cook County as Case No. 12 CH 35110, with Judge Mary Mikva presiding.

8.     Plaintiffs renewed their class certification motion in state court. On April 17, 2013, after briefing and oral argument, Judge Mikva indicated from the bench that she would grant Plaintiffs' motion for class certification, but directing *Mello* Named Plaintiffs to add an additional named plaintiff who would represent hourly employees averaging less than 30 hours per week of work.

9.     On April 22, 2013, AppleIllinois filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky. *See* Doc. 1, Pet., Case No. 13-20723 (E.D. Ky. Bank.) (the "AppleIllinois Chapter 11 Case").[3] The filing of the AppleIllinois Chapter 11 Case triggered an automatic stay of any litigation of prepetition claims against AppleIllinois. Due to that filing, the

---

[3]     The *Driver* and *Mello I,* Class Counsel retained bankruptcy counsel Scott Schreiber, of Stahl, Cowen, (now of Clark Hill) Chicago, to represent the Classes in the bankruptcy action.

*Driver* Litigation was temporarily stayed, and the *Mello I* Litigation was placed in a "bankruptcy hold" status in Chancery Court. At this time, the proceedings in the AppleIllinois Chapter 11 case continue.

10.     On July 26, 2013, the *Mello* Named Plaintiffs filed a second class action complaint in Chancery Court, *Mello v. W. Curtis Smith,* Case No. 13 CH 17689 ("*Mello II* Litigation" or "*Mello II*"), which identifies W. Curtis Smith and Scott Cortner as defendants. The *Mello II* Litigation has been stayed pending this Settlement. As part of this Agreement, the Parties have agreed to amend the *Driver* Litigation to include the allegations asserted in the *Mello II* Litigation, for the sole purpose that both lawsuits can be resolved in one settlement proceeding. In the event that the Court does not issue the Final Approval Order, does not grant Final Approval of the Settlement, or if for any other reason this Settlement is not finally approved, the Parties agree that the pleadings amendment adding the *Mello II* allegations to *Driver* Litigation shall be stricken, and the *Mello II* Litigation shall recommence in Chancery Court.

11.     On October 29, 2013, the Court amended the class definition (the "October 29, 2013 Order") in the *Driver* Litigation to include:

> Persons employed by Defendant AppleIllinois, LLC from October 6, 2003 to the conclusion of this action who worked as tipped employees earning a sub-minimum tip credit wage rate.

12.     Also in its October 29, 2013 Order, the Court in the *Driver* Litigation rejected the Driver Class Members' argument that damages in that case would be a total loss of the tip credit for all hours worked for all tipped employees and instead held that they could recover "the difference between the tip credit rate and the minimum wage rate for" the time spent in a nontipped occupation. *See* Doc. 493 at 10.

13.     On January 14, 2014, through the auspices of the Seventh Circuit Settlement Conference Office, and with the assistance of Settlement Attorney Jillisa Brittan, the Parties reached an agreement on settlement of all outstanding litigation including *Mello I, Mello II, Driver*, and the case of *Roberts et al. v. AppleSauce, Inc., et al*. ("*Roberts* Litigation").[4]  This Settlement Agreement represents the final expression of the Parties on that agreement, except for the resolution of the *Roberts* Litigation, which will be memorialized in a separate agreement.

14.     Class Counsel, acting in the best interest of all Named Plaintiffs and all Class Members, wish to resolve this matter in a fair and cost-effective manner that benefits those individuals without further expense, delay, diversion, or risk of additional protracted and complex litigation, or the further risks of their ability to collect any judgments obtained.

15.     Defendants and their counsel also wish to avoid the expense, burden, and risk of continued protracted litigation, and wish to resolve this matter.

16.     Should the Settlement Agreement not become final for any reason, nothing from the Parties' communications in the settlement process shall be admissible evidence, consistent with Rule 408.  Fed. R. Evid. 408.

17.     This Settlement Agreement contains all of the terms between the Parties and their respective counsel relating to their Settlement. There are no undisclosed side agreements between the Parties or their counsel.[5]  At all times, the negotiations leading to the Settlement Agreement were adversarial, non-collusive, and at arm's length.

---

[4]     The *Roberts* Litigation is pending in the United States Court of Appeals Seventh Circuit, No. 13-3126 and the underlying district court action was in the Northern District of Indiana, No. 3:12-CV-830-TLS-CAN.

[5] Except for the separate Settlement Agreement being entered into in the *Roberts* Litigation.

## SECTION II
## DEFINITIONS

18.     "Administration Costs" means all costs associated with administering the

Settlement Agreement, including such costs as incurred in providing notice to the *Driver* Class

Members in 2010.

19.     "Bankruptcy Funds" mean the funds distributed to *Driver* and *Mello* Class

Actions by the Chapter 11 Joint Plan of Liquidation once approved by the United States

Bankruptcy Court for the Eastern District of Kentucky, in the AppleIllinois Chapter 11 case.

"Additional Bankruptcy Funds" means the additional money distributed to the *Driver* and *Mello*

Class Actions by a Liquidating Trustee appointed by the Bankruptcy Court pursuant to the terms

of a confirmed Chapter 11 Plan of Liquidation and the Bankruptcy Code, if any, collected as a

result of preference actions or other similar litigation within the bankruptcy proceeding.

20.     "Claim" means a materially complete and timely-submitted Claim Form from a

Class Member to the Claims Administrator.

21.     "Claim Form" means the form, attached as Exhibit B, approved by the Court, by

which a Class Member may submit a Claim under the Agreement.  The Claim Form shall be

mailed to the last-known address of each Class Member.

22.     "Claims Administrator" refers to Kurtzman Carson Consultants, LLC, the third

party selected to administer the Settlement Agreement.

23.     "Claimant" means a Class Member who submits a materially complete and

timely Claim Form to the Claims Administrator.

24.     "Claimant Fund," or the "Fund," means the money available for distribution to

Claimants, and is the Maximum Settlement Amount, plus the Bankruptcy Funds, plus the

Additional Bankruptcy Funds, if any, minus: (a) the Service Awards; (b) attorneys' fees and costs; (c) Administrative Costs; and (d) the employer's portion of any payroll taxes.

25.      "Claim Deadline" means the date ninety (90) calendar days after the mailing date of the Class Notice, and shall be the last postmark date by which any of the following must occur in order to be timely and effective: (a) a Class Member submits a Claim Form; (b) a Class Member submits a Request for Exclusion; and (c) a Class Member submits a written objection to the Settlement Agreement.

26.      The "Class Certification Order" means the order entered by the Court in the *Driver* Litigation (ECF No. 231), dated March 2, 2010, as revised.

27.      "Class Counsel" refers to Named Plaintiffs' lawyers appointed as class counsel by the Court in the Class Certification Order.

28.      "Class Member" or "Class Members," unless preceded by "*Driver*" or "*Mello,*" and thereby designating class members of that litigation, refer to all persons who meet the class definition as identified by the Court in the October 29, 2013 Order, and all persons who meet the class definition as identified by Judge Holderman's Order of December 5, 2011.  The *Driver* Class Members and the *Mello* Class Members lists will be made part of this Agreement prior to Final Approval and shall control to identify all Class Members.  Collectively the *Driver* Class Members and *Mello* Class Members are the Class Members.

29.      "Class Notice" means the document titled "Notice of Class Action Settlement," Ex. C, to be sent to all Class Members to inform them of the terms of this Settlement Agreement and their rights and options related the Agreement.  A long-form "Detailed Notice of Class Action Settlement," Ex. D, will be available for viewing at the website or to any Class Member requesting additional information.

30.    "Class Representatives" refer to all Named Plaintiffs, unless preceded by "*Driver*" or "*Mello,*" and thereby designating Class Representatives of that litigation.

31.    "Court" refers to the United States District Court for the Northern District of Illinois, Eastern Division.

32.    "Database" means the digital data provided by Defendants during the course of the *Driver* and *Mello* Litigations, plus such supplementing data as provided by Defendants during the course of the Settlement proceedings, containing the following information with respect to each Class Member: (1) his or her name; (2) last-known home address; (3) social security number; (4) last-known telephone number;; and (5) time and payroll data for the Class Action period.

33.    "Defendants" refers to W. Curtis Smith, Doreen Borke, as executrix of the estate of James Borke, Archie Iodice, Jerry Kreger and Scott Cortner, their heirs, employees, estates, insurers, executors, successors and assigns, and the like.[6]

34.    "Defendants' Counsel" refers to the attorneys who have appeared on behalf of Defendants.

35.    "Maximum Settlement Amount" means the amount of Two Million, Seven Hundred Sixty-Five Thousand Dollars and No Cents ($2,765,000.00), which is the maximum total amount that W. Curtis Smith shall pay under the terms of this Settlement (inclusive of the employer's portion of the customary payroll taxes).

---

[6]    James Borke, Archie Iodice, and Jerry Kreger are deceased. Doreen Borke, as executrix of the estate of James Borke was substituted as the proper party in the *Driver* Litigation after the death of James Borke. The executrix of the estates of Archie Iodice or Jerry Kreger were not substituted in the *Driver* Litigation after their deaths. This Agreement inures to the benefit of these individuals as well as their estates, heirs, and assigns.

36.    "Effective Date" means the first court day after the last day of the period for appeal of the Final Approval Order, or if an appeal has been filed, the date on which the appeal is final.  The Parties agree to waive all rights to appeal upon entry of the Final Approval Order, except that Plaintiffs may appeal the allocation of Class Counsel's fees, costs and/or Service Awards should the sum awarded by the Court fall below that requested.  Notwithstanding the foregoing, where the Final Approval Order entered by the Court grants full relief sought by the Parties in the absence of any objection to the Settlement, the Effective Date shall be the date of the Final Approval Order.

37.    "Final Approval Hearing" means the hearing at which the Court will finally approve the Settlement and make such other final rulings as are contemplated by this Settlement Agreement.

38.    "Final Approval Order" means the order entered by the Court at or contemporaneous with the Final Approval Hearing that will finally approve the Settlement and make such other final rulings as are contemplated by this Settlement Agreement.  The Parties shall submit a proposed Final Approval Order for execution and entry by the Court at the time of the Final Approval Hearing, or at such other time as the Court deems appropriate.

39.    "Limitations Period" means: (a) for the *Driver* Class, the period beginning on October 6, 2003, to the date of the Final Approval Order; (b) for the *Mello* Class, the period beginning on August 17, 2002, to the date of the Final Approval Order.

40.    "Litigation" means *Mello I*, *Mello II,* and *Driver*.

41.    "Notice Packet" means the Class Notice, Claim Form, and a postage pre-paid envelope, addressed to the Claims Administrator, to be sent to each Class Member.

42.     "Opt-Out Class Member" refers to a Class Member who has timely and properly filed a Request for Exclusion, using the process specified in the Class Notice.

43.     "Opt-Out Period" means the period during which Class Members may exclude themselves from the Settlement, and is the same period as the Claim Deadline period.

44.     "Parties" refers to Plaintiffs (Named Plaintiffs and Class Members) and Defendants (W. Curtis Smith; Doreen Borke, as executrix of the estate of James Borke; Jerry Kreger and/or his estate/executrix; Archie Iodice and/or his estate/executrix; and Scott Cortner, and their successors and assigns), and in the singular refers to any of them as the context makes apparent.

45.     "Preliminary Approval Date" means the date on which the Court issues the order preliminarily approving this Agreement and attached Exhibits.

46.     "Preliminary Approval Order" means the Order of the Court granting preliminary approval of this Settlement Agreement, or as may be modified by subsequent mutual agreement of the Parties in writing and with approval of the Court.

47.     "Released Parties" refers to Defendants and their heirs, agents, successors and assigns, and as defined herein.

48.     "Released Claims" means any and all applicable federal, state, and local law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendants, of whatever kind and nature, character, and description, that were asserted in or arise out of the claims of the *Driver* and *Mello I,* and *II* Litigations. The Released Claims include claims meeting the above definition under all applicable statutes, regulations, or common law.

49.     "Request for Exclusion" means a timely, properly submitted written request from a Class Member to the Claims Administrator to be excluded from this Settlement.

50.     "Service Award" means a payment from the Settlement Fund to one of the Class

Representatives in recognition of service to the Class Members.  Class Counsel shall seek Court

approval of Service Awards for Named Plaintiffs in the following amounts: (i) Glenn Driver,

$15,000.00; (ii) Demiko McCaster, $15,000.00; (iii) Rosamar Mallari, $15,000.00; (iv) Joyce

Britton, $15,000.00; (v) Michael Hicks, $15,000.00; (vi) Lisa Mello, $12,000.00; and (vii) David

R. Zajac, $8,000.00.

51.     "Settlement Agreement" or "Settlement" refers to this Class Action Settlement

Agreement, plus its exhibits and attachments.

52.     "Settlement Fund," is the total amount of money available to satisfy all monetary

awards under this Agreement, and includes the Maximum Settlement Amount, plus the

Bankruptcy Funds, plus the Additional Bankruptcy Funds, if any.

53.     "Settlement Class" refers to all Class Members except those Opt-Out Class

Members.

54.     "Settlement Payment" means that portion of the Claimant Fund to which a

Claimant is entitled pursuant to the terms of this Settlement Agreement.  A Class Member's

"Estimated Settlement Payment" shall be calculated under the terms of this Agreement and shall

appear in the Class Member's Notice form.  Settlement Payments shall be made pursuant to the

formula(s) set forth in Section VI below.

## SECTION III
## SETTLEMENT APPROVAL PROCEDURE

55.     This Agreement will become final and effective only upon the occurrence of all of

the following events:  (a) the Agreement is executed by the Parties, or their duly authorized legal

representatives; (b) the Court approves the material terms of the Settlement as set forth in this

Agreement and enters the Preliminary Approval Order attached as Attachment 1, or an order substantially the same as the Preliminary Approval Order; (c) the Notice Packet is sent to Class Members; (d) Class Members are afforded the opportunity to: (i) file a claim; (ii) exclude themselves from the Settlement by submitting a Request for Exclusion; or (iii) file written objections to the Settlement; and (e) the Court holds the Final Approval Hearing and enters the Final Approval Order, and the time for appeal has expired (except if the Effective Date is the date of the Final Approval Order, as established in Paragraph 36).

**SECTION IV**
**DUTIES OF THE PARTIES PRIOR TO COURT PRELIMINARY APPROVAL**

56.     Promptly upon execution of this Settlement Agreement by the Parties, as soon as is practicable and without undue delay, the Parties shall submit this Agreement to the Court for Preliminary Approval.  The date of Preliminary Approval is presently set for June 13, 2014, at 9:45 a.m.  The Parties shall apply to the Court for the entry of a Preliminary Approval Order substantially in the following form:

(a)     approving, preliminarily, the Settlement Agreement, subject only to the objections of Class Members and final review by the Court;

(b)     approving, as to form and content, the Notice forms and Claim Form;

(c)     directing: (i) the mailing of the Notice Packet by first class mail to Class Members, and (ii) the posting of the Notice Forms and Claim Form on the website;

(d)     cooperating in the fulfillment of the required CAFA Notice 90 days prior to the Final Approval Hearing;

(e)      scheduling the Final Approval Hearing on the question of whether the proposed settlement, including, without limitation, payment of Service Awards, attorneys' fees and costs and Administration Costs, should be finally approved as fair, reasonable, and adequate; and

(f)      enjoining Class Members from filing or prosecuting any claims, lawsuits or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed valid Requests for Exclusion with the Claims Administrator and the Claim Deadline shall have elapsed.

57.     At the time the Parties submit to the Court this Agreement for Preliminary Approval, they shall also move the Court for leave to file the Fourth Amended Complaint, which shall, in addition to the *Driver* Litigation claims, raise the allegations of the *Mello II* Litigation. The Class Members shall move to dismiss the *Mello II* litigation pending in Chancery Court without prejudice prior to the Final Approval Hearing.

## SECTION V
## DUTIES OF THE CLAIMS ADMINISTRATOR

58.     The duties of the Claims Administrator shall include:

a.  Confirming each estimated Settlement Payment for each Class Member to be reported in the Class Notice prepared for said Class Member, in accordance with this Settlement Agreement using Class Counsel's Settlement Spreadsheet;

b.  printing and disseminating the Notice Packet by first-class mail to each and every Class Member; a second mailing of the Notice Packet to a corrected address of a Class Member, following only one skip trace for each Notice Packet returned as undeliverable by the U.S. Postal Service (under no circumstances shall the Claims Administrator materially alter the content or format of the Notice Packet);

c.  forwarding a subsequent mailing of the Notice Packet following a request by a Class Member or Class Counsel;

d.  furnishing promptly, to all counsel, copies of any Requests for Exclusion and Objections, and to Class Counsel any other written or electronic communications from each Class Member that the Claims Administrator receives;

e.  determining the amount of each Settlement Payment for each Class Member in accordance with this Settlement Agreement and the Settlement Spreadsheet;

f.  tracking of each Request for Exclusion, including maintaining the original mailing envelope in which the request was mailed and reporting to the Parties the total numbers and identities of those who have opted out;

g.  issuing and mailing each Settlement Payment to each Claimant;

h.  skip tracing or otherwise ascertaining current address and addressee information for each Notice Packet returned as undeliverable;

i.  performing all tax reporting duties required by federal, state, and/or local law related to any Settlement Payment, Service Award, and any payment made to Class Counsel pursuant to this Settlement Agreement;

j.  responding to inquiries of Class Members regarding the terms of Settlement and procedures for filing Objections and Requests for Exclusion;

k.  referring to Class Counsel all inquiries by Class Members regarding matters not within the Claims Administrator's duties specified herein and contemporaneously giving Defendant's Counsel notice of all such inquiries;

l.  responding to inquiries of Class Counsel regarding Class Members who have contacted Class Counsel regarding the terms of Settlement;

m.  apprising the counsel of the activities of the Claims Administrator via a weekly report;

n.  calculating the Employer Payroll Tax Liability Amount and setting that amount aside for the Claimant Fund, and paying such amount over to federal, state, and /or local authorities;

o.  updating the established Internet website for further notification of the Settlement and as a resource for Class Members;

p.  maintaining adequate records of its activities, including the dates of the mailing of Notice Packet(s), returned mail and other communications, and attempted written or electronic communications with Class Members;

q.  confirming, in writing, the substance of its activities and its completion of the administration of the Settlement;

r.  responding timely to communications from the counsel;

s.  reporting timely each Settlement Payment on an IRS Form W-2 and IRS Form 1099 to each settling Claimant who cashes his or her Settlement Payment;

14

t. reporting timely on an IRS Form 1099 any non-wage payments, including the Service Award and Class Counsel's attorneys' fees and costs as set forth herein;

u. paying over to federal, state, and/or local authorities, any and all employee payroll taxes (Federal income taxes, State income taxes, employee's share of FICA taxes and other State-specific statutory deductions), which were deducted from the wage portion of each Class Member's Settlement Payment, as well as the employer's portion of State and Federal payroll taxes attributable to the wage portion of each Settlement Payment, to be paid from the Claimant Fund, to the appropriate tax collection agency;

v. providing Defendants with copies of each and every IRS Form W-2 and Form 1099 issued to Class Members, to Named Plaintiffs, and to Class Counsel by the Claims Administrator in connection with this Settlement Agreement;

w. cooperating with Defendants and Defendants' instructions relating to any and all required Federal, State, and/or local tax reporting matters;

x. paying Class Counsel the attorneys' fees and costs awarded by the Court as they shall direct; and

y. performing such other duties as required by this Agreement, and any duties as the Parties mutually agree.

## SECTION VI
## SETTLEMENT AMOUNT, SETTLEMENT ACCOUNT AND ALLOCATION

59. **No later than August 8, 2014**, W. Curtis Smith shall forward by wire transfer the Maximum Settlement Amount of Two Million, Seven Hundred Sixty-Five Thousand Dollars ($2,765,000.00) to such account as the Claims Administrator shall direct. The Parties agree that the Settlement Fund held by the Claims Administrator, including the Maximum Settlement Amount and the Bankruptcy Funds, will be maintained in a Qualified Settlement Fund ("QSF") (established under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq.*,), (hereafter, the "Settlement Account") and will be administered by the Claims Administrator as such.

60. It is the sole responsibility of W. Curtis Smith to pay the Maximum Settlement Amount. None of the other Defendants have any obligation to pay all or any portion of the

Maximum Settlement Agreement at any time even if W. Curtis Smith does not pay the Maximum Settlement Amount in full. Other than the Maximum Settlement Amount owed by W. Curtis Smith, none of the Defendants, including W. Curtis Smith, owes any other funds, costs, or fees under this Agreement or as the result of its administration.

61.     With respect to the Settlement Account, the Claims Administrator shall:  (1) open and administer the Settlement Account in such a manner as to qualify and maintain the qualification of the Settlement Account as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1; (2) calculate, withhold, remit, and report each Claimant's share of applicable payroll taxes in connection with the Settlement Payment; (3) calculate, withhold, remit, and report the employer's share of all applicable payroll taxes in connection with all Settlement Payments; (4) satisfy all tax reporting, return, and filing requirements with respect to the Settlement Account and any interest or other income earned by the Settlement Account; and (5) satisfy out of the Settlement Account all taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Settlement Account.  Fees, expenses, and costs incurred in connection with the opening and administration of the Settlement Account shall be treated as and included in the costs of administering the Settlement Account and as Administration Costs.  The Parties and the Claims Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 CFR § 1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Claims Administrator and one another as necessary to effectuate the terms of this Settlement Agreement.

62.     The Settlement Account shall be used to pay:

    (a)     Settlement Payments to Claimants;

    (b)     Service Awards;

    (c)     Attorneys' fees and costs;

    (d)     Administration Costs;

    (e)     The employer's share of payroll taxes for the Claimants; and

    (f)     Other additional expenses incurred in connection with the administration

of this Settlement Agreement and approved by the Court.

63.     The amount of the Claimant Fund available to Claimants of the *Driver* Class and

*Mello* Class shall be based on the following formula:

    (a)     Total *Driver* Class Minimum Wage Damages:

        i.     the total number of hours all Class Members worked at the tip-credit wage rate shall be aggregated to determine the "*Driver* Class Hours Worked";

        ii.    for all *Driver* Class Hours Worked, the difference between the applicable minimum wage at the time the hours were worked and the tip-credit wage rate paid shall be aggregated to determine the "*Driver* Class Minimum Wage Damages"; and

        iii.   using the *Driver* Class Minimum Wage Damages, additional damages available under the IMWL shall be calculated at the statutory rate of two percent per month of the amount of the underpayment, and those amounts shall be aggregated and added to the *Driver* Class Minimum Wage Damages, and multiplied by twenty-five percent (25%), to determine the "Total *Driver* Class Minimum Wage Damages".

    (b)     Total *Mello* Class Vacation Wage Damages:

        i.     for each Class Member, total hours worked divided by 1,560 equals the employee's *Mello Pro Rata* Factor ("MPRF");

        ii.    The MPRF multiplied by 40 hours equals the amount of vacation hours earned ("Earned Vacation Hours");

      iii. Earned Vacation Hours multiplied by the employee's most recent regular rate of pay for the applicable time period ("Regular Rate") equals the amount of gross vacation pay owed ("Gross Pay Owed"); and

      iv. If the employee was paid one or more vacation benefits during his employment, those paid benefits are subtracted from the Gross Pay Owed;

      v. The aggregate of the Gross Pay Owed to each Class Member shall be the "Total *Mello* Class Vacation Wage Damages."

(c) The Total *Driver* Class Minimum Wage Damages plus the Total *Mello* Class Vacation Wage Damages equals the "Total Damages":

      i. Total *Driver* Class Minimum Wage Damages divided by Total Damages equals the percentage of the Claimant Fund allocated to Claimants of the *Driver* Class ("*Driver* Claimant Fund"); and

      ii. Total *Mello* Class Vacation Wage Damages divided by Total Damages equals the percentage of the Claimant Fund allocated to Claimants of the *Mello* Class ("*Mello* Claimant Fund").

64. Each Class Member's "Estimated Settlement Payment" from the Claimant Fund shall be calculated as follows:

(a) *Driver* Class Minimum Wage Component:

      i. the total number of hours worked at the tip-credit wage rate by the Class Member divided by the *Driver* Class Hours Worked, equals the Class Member's *Driver Pro Rata* Factor ("DPRF");

      ii. the Class Member's DPRF shall be multiplied by the *Driver* Claimant Fund to determine the Class Member's *Driver* Class Minimum Wage Component;

(b) *Mello* Class Vacation Wage Component:

      i. for each Class Member, total hours worked divided by 1,560 equals the employee's MPRF;

      ii. The MPRF multiplied by 40 hours equals the amount of Earned Vacation Hours;

        iii.   Earned Vacation Hours multiplied by the the Class Member's Regular Rate equals the amount of Gross Pay Owed;

        iv.   If the Class Member was paid one or more vacation benefits during his employment, those paid benefits are subtracted from the Gross Pay Owed; and

    (c)   The *Driver* Class Minimum Wage Component plus the *Mello* Class Vacation Wage Component equals the Class Member's Estimated Settlement Payment.

65.    Any Class Member whose Estimated Settlement Payment, as calculated under the formulae in Paragraph 64, is less than $25.00, shall receive an Estimated Settlement Payment of $25.00.

66.    In the event that the sum of the Estimated Settlement Payments of all Claimants is equal to the Claimant Fund, the Estimated Settlement Payment for each Claimant shall be that Claimant's Settlement Payment. If the sum of the Estimated Settlement Payments of all Claimants is less than the Claimant Fund, each Claimant shall receive a *pro rata* increase to his or her Estimated Settlement Payment, such that the sum of all actual Settlement Payments shall be equal to the Claimant Fund.

67.    Any additional funds available in the Claimant Fund as a result of the receipt of any Additional Bankruptcy Funds shall be distributed subject to the same computation established in Paragraphs 63 through 66, except if the administrative cost of the distribution of additional funds, compared with the distribution amount, renders that distribution impracticable.

68.    In the event that any money remains in the Claimant Fund after the final distribution of any and all funds, including the Maximum Settlement Amount, the Bankruptcy Funds and all Additional Bankruptcy Funds, that remainder shall revert to the *cy pres* recipient the Illinois Bar Foundation.

69.     For income and payroll tax purposes, the Parties agree that fifty percent (50%) of the each Settlement Payment shall be allocated as wages (which shall be subject to required withholdings and deductions and reported as wage income as required by law), and the remaining fifty percent (50%) of each Settlement Payment shall be allocated as penalties, interest, and other non-wage recovery (which shall not be subject to required withholdings and deductions and shall be reported as non-wage income as required by law).  Any distribution made to Claimants subsequent to the initial distribution, as if Additional Bankruptcy Funds shall at some future date become available, such Settlement Payments made in that subsequent distribution shall be treated as non-wage income.  The Claims Administrator shall report the wage portion of a Settlement Payment by IRS Form W-2, and the non-wage portion by IRS Form 1099.  However, any Settlement Payment less than $50.00 shall be treated as wages only, subject to customary withholdings and deductions and reportable by IRS Form W-2.  Other than withholding and reporting responsibilities of Claims Administrator, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state. and/or local income or other taxes on payments received pursuant to this Settlement.

70.     To the extent permitted by law, in no event shall any Settlement Payment to a Claimant, or any Service Award to a Named Plaintiff, create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation, or benefit under any compensation, deferred compensation, pension, or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive, or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify

20

any benefits, contributions, or coverage under any other employment compensation or benefit plan or program.

71.     In addition to withholding the employee's portion of any applicable payroll taxes, the Claims Administrator shall calculate and set aside the employer's payroll portion of tax liability, which shall be paid from the Settlement Fund.  The Claims Administrator shall remit that amount to the appropriate taxing body at the appropriate time.

**SECTION VII**
**CLAIMS PROCEDURE**

72.     No later than **seven (7) calendar days following the Preliminary Approval Date**, Defendants shall provide information to update the Database to the Claims Administrator and Class Counsel.

73.     No later than **twenty-eight (28) calendar days following the Preliminary Approval Date**, the Claims Administrator shall mail to each Class Member the Notice Packet at that person's last-known address, as reflected in the Database, supplemented with a commercial search service to update the data as necessary.  This mailing shall be made via first-class mail through the United States Postal Service, postage pre-paid.

74.     Each Claim Form shall be pre-printed with the amount of the Class Member's Estimated Settlement Payment, with a statement that, as a Claimant, the Class Member's actual Settlement Payment may be increased depending on Class participation and the availability of Additional Bankruptcy Funds.

75.     To receive a Settlement Payment under this Settlement, Class Members must materially complete and execute a Claim Form and submit that Claim Form to the Claims Administrator no later than the Claim Deadline.  Unless a Notice Packet is returned as

undeliverable, each Notice shall be deemed mailed and received by the Class Member to whom it was sent five (5) days after mailing.

76.     The date of submission of a Claim Form to the Claims Administrator is deemed to be the earlier of:  (a) the date the Claim Form is deposited in the U.S. Mail as evidenced by the postmark; (b) the date the Claim Form is tendered to a overnight service for delivery, as indicated by a shipping envelope; or (c) the date of receipt by Class Counsel of the Claim Form. In the event a Claim Form is timely but is not materially complete, the Claims Administrator shall immediately notify the Class Member, via U.S. mail, about the deficiency.  If available, the Class Member shall also be notified by e-mail or telephone call.  A Claim Form corrected after a deficiency notice is timely if received prior to the Claim Deadline.  Further, a corrected Claim Form that is materially complete and received within twenty-one days (21) days following the date of mailing of the deficiency notice, whether or not received by the Claim Deadline, shall be deemed timely.  If any dispute about the validity of any Claim Form arises, the Parties shall meet and confer in good faith in an attempt to resolve the dispute.  Any disputes that cannot be resolved by the Parties shall be submitted to the Court for a final determination.

77.     In the event that an issue arises that is not specifically addressed in this Agreement or is ambiguously addressed, the Parties shall meet and confer in good faith in an attempt to resolve the issue.   Any issue that cannot be resolved by the Parties shall be submitted to the Court for a final determination.

78.     With regard to any settlement documents that are returned as undeliverable, the Claims Administrator shall utilize customary commercially available means to obtain a current address and, if a current address is located, shall promptly re-mail the documents in question.

79.     If any Class Member disagrees with the estimated amount of the Settlement

Payment identified on the Notice, the Class Member must provide documents (*e.g.,* check stubs,

cancelled checks, payroll documents, or registration records), or equivalent information,

evidencing his or her claim.  For settlement purposes only, the Parties have assumed that the

hours worked by each Class Member is a record that Defendants accurately maintained, was

accurately included in the Database, and that that information was accurately identified on each

Class Member's Notice.  That data shall be presumed to be accurate unless the Class Member

informs the Claims Administrator of any mistake.  In the event of any dispute over a Class

Member's hours worked, the Parties shall meet and confer in good faith in an attempt to resolve

the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final

determination.

80.     Only non-excluding Class Members may object to the Settlement Agreement.  To

object to the Agreement, the Class Member must send a written objection to the Claims

Administrator no later than the Claim Deadline.  The objection must set forth the legal and

factual arguments supporting the objection.

81.     For a Class Member to request exclusion from the Settlement, the individual must

submit a letter that states, in effect: "I worked at an AppleIllinois Applebee's restaurant in

Illinois as an hourly employee since August 17, 2002.  I request to be excluded from the

settlement in *Driver v. AppleIllinois, LLC,* Case No. 06 C 6149."  The Class Member must

include his or her full name, address, and telephone number, and must personally sign the letter.

All Requests for Exclusion must be submitted by the Claim Deadline.  No Class Members may

exclude themselves by telephone, facsimile, or electronic mail.  The date of submission is

deemed to be the earlier of: (a) the date the written exclusion is deposited in the U.S. Mail,

23

postage pre-paid, as evidenced by the postmark; or (b) the date the written exclusion is received by the Claims Administrator. Any Class Member who submits a timely and valid exclusion request shall: (i) NOT be bound by any orders or judgments entered in this Litigation; (ii) NOT be entitled to benefits or relief under this Settlement Agreement; (iii) NOT gain any rights by virtue of this Settlement Agreement; and (iv) NOT be entitled to object to the Settlement or appeal from any order of the Court. Upon receipt of a Request for Exclusion, the Claims Administrator shall send a copy of the Request for Exclusion to Class Counsel and Defendants' Counsel. If a fully completed and properly executed Request for Exclusion is not received by the Claims Administrator from the Class Member timely, then that Class Member will be deemed to have forever waived his or her right to opt out of the Class. If a Class Member submits both a timely Claim Form and a timely Request for Exclusion, the Claims Administrator shall attempt to contact that individual to ascertain his or her intent. If those efforts are unsuccessful, whichever document was mailed later will govern. If both documents were mailed simultaneously, or the sequence of mailings cannot be determined, then the Claim Form shall govern.

82.     No later than **seven (7) calendar days in advance of the Final Approval Hearing**, or by such other date as the Court may direct: (1) Class Counsel shall file and serve a motion for final approval of the Settlement; and (2) the Parties shall file a proposed order granting final approval of the Settlement, along with a proposed order of dismissal with prejudice.

83.     No later than **twenty-eight (28) calendar days following the Effective Date**, the Claims Administrator shall mail to each Claimant a check representing the actual Settlement Payment, net of customary payroll withholding. In the event that any Settlement Payment check

is returned as undeliverable, the Claims Administrator shall report that forthwith Class Counsel, who will use reasonable efforts to locate a current address for the individual and, if a current address is found, the Claims Administrator shall re-mail the check.  Settlement Payment checks shall be negotiable for **one-hundred-twenty (120) calendar days from the date of mailing; Settlement Payment checks not cashed after that date shall be void and those amounts shall revert to the Claimant Fund.**

84.     Pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants shall notify the appropriate governmental authorities, including, but not limited to, the attorneys general of the United States and Illinois.  Defendants also agree to provide documents and information to the appropriate governmental authorities pursuant to Section 1715 ("CAFA notice").  The Parties agree that CAFA notice must be provided 90 days prior to the Final Approval Hearing.  The Parties agree to modify dates and deadlines in this Agreement so as to insure that CAFA notice is provided in within this deadline.  The Named Plaintiffs and their counsel agree to cooperate in providing information that may be needed from them to effectuate these notices.

## SECTION VIII
## SERVICE AWARDS

85.     As provided above, Class Counsel will seek approval of the Court for Service Awards for Named Plaintiffs to be paid from the Settlement Account, in recognition of the time they spent and the risk they undertook in prosecuting this lawsuit, and their service to the Class. Defendants shall not oppose these requests.

86.     No later than **twenty (21) calendar days following the Effective Date**, the Claims Administrator shall pay the Service Award to each individual entitled to receive one.

The Parties agree that the Service Award is in addition to any Settlement Payment to which

Named Plaintiffs are entitled. The Claims Administrator shall report the Service Awards as non-

wage income on an IRS Form 1099.  Other than any reporting of these payments as required by

this Settlement Agreement or law, the Named Plaintiff receiving a Service Award shall be solely

responsible for the reporting and payment of any federal, state and/or local income or other form

of tax on any payment made pursuant to this Section.  Any amounts not awarded by the Court

shall be distributed pursuant to the terms of this Agreement.

## SECTION IX
## ATTORNEYS' FEES AND EXPENSES

87.     Class Counsel will move the Court for an award of attorneys' fees of one-third

($^1/_3$) of the Settlement Fund.  Class Counsel will also move the Court for reimbursement of

litigation expenses actually incurred in connection with the litigation of *Mello I*, *Mello II*, and

*Driver*.    Defendants shall not oppose these requests.

88.     No later than **ten (10) calendar days following the Effective Date,** the Claims

Administrator shall pay to Class Counsel, as they shall direct at that time, from the Settlement

Fund the attorneys' fees and costs awarded by the Court.    The amount received by Class

Counsel shall discharge any and all attorney liens of Class Counsel, or any prior counsel to the

Named Plaintiffs in the *Driver*, *Mello I*, and *Mello II* Litigation.

## SECTION X
## RELEASE BY NAMED PLAINTIFFS

89.     The Named Plaintiffs remise, release, and forever discharge all claims, demands,

rights, liabilities, and causes of action of every nature and description whatsoever, known or

unknown, asserted or that might have been asserted against the Released Parties, whether in tort,

26

contract, or for violation of any state or federal statute, rule, or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof with the sole exception of any claims which cannot be released as a matter of law ("General Release"). The General Release includes any unknown claims the Named Plaintiffs do not know or suspect to exist in their favor at the time of the General Release, which, if known by them, might have affected their settlement with, and release of, the Released Parties by the Named Plaintiffs or might have affected their decision not to object to this Settlement or the General Release. The General Release includes, but is not limited to, all Released Claims. In exchange for providing this General Release, the Named Plaintiffs will receive their Service Awards and their Settlement Payments, as set forth in Paragraphs 63 through 66 of this Agreement.

## SECTION XI
## RELEASE BY CLASS MEMBERS

90.     Upon Final Approval, any Class Member who has not timely filed a request for exclusion shall, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, be deemed to release and forever discharge all Released Claims.

## SECTION XII
## NO ADMISSION OF LIABILITY

91.     This Agreement shall not in any way be construed as an admission by Defendants that they acted wrongfully with respect to tipped or hourly employees, collectively or individually, or to any other person, or that those individuals have any rights whatsoever against Defendants, and Defendants specifically disclaim any liability to or wrongful acts against Plaintiffs or any other person. Furthermore, the Parties agree that this Agreement does not

constitute an adjudication of the merits of the Litigation, or any other matters released in this Agreement.

92.     This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

## SECTION XIII
## DUTIES OF THE PARTIES RELATED TO FINAL COURT APPROVAL

93.     **No later than seven (7) calendar days in advance to the date of the Final Approval Hearing,** or by such other date as the Court may direct, Class Counsel shall submit a proposed final order:

      a.   approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

      b.   approving the Settlement Payments and Service Awards;

      c.   approving the Administration Costs;

      d.   approving Class Counsel's application for an award of attorneys' fees and costs; and

      e.   dismissing this lawsuit with prejudice and permanently barring and enjoining all Class Members, except those excluded, from filing or prosecuting against Released Parties, any individual or class or collective claims released herein pursuant to the above sections, upon satisfaction of all payments and obligations hereunder.

## SECTION XIV
## PARTIES' AUTHORITY

94.     The undersigned signatories hereby represent that they are fully authorized to enter into this Settlement and bind the Parties hereto to its terms and conditions.

**SECTION XV**
**MUTUAL FULL COOPERATION**

95.     The Parties agree to fully cooperate with each other to accomplish the terms of
this Settlement, including but not limited to, execution of such documents and taking such other
action as reasonably may be necessary to implement the terms of this Settlement.  The Parties to
this Settlement shall use their best efforts, including all efforts contemplated by this Settlement
and any other efforts that may become necessary by order of the Court, or otherwise, to
effectuate this Settlement and the terms set forth herein.  As soon as practicable after execution
of this Settlement, Class Counsel shall, with the assistance and cooperation of Defendants and
Defendants' Counsel, take all necessary steps to secure the Court's final approval of this
Settlement and to effectuate CAFA Notice.

96.     Should the Court not approve the Agreement, or should the Court not approve and
enter the Preliminary Approval Order (whether as submitted or without such changes by the
Court that either Party deems material), the Parties agree in good faith to negotiate about
appropriate revisions necessary to address Court concerns, and to re-submit the Agreement or
Order for Court approval.  In the event that Court approval is not ultimately obtained, this
Agreement shall be null and void, the Parties will retain all rights and defenses in the Litigation,
and all negotiations, information, and materials pertaining to this Agreement or the Settlement
will be inadmissible, as provided by Fed. R. Evid. 408.

**SECTION XVI**
**DATA REASONABLY ACCURATE**

97.     The computation of Settlement Payments is based on time and wage data supplied
by AppleIllinois.  AppleIllinois has represented that, to the best of its knowledge and belief, all

29

data supplied is reasonably accurate, and Defendants further understand and acknowledge that this representation is a material term of this Agreement.

## SECTION XVII
## NO PUBLICITY

98.     The Parties agree that no public statements shall be made regarding the Litigation or the Settlement and its terms.  The term "public statements" includes comments to the press, press releases, web postings, including such postings on attorney websites, and similar such actions, and shall apply to the Parties' Counsel, Named Plaintiffs and Defendants' management. This paragraph does not apply to website postings by the Claims Administrator for purposes of information and notice to Class Members.

## SECTION XVIII
## FAIR, REASONABLE, AND ADEQUATE SETTLEMENT

99.     The Parties agree that, considering all the circumstances at issue, the Settlement Agreement is fair, reasonable, and adequate, and will so represent to the Court.

## SECTION XIX
## VOIDING THE AGREEMENT

100.     If this Settlement Agreement is not ultimately approved by the Court, the Settlement shall be deemed null and void, of no force and effect, of no probative value, and the Parties hereto represent, warrant, and covenant that it will not be used or referred to for any impermissible purpose.  In addition, the Parties shall jointly request that the Court dismiss the Fourth Amended Complaint, reinstate the Third Amended Complaint, and the *Mello II* Litigation shall recommence in Chancery Court.  Should this Settlement Agreement not be ultimately approved by the Court, the Claims Administrator shall return the money paid by Curtis Smith, plus any interest in the Settlement Account, less costs incurred by the Claims Administrator.

## SECTION XX
## NO PRIOR ASSIGNMENTS

101.    The Parties represent, covenant, and warrant that they have not directly or

indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any

person or entity any portion of any liability, claim, demand, action, cause of action, or rights

released and discharged in this Settlement.

## SECTION XXI
## ENFORCEMENT ACTIONS

102.    In the event any Party institutes any legal action or other proceeding to enforce

the provisions of this Settlement Agreement or to declare rights and/or obligations under this

Agreement, the prevailing party shall be entitled to recover from the non-prevailing party

reasonable attorneys' fees and costs, including expert witness fees.

## SECTION XXII
## COMMUNICATIONS

103.    Unless otherwise specifically provided, all notices, demands, or other

communications given under this Settlement shall be in writing and shall be deemed received on

the third business day after mailing by United States registered or certified mail, return receipt

requested, addressed as follows:


a.  **To the Plaintiffs**:

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 North Michigan Avenue, Suite 1000
Chicago, Illinois 60601
Telephone: (312) 332-6202
Facsimile:  (312) 580-7175
Electronic Mail: jsypulski@sbcglobal.net

**And**:

31

Douglas M. Werman
Werman Salas P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
Facsimile: (312) 419-1025
Electronic Mail: info@flsalaw.com.

**To Defendants**:

Hallie Diethelm Caldarone
Jackson Lewis P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
Telephone (312) 803-2526
Electronic Mail: caldaroh@jacksonlewis.com

### SECTION XXIII
### CONSTRUCTION

104.    The Parties agree that the terms and conditions of this Settlement are the result of

lengthy, intensive arm's-length negotiations between the Parties, and therefore the contract

construction principle of *contra proferentem* shall not apply in resolving ambiguity in this

Agreement.

### SECTION XXIV
### CAPTIONS

105.    Paragraph titles or captions contained in this Settlement are inserted as a matter of

convenience and for reference, and in no way define, limit, extend, or describe the scope of this

Settlement or any of its provisions.

### SECTION XXV
### MODIFICATIONS

106.    This Settlement Agreement may not be changed, altered, or modified, except in

writing and signed by the Parties and approved by the Court.  This Agreement may not be

discharged except by performance in accordance with its terms or by a writing signed by the

Parties and approved by the Court.  No rights under this Settlement may be waived except in writing.

**SECTION XXVI**
**INTEGRATION CLAUSE**

107.    This Settlement Agreement contains the entire agreement between the Parties relating to the Settlement of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Settlement.

**SECTION XXVII**
**BINDING ON ASSIGNS**

108.    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

**SECTION XXVIII**
**COUNTERPARTS**

109.    This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement.

**SECTION XXVIX**
**APPLICABLE LAW**

110.    This Settlement Agreement shall be governed by and construed in accordance with Illinois law.

## SECTION XXX
## RETENTION OF JURISDICTION

111.    The Court shall retain jurisdiction with respect to the implementation and

enforcement of the terms of the Settlement, and all Parties submit to the jurisdiction of the Court

for purposes of implementing and enforcing the terms of this Settlement Agreement.

| **CLASS COUNSEL:** | **ATTORNEYS FOR DEFENDANTS:** |
|---|---|
| _____<br><br>Jamie G. Sypulski<br>Law Office Jamie Golden Sypulski<br>150 North Michigan Avenue, Suite 1000<br>Chicago, Illinois 60601<br>Telephone: (312) 332-6202 | _____<br><br>Hallie Diethelm Caldarone<br>JACKSON LEWIS LLP<br>150 North Michigan Avenue<br>Suite 2500<br>Chicago, Illinois 60601<br>Telephone: (312) 787-4949 |
| Named Plaintiffs<br><br>_____<br>Glenn Driver<br><br>_____<br>Demiko McCaster<br><br>_____<br>Roger Mallari<br><br>_____<br>Joyce Britton<br><br>_____<br>Michael Hicks<br><br>_____<br>Lisa Mello<br><br>_____<br>David Zajac | _____<br>W. Curtis Smith |

# EXHIBIT A



3301 Kerner Blvd
San Rafael, CA 94901

Case Administration Statistics - **CONFIDENTIAL**
Case Name **- *Driver v. AppleIllinois***

Case Manager: Bernie Lenhart
Direct Telephone: 415-458-3678
Facsimile: 415-256-9756
Email:  Bernie.Lenhart@gilardi.com

Mailing Date: 8/13/2010
Opt-Out Deadline: 10/12/2010

**Plaintiffs Counsel**
 Jamie G. Sypulski, Esq.
 Douglas M. Werman, Esq.

| Period Ending: | NOTIFICATION MAILINGS | | | RETURNED UNDELIVERABLE MAIL | | NOTICE PACKET REQUESTS | OPT-OUTS RECEIVED |
| | Notice Packets Mailed | RUM [1] | Remails [2] | Searched | Remailed | | Valid |
|---|---|---|---|---|---|---|---|
| 8/20/2010 | 12,205 | 37 | 4 | 37 | 22 | 3 | 2 |
| 8/30/2010 | 0 | 1658 | 0 | 1627 | 1122 | 1 | 2 |
| 9/3/2010 | 0 | 307 | 49 | 305 | 216 | 1 | 3 |
| 9/12/2010 | 0 | 129 | 45 | 62 | 43 | 0 | 2 |
| 9/17/2010 | 0 | 186 | 11 | 70 | 50 | 0 | 0 |
| 9/24/2010 | 0 | 169 | 3 | 35 | 20 | 5 | 0 |
| 10/1/2010 | 0 | 35 | 0 | 26 | 16 | 1 | 1 |
| 10/8/2010 | 0 | 10 | 1 | 8 | 5 | 0 | 1 |
| 10/15/2010 | 0 | 16 | 1 | 0 | 0 | 0 | 0 |
| **TOTAL:** | 12,205 | 2,547 | 114 | 2,170 | 1,494 | 11 | 11 |

**Notes**

[1] RUM is an acronym for Returned Undeliverable Mail indicating mail returned by the United States Postal Service (USPS).
[2] Remails are RUM returned with a forwarding address from the USPS which are remailed to the new address.



Driver v. AppleIllinois
Request for Exclusion
10/22/2010

## TOTAL: 12

| Control# | FirstName | LastName | OptOut |
|---|---|---|---|
| DRVER10006435 | JEANINE M | BATKA | LATE |
| DRVER10012257 | APRIL M | BROUILLET | TIMELY |
| DRVER10025219 | RACHEL | DEPUY | TIMELY |
| DRVER10031197 | ANTHONY | FASHODA | TIMELY |
| DRVER10041230 | MARIA DEL ROCIO | GUZMAN | TIMELY |
| DRVER10046674 | CRYSTAL | HOGAN | TIMELY |
| DRVER10077774 | JACLYN N | NORA | TIMELY |
| DRVER10081097 | JESSE J | PALMER | TIMELY |
| DRVER10083570 | BRANDY L | PESAVENTO | TIMELY |
| DRVER10086676 | KIMBERLY | PRICE | TIMELY |
| DRVER10102604 | MACIEJ | SOBOCZYNSKI | TIMELY |
| DRVER10114246 | ALLISON M | WALLIS | TIMELY |

# EXHIBIT B

UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

*Turner, et al. v. AppleIllinois, LLC, et al.*
*Applebee's Neighborhood Grill & Bar, et al.*
Case No. 06 C 6149
AppleIllinois Settlement

_____

Claims Administrator
_____
_____

«FirstName»
«LastName»
«Address1»
«Address2»
«City» «State»
«Zip»

Name/Address Changes, if any:

_____

_____

_____

Enter the last four digits of your social security number and any other names you used while employed at AppleIllinois, LLC d/b/a Applebee's Neighborhood Grill & Bar.

Social Security Number (Last Four Digits ONLY):  X X X – X X – ____ ____ ____ ____

Former Names (if any):  _____

Phone Number: (____)_____  E-mail Address: _____

*\*If your name or address is different from what is reported above on the left, please print the corrected information on the lines to the right. If making corrections, please make sure to provide a phone number where you can be reached during the daytime, Monday through Friday.  Please keep the settlement administrator informed of any change of address.*

**TO PARTICIPATE IN THE SETTLEMENT, YOU MUST SIGN AND SUBMIT THE CLAIM FORM BY THE DATE INDICATED BELOW.**

---

### CLAIM FORM AND RELEASE

**If you wish to participate in the Settlement and receive a Settlement Payment, you must provide the information requested above, sign and date this Claim Form, and return it to the Claims Administrator in the enclosed postage-prepaid envelope or by first class U.S. mail or equivalent, postage paid, postmarked on or before (90 days post-mail), 2014.**

**Based on the information provided by AppleIllinois, your estimated payment in this settlement is $<<est. payment>>.** Your actual payment depends on the number of persons who participate in the Settlement and may be more or less than this amount.

**If you wish to participate in the Settlement, please sign below.**

Signature: _____

Date: _____

---

# EXHIBIT C

## NOTICE OF CLASS ACTION SETTLEMENT: APPLEILLINOIS, LLC

**If you worked for AppleIllinois, LLC d/b/a Applebee's Neighborhood Grill & Bar, from August 17, 2002, through the present, a class action settlement may affect your rights.**

The parties have reached a settlement in the case *Driver, et al. v. AppleIllinois, LLC d/b/a Applebee's Neighborhood Grill & Bar, et al.*, 06 C 6149, a class action lawsuit against Defendants W. Curtis Smith, Doreen Borke as executrix of the estate of James Bork, Archie Iodice, and Jerry Kreger. The lawsuit alleges that Defendants violated the Illinois minimum wage law by paying employees a "tip-credit" rate less than minimum wage, while requiring those employees to perform non-tipped duties. The parties have also settled the class action lawsuit *Mello v. W. Curtis Smith and Scott Cortner*, 13 CH 17689. This lawsuit alleges that Defendants W. Curtis Smith and Scott Cortner violated the Illinois Wage Payment and Collection Act by failing to pay severed employees all earned vacation pay. You are receiving this Notice because records show that you worked as a tipped employee or an hourly employee for AppleIllinois since August 17, 2002. Defendant Smith has agreed to pay at $2,765,000.00 to settle these lawsuits. The United States District Court for the Northern District of Illinois has authorized this Notice. Before any money is paid, the Court will hold a hearing to decide whether to approve the settlement. In addition to the money available in settlement of these lawsuits, money is also available from the AppleIllinois, LLC, bankruptcy proceeding in Kentucky based on these claims, which will be distributed through this settlement procedure. The amount of money available through the bankruptcy is not yet known.

### Who Is Included in the Settlement?

The settlement includes two groups of AppleIllinois employees: (i) tipped employees who worked at any time since October 6, 2003; and (ii) all hourly employees (including tipped employees) who worked since August 17, 2002, and who separated from employment.

### What Is this Lawsuit About?

This *Driver* lawsuit claimed that AppleIllinois required servers, bartenders, hosts and car-sides to perform non-tipped duties, but failed to pay them minimum wage, violating federal and state law. The Court found that AppleIllinois did violate the law. The *Mello* lawsuits claimed that AppleIllinois and Defendants Smith and Cortner failed to pay hourly employees who separated from employment all earned vacation pay. The Court did not decide that issue. Both sides agreed to the settlement to resolve the lawsuits. You can get more information, by visiting the website at http://appleillinoisclassaction.com/, or by calling the Claims Administrator at _____.

### What does the Settlement Provide?

Defendant Smith has agreed to pay $2,765,000.00 to settle these lawsuits. More money is available as a result of AppleIllinois's bankruptcy distribution. **IF YOU WISH TO RECEIVE SOME OF THIS MONEY, YOU MUST COMPLETE AND RETURN THE ENCLOSED CLAIM FORM NO LATER THAN (*90 days post mailing*), 2014.**

**Your estimated payment in this settlement is $XX.XX.** Your actual payment may be more or less depending on the number of people who file claims. Your estimated payment was calculated by using AppleIllinois' pay records. For a full explanation of how the payments are calculated, please see the detailed Notice available at the website at http://appleillinoisclassaction.com/, or call the Claims Administrator at _____.

**In order to receive a payment, you must mail the enclosed Claim Form no later than (*90 days post mailing*), 2014, to the address appearing on the self-addressed, stamped envelope included with this Notice.**

The Settlement affects the rights of all Class Members who do not exclude themselves. If you remain in the lawsuit, you will release and forever discharge all federal and state law claims against all Defendants and their heirs, agents, successors and assigns, which were asserted in or arise out of the claims of the lawsuits.

### What Are Your Options?

As a Class Member, you have three options: (1) mail-in a Claim Form to receive money; (2) do nothing; (3) exclude yourself from the settlement. As long as you do not exclude yourself, you may also object to the terms of the settlement. If you do NOT want to be legally bound by the settlement, you must exclude yourself by returning written notice of your exclusion by (*90 days post mailing*), 2014. The written notice of your exclusion must include your full name, address, and telephone number, state that you wish to be excluded from the settlement, be personally signed by you and mailed to the Claims Administrator. If you exclude yourself, you cannot receive money from this settlement or object to its terms, but you may be able to sue or continue to sue Defendants on your own for the legal claims at issue in these cases. If you stay in the settlement, you may object to the settlement terms by (*90 days post mailing*), 2014. The detailed Notice further explains how to exclude yourself or to object, which you may review before excluding yourself or objecting to the terms of the settlement.

The Court will hold a hearing in this case on _____, 2014, at _____ _.m. The hearing will be held in the United States District Court for the Northern District of Illinois, Courtroom ____, 219 South Dearborn Street, Chicago, Illinois. At the hearing, the Court will consider: (1) whether the settlement is fair, adequate and reasonable; (2) a request for payments to the individuals who started the lawsuits in recognition of their service to the classes; and (3) a request for attorneys' fees and costs for investigating the facts, litigating the case and negotiating the settlement, of one-third of the settlement amount plus the bankruptcy distribution, and costs. You may ask to appear at the hearing, but you do not have to. For more information, call the Claims Administrator at ____ or mail written questions to:

**Kurtzman Carson Consultants, LLC**
**Contact information**

# EXHIBIT D

## NOTICE OF CLASS ACTION SETTLEMENT

*Driver, et al. v. AppleIllinois LLC d/b/a Applebee's Neighborhood Bar & Grill, et al.*
Case No. 06 C 6149

**To:**  **(i)  Persons employed by Defendant AppleIllinois, LLC, from October 6, 2003, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate; and**

**(ii)  All persons separated from employment with AppleIllinois, LLC, in Illinois between August 17, 2002, and the present who were subject to AppleIllinois's Vacation Pay policy and did not receive all earned vacation pay benefits**

**PLEASE READ THIS NOTICE CAREFULLY, AS IT MAY AFFECT YOUR LEGAL RIGHTS TO RECEIVE PAY RELATED TO AND/OR RESULTING FROM YOUR EMPLOYMENT WITH APPLEILLINOIS, LLC, d/b/a APPLEBEES' NEIGHBORHOOD BAR & GRILL**

The Parties have reached settlement in two class action lawsuits: *Driver, et al. v. AppleIllinois, LLC d/b/a Applebee's Neighborhood Grill & Bar, et al.*, 06 C 6149 and *Mello v. W. Curtis Smith, et al.*, 13 CH 17689 ("*Mello II*").  The *Driver* lawsuit was filed in the Northern District of Illinois, and alleges that Defendants AppleIllinois, LLC, W. Curtis Smith, Doreen Borke as executrix of the estate of James Bork, Archie Iodice, and Jerry Kreger violated federal and state minimum wage laws by paying tipped employees a "tip-credit" rate less than the minimum wage, while requiring those employees to perform non-tipped duties.  The *Mello II* lawsuit alleges that Defendants W. Curtis Smith and Scott Cortner violated state law by failing to pay separated employees all earned vacation pay as part of their final compensation.  In addition to the money available as a result of this Settlement, an unknown amount of additional money will be available from the AppleIllinois, LLC, bankruptcy based on these claims.  That money will also be distributed through this Settlement.

The Court has preliminarily approved the Parties' Settlement Agreement ("Settlement").  You have received this notice because Defendants' records indicate that you were employed by AppleIllinois sometime since August 17, 2002. This notice is designed to inform you how you can join the Settlement, object to, or comment in favor of the Settlement, or exclude yourself from the Settlement.

**PLEASE NOTE:**  You will not receive any money from this Settlement unless you submit a Claim Form.

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:**

**SUBMIT CLAIM FORM**
If you want to participate in the Settlement and receive a portion of the Settlement money, you **must** file a Claim Form. If you do, you will give up any right to sue Defendants for the claims resolved by this Settlement.

**DO NOTHING**
If you do nothing, you will give up any right to sue Defendants for the claims resolved by this Settlement, but you will **not** receive any money to be paid under the Settlement.

**EXCLUDE YOURSELF**
If you **do not wish** to participate in the Settlement, you **must** submit a written request for exclusion. If you do, you will **not** receive any money, you will **not** be bound by the terms of the Settlement, but you **will** retain the right to file your own lawsuit against Defendants, should you choose.

**OBJECT**
If you choose to remain in the case, you may file an objection with the Claims Administrator if you do not like any of the Settlement terms.

**ATTEND FAIRNESS HEARING**
You may ask to speak in Court about the fairness of the Settlement.

## I.      BACKGROUND OF THE CASE

### The *Driver* Litigation

On October 6, 2006, Plaintiffs Glenn Driver, Demiko D. McCaster, Rosamar Mallari, Joyce A. Britton, and Michael H. Hicks ("*Driver* Named Plaintiffs") filed a class action complaint on behalf of themselves and similarly-situated persons against AppleIllinois in the

Chancery Division of the Circuit Court of Cook County. The complaint alleged violations of minimum wage, overtime and straight-time violations under the Illinois Minimum Wage Law ("IMWL") and Illinois Wage Payment and Collection Act ("IWPCA"). 820 ILCS 105/1, *et seq.*; 820 ILCS 115/1, *et seq.* The *Driver* Named Plaintiffs also alleged, on an individual basis, violations of the minimum wage and maximum hour provisions of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq.* On November 9, 2006, AppleIllinois removed the case to federal court in the Northern District of Illinois. The central allegation of the *Driver* complaint is that AppleIllinois violated the minimum wage provisions of the FLSA and the IMWL by failing to pay tipped employees minimum wage for performing non-tipped duties.

On March 2, 2010, the Court granted the *Driver* Named Plaintiffs' motion for certification and certified three classes. On August 27, 2012, the Court granted summary judgment on liability against AppleIllinois to the *Driver* Named Plaintiffs under the FLSA, and liability to the *Driver* Class under the IMWL.

On October 29, 2013, the Court amended the class definition in the *Driver* Litigation to include:

> Persons employed by Defendant AppleIllinois, LLC from October 6, 2003 to the conclusion of this action who worked as tipped employees earning a sub-minimum tip credit wage rate.

**The *Mello I* Litigation**

On June 4, 2010, Plaintiff Lisa Mello brought a class action complaint under the IWPCA, alleging that AppleIllinois failed to pay hourly employees who separated from employment all earned vacation pay as part of the employees' final compensation. *Mello v. AppleIllinois, LLC*, 10 C 3433 (N.D. Ill.). On December 5, 2011, the district court granted class certification of two classes of hourly employees subject to the AppleIllinois vacation policy.

Based on a federal jurisdictional issue, on September 17, 2012, Plaintiffs refiled the case in the Chancery Division of the Circuit Court of Cook County as Case No. 12 CH 35110, with Judge Mary Mikva presiding. On April 17, 2013, Judge Mikva indicated from the bench that she would grant Plaintiffs' motion for class certification.

**AppleIllinois Bankruptcy Filing**

On April 22, 2013, AppleIllinois filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky. *See* Doc. 1, Pet., Case No. 13-20723 (E.D. Ky. Bank.) (the "AppleIllinois Chapter 11 Case"). The filing of the AppleIllinois Chapter 11 Case triggered an automatic stay of the litigation against AppleIllinois in *Driver* and *Mello I*.

Some amount of money will be available to the *Driver* and *Mello* Classes from this bankruptcy, but the amount is not yet known. That sum will be distributed through the procedure established in the Settlement Agreement.

**The *Mello II* Litigation**

On July 26, 2013, in light of the AppleIllinois bankruptcy filing, the *Mello* Named Plaintiffs filed a second class action complaint in Chancery Court, *Mello v. W. Curtis Smith and Scott Cortner,* Case No. 13 CH 17689, which identifies W. Curtis Smith and Scott Cortner as Defendants.

**The Settlement**

On January 14, 2014, the Parties reached an agreement on settlement of all outstanding litigation. The Named Plaintiffs, Defendants, and their respective counsel, considering the risks and uncertainties of continued litigation as well as further risks of appeal and ultimate collectability of any judgment, determined that the Settlement is advantageous to all Parties, and

particularly the Class Members. The Parties and their Counsel believe that the Settlement is fair, reasonable, and adequate and is in the best interests of the Class Members. As a Class Member, you may participate in the Settlement and share in the proceeds to be paid under the Settlement if you submit a Claim Form.

## II.     SUMMARY OF THE SETTLEMENT

The Settlement provides for the following:

### A.     Who is included in the Settlement?

You may participate in the Settlement if you worked for AppleIllinois as a tipped employee since October 6, 2003, or if you worked as an hourly-paid employee since August 17, 2002.

### B.     What will you receive from the Settlement?

Defendant Smith has agreed to pay $2,765,000.00 to settle the lawsuits. In addition, money will be available, in an amount not yet known, from the AppleIllinois bankruptcy proceeding (together, the "Settlement Fund"). After deduction of service awards, attorneys' fees and costs, and the costs of administration, all of which are subject to Court approval, the funds remaining will be available for distribution to Class Members (the "Claimant Fund").

The Notice to each Class Member will include an "Estimated Settlement Payment," which will be the estimated amount of the Claimant Fund due to the Class Member, based on the length of time the Class Member worked for Defendants and the applicable Settlement Classes.

### Claimant Fund Allocation

The amount of the Claimant Fund distributable to *Driver* Class Members will be calculated based on the following formulae:

Total *Driver* Class Minimum Wage Damages:

      i.     the total number of hours all Class Members worked at the tip-credit wage rate shall be aggregated to determine the "*Driver* Class Hours Worked";

      ii.    for all *Driver* Class Hours Worked, the difference between the applicable minimum wage at the time the hours were worked and the tip-credit wage rate paid shall be aggregated to determine the "*Driver* Class Minimum Wage Damages"; and

      iii.   using the *Driver* Class Minimum Wage Damages, additional damages available under the IMWL shall be calculated at the statutory rate of two percent per month of the amount of the underpayment, and those amounts shall be aggregated and added to the *Driver* Class Minimum Wage Damages, and multiplied by twenty-five percent (25%), to determine the "Total *Driver* Class Minimum Wage Damages".

The amount of the Settlement Fund available for distribution to the *Mello* Class Members shall be determined as follows:

Total *Mello* Class Vacation Wage Damages:

      i.     for each Class Member, total hours worked divided by 1,560 equals the employee's *Mello Pro Rata* Factor ("MPRF");

      ii.    The MPRF multiplied by 40 hours equals the amount of vacation hours earned ("Earned Vacation Hours");

      iii.   Earned Vacation Hours multiplied by the employee's most recent regular rate of pay for the applicable time period ("Regular Rate") equals the amount of gross vacation pay owed ("Gross Pay Owed"); and

      iv.   If the employee was paid one or more vacation benefits during his employment, those paid benefits are subtracted from the Gross Pay Owed;

      v.    The aggregate of the Gross Pay Owed to each Class Member shall be the "Total *Mello* Class Vacation Wage Damages."

The Total *Driver* Class Minimum Wage Damages plus the Total *Mello* Class Vacation Wage Damages equal the "Total Damages." The Total *Driver* Class Minimum Wage Damages divided by the Total Damages is the percentage of the Claimant Fund available to Claimants of the Driver Class (the "*Driver* Claimant Fund"). And the Total *Mello* Class Vacation Wage Damages divided by the Total Damages is the percentage of the Claimant Fund allocated to Claimants of the *Mello* Classes ("*Mello* Claimant Fund").

For *Driver* Class Members, the Estimated Settlement Payment is calculated by dividing the Class Member's total number of hours worked at the tip-credit wage rate by the *Driver* Class Hours Worked to get the Class Member's *Driver Pro Rata* Factor ("DPRF"). The DPRF is then multiplied by the *Driver* Claimant Fund to determine the Class Member's *Driver* Class Minimum Wage Component. To calculate the *Mello* Class Vacation Wage Component, the Class Member's total hours worked divided by 1,560 is the Class Member's MPRF, which multiplied by 40 hours equals the Class Member's amount of Earned Vacation Hours. Multiplying the Earned Vacation Hours by the Class Member's Regular Rate equals the amount of Gross Pay Owed. The *Mello* Class Vacation Wage Component is the Gross Pay Owed, less any vacation benefits the Class Member was paid during his or her employment. The *Driver* Class Minimum Wage Component plus the *Mello* Class Vacation Wage Component equals the Class Member's Estimated Settlement Payment. Any Class Member whose Estimated Settlement Payment is less than $25.00 will receive an Estimated Settlement payment of $25.00.

**C.    When will you get paid?**

No payments will be made until the Settlement receives final Court approval, and any appeal or review of that approval has been resolved in favor of the Settlement. The Parties estimate that Settlement Payments will be issued in November or December, 2014.

**D.    How do I participate in the Settlement?**

To receive a Settlement Payment, you **MUST** complete and return the Claim Form to the Claims Administrator by **(*90 days post mailing*)**, 2014.

**E.    Who is administering the Settlement?**

The Claims Administration will be performed by Kurtzman Carson Consultants, LLC. The Claims Administrator will collect completed Claim Forms and Requests for Exclusion, and will issue payments to Class Members.

**F.    What claims are being released?**

At time of the Court's final approval of this Settlement, all Class Members who have NOT excluded themselves from the case (including those Class Members who have not returned timely Claim Forms) will release Defendants of all "Released Claims." Released Claims includes all applicable federal, state, and local law claims, obligations, demands, actions, rights,

causes of action, and liabilities against Defendants that were asserted in or arise out of the *Driver* or *Mello* litigation.

### G. Named Plaintiffs' Service Awards

In addition to their payments as claiming Class Members, Class Counsel will seek approval of Service Awards to Named Plaintiffs in the following amounts: (i) Glenn Driver, $15,000.00; (ii) Demiko McCaster, $15,000.00; (iii) Rosamar Mallari, $15,000.00; (iv) Joyce Britton, $15,000.00; (v) Michael Hicks, $15,000.00; (vi) Lisa Mello, $12,000.00; and (vii) David R. Zajac, $8,000.00. These awards are made in recognition of their efforts over many years in prosecuting the cases on behalf of absent class members. If the Court approves these awards, the Claims Administrator will pay these amounts to the Named Plaintiffs from the Settlement Fund.

### H. Attorneys' Fees and Costs

Class Counsel will seek approval from the Court for payment of attorneys' fees in the amount of one-third ($^1/_3$) of the Settlement Fund. Class Counsel will also move the Court for reimbursement of litigation expenses actually incurred in connection with the underlying *Driver* and *Mello* litigation. The Court-approved fees and costs will be paid by the Claims Administrator from the Settlement Fund. Class Counsel believes the requests for attorneys' fees and costs are fair and reasonable, and Defendants will not oppose these requests.

### I. Claims Administrator

Class Counsel will seek approval from the Court for payment of fees and costs of the Claims Administrator, which will be presented to the Court prior to final approval.

## III. NAMED PLAINTIFFS' AND CLASS COUNSEL'S SUPPORT OF THE SETTLEMENT

The Named Plaintiffs and Class Counsel support the Settlement. Class Counsel believes the Settlement is an excellent result for the Class Members, especially in light of the inherent risk

of trial and the delays and uncertainties associated with litigation, including the possibility of non-collectability of a judgment, and the circumstances resulting from the AppleIllinois bankruptcy. The lawsuits have been long and protracted, and Class Counsel believes that further proceedings in these cases are not in the best interests of the Class Members. In Class Counsel's estimation the Settlement is fair, reasonable, and adequate.

## IV.  WHAT ARE YOUR RIGHTS AS A CLASS MEMBER?

As a Class Member, you can participate in the Settlement or request to be excluded from the Settlement. If you do not exclude yourself from the Settlement, you may also tell the Court what you do or do not like about the Settlement.

### A.  Participating in the Settlement:

The Named Plaintiffs and Class Counsel represent your interests as a Class Member. Unless you request to be excluded from the Settlement, you are a Class Member and you will be bound by the terms of the Settlement and any final judgment that may be entered by the Court. You will also release your claims against Defendants for minimum and overtime wages and vacation pay. As a Class Member, you will NOT be responsible for the payment of attorneys' fees or reimbursement of litigation expenses, unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and costs.

In order to receive a Settlement Payment, you must complete and return the Claim Form by (***90 days post mailing***), 2014, to the address identified on the self-addressed, stamped envelope included in the Notice Packet.

### B.  Commenting in Favor of the Settlement:

If you wish, you may comment in favor of the Settlement in writing and/or by appearing in person at the final approval hearing, which will be held on _____, 2014 at ___. To do so, you

must submit a written notice of your comments and/or your intent to appear and comment in favor of the Settlement at the final approval hearing no later than (***90 days post mailing***), 2014. Your notice should include your full name, address, and dates of employment with AppleIllinois. Mail your notice to:

<mark>Claims Administrator</mark>

**DO NOT TELEPHONE THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL.**

 **C.** **The Difference Between Objecting and Excluding:**

 *Objecting* is simply telling the Court that you do not like something about the Settlement. Objecting will not remove you from the Settlement, so if you want to receive money from the Settlement, you should file a Claim Form in addition to your objection. *Excluding* yourself is telling the Court that you do not want to be a Class Member. If you exclude yourself, you will not receive any Settlement payment and will have no basis to object because the case no longer affects you.

 **D.** **Objecting to the Settlement:**

 You may tell the Court that you do not like the Settlement or some aspect of the Settlement before its final approval, either by submitting a written objection or a written notice of your intent to appear and object at the final approval hearing. If the Court rejects your objection, however, you will still be bound by the terms of the Settlement. To object, you must submit a written notice of objection or a written notice of your intent to appear and object at the final approval hearing no later than <mark>_____</mark>, 2014. Your notice should include your full name, address, and dates of employment with AppleIllinois. Mail your notice to:

Claims Administrator

**DO NOT TELEPHONE THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL.**

10

Any written objection must state each specific reason in support of your objection, any legal support for any objection, and whether you wish to appear and be heard at the final approval hearing. A Class Member who fails to submit a written objection by the specified deadline will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

**E.      Excluding Yourself From the Settlement:**

If you **do not** want to participate in the Settlement, you **do not** want to be legally bound by the Settlement, and you want to keep your right to sue Defendants on your own, then you must exclude yourself from the Settlement.  If you exclude yourself from the Settlement, you will not get money from the Settlement and will not participate as a Class Member.  To exclude yourself from the Settlement you must submit a Request for Exclusion.  The Request for Exclusion must be in writing and must include your full name, address, and telephone number, and you must personally sign the letter.  All Requests for Exclusion must be mailed to the Claims Administrator no later than (**90 days after mailing**), 2014.

A Class Member who fails to mail a Request for Exclusion in the manner and by the deadline specified will be bound by all of the terms and conditions of the Settlement if it is approved by the Court, regardless of whether he or she has objected to the Settlement.

**F.      RISK OF NON-RECEIPT**

Whether you file a Claim, object to the Settlement, or exclude yourself from the Settlement, you should know that the risk of non-receipt falls on the Class Member.  So it is in your interest to contact the Claims Administrator prior to the deadline to ensure that your Request for Exclusion was received.

## V.     FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a final approval hearing on _____, 2014, at ___ __.p., in Courtroom ___, Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604.  At that time, the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court will also be asked to approve Class Counsel's request for costs and attorneys' fees and the Service Awards made to the Named Plaintiffs.

The hearing may be postponed or rescheduled without further notice to the Classes.  **It is not necessary for you to appear at this hearing.  If you have given notice of your comments in favor of the Settlement or your objection to the Settlement, you may appear at the hearing as long as you have mailed a notice of your intent to appear to the Claims Administrator by (90 days after mailing), 2014.**

## VI.     GETTING MORE INFORMATION

If you wish, you can review the complete Settlement Agreement by contacting the Claims Administrator.

**Please do not Telephone the Court, Defendants, or Defendants' Counsel.**

**FOR INFORMATION REGARDING THE SETTLEMENT OR THE CLAIMS PROCESS, CONTACT THE CLAIMS ADMINISTRATOR**

12

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GLENN DRIVER, DEMIKO D. McCASTER** | ) | |
| **ROSAMAR MALLARI, JOYCE A. BRITTON,** | ) | |
| **and MICHAEL H. HICKS, on behalf of** | ) | |
| **themselves and all other persons similarly** | ) | |
| **situated, known and unknown,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 06 C6149** |
| | ) | |
| **v.** | ) | **Magistrate Judge Brown** |
| | ) | |
| **APPLEILLINOIS, LLC d/b/a APPLEBEE'S** | ) | |
| **NEIGHBORHOOD GRILL & BAR,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF JAMIE GOLDEN SYPULSKI
IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF
THE PARTIES' CLASS ACTION SETTLEMENT**

I, Jamie Golden Sypulski, being first duly sworn on oath, deposes and states under penalty of perjury the following:

1.    I make this declaration in support of preliminary approval of the parties' Class Action settlement.  All the facts stated herein are true and correct and are within my personal knowledge.

2.    I graduated with honors from Chicago-Kent College of Law, Chicago, Illinois, in 1992, and was admitted to practice law in the State of Illinois in that year.  I was admitted to the bar of the State of Indiana in 1993.  Between November 1992 and September 1998, I was associated with the Law Offices Gerhard E.W. Kelter, Jr., P.C., in Chicago, Illinois.  During my time at Law Offices Kelter, I represented management in labor and employment matters.  Since September 1998, I have been a sole practitioner representing plaintiffs in employment and civil

1

rights issues.

3.      I am admitted to practice before the United States Court of Appeals for the Seventh Circuit and Second Circuit, and all the federal district courts in the states of Illinois and Indiana.  I also have been admitted to a number of other federal courts *pro hac vice*.

4.      Approximately 95 percent of my practice involves representing plaintiffs in federal and state court, in Illinois, Indiana and elsewhere.  Of that, approximately 90 percent of my work involves wage and hour cases that seek to collect unpaid wages for employees; most often, low-wage workers.

5.      I have been lead or co-counsel in scores of cases in federal and state court involving the non-payment of overtime, minimum wage, vacation pay or other owed compensation.  Many of these cases were collective actions under the Fair Labor Standards Act, or class action claims under state law.  These cases include: *Johnson, et al. v. Pinstripes, Inc., et al.,* No. 12 C 1018, 2013 U.S. Dist. LEXIS 138253, at *1 (N.D. Ill. Sept. 26, 2013) (combined class and collective action); *Schaefer v. Walker Bros. Enters., Inc.,* No. 10 CV 6366, Order re Class Certification, ECF No. 123, slip op. at 1 (N.D. Ill. Sept. 19, 2013) (class action); *Clark v. Honey-Jam Café, LLC,* No. 11 C 3842, 2013 U.S. Dist. LEXIS 62461, * 1  (N.D. Ill. Mar. 21, 2013) (combined class and collective action); *Haschak v. Fox & Hound Rest. Grp., et al.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at * 1 (N.D. Ill. Nov. 14, 2012) (combined class and collective action); *Schaefer v. Walker Bros. Enters., Inc.,* 10 C 6366, 2012 U.S. Dist. LEXIS 65432, *1 (May 7, 2012) (collective action); *Mello v. AppleIllinois, LLC,* 10 cv 3433, Order re Class Certification, ECF No. 69 (N.D. Ill. Dec. 5, 2011); *Kernats v. Comcast Corp. Inc.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010) (class certification); *Driver, et al. v. AppleIllinois, LLC, et al.,* No. 06 C 6149, 2010 U.S. Dist. LEXIS

18217, at *1 (N.D. Ill. Mar. 2, 2010) (class certification); *Ortegon, et al. v. Staffing Network Holdings, LLC, et al.,* 2006 CH 12679 (Chancery, Cook Cir.); *Gambo, et al. v. Lucent Technologies, Inc.,* 05 C 3701 (N.D. Ill.); *Boyd, et al. v. Jupiter Alum. Corp.,* 05 C 227 (N.D. Ind.); *Rodriguez v. Ravenswood Disposal Service,* Case No. 04 CH 19720 (Chancery, Cook Cir.); *Yon, et al. v. Positive Connections, Inc., et al.,* 04 C 2680 (N.D. Ill.); *Azo, et al. v. Art Institute of Chicago,* 04 C 2396 (N.D. Ill.); *Perugachi, et al v. Valet Parking Svc Inc,* et al, 04 C 1783 (N.D. Ill.); *Kim v. CHT Corp Inc. and Charlie Trotter,* 03 C 7362 (N.D. Ill.). I have served as class counsel in some of the largest wage and hour litigation in Illinois. *See e.g., Romo v. Manpower, Inc.,* No. 09 cv 3429, *Ortiz v. Manpower, Inc.,* No. 12 cv 5248, ECF Nos. 236, 249 (N.D. Ill.) (IWPCA class action of over 80,000 individuals).

6.      As plaintiffs' counsel, I have over 75 reported federal cases. I argued the case for the plaintiffs in *Ervin, et al. v. OS Rest. Servs., Inc.*, 632 F.3d 971 (7th Cir. 2011), a case of first impression in the federal appellate system, which held that there is no incompatibility between an FLSA collective action under Section 216(b) and a state-law Rule 23 class action, and that both can proceed within the same action.

9.      I was a chapter contributor to the standard reference work in federal wage and hour law, *The Fair Labor Standards Act* (Ellen C. Kearns, ed., BNA Books, 2d ed. 2010). I was the principal drafter of the National Employment Lawyers Association *amicus* brief the case *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872 (8th Cir. 2011) *cert. denied* ___ U.S. ___, 181 L. Ed. 2d 977 (Jan. 17, 2012), which deals with Section 3(m) of the Fair Labor Standards Act, and what duties a tipped employee may lawfully perform while receiving a tip-credit wage rate. I am the principal drafter of a National Employment Lawyers Association *amicus* brief in a case currently pending in the Court of Appeals for the Second Circuit, *Roach v. T.L. Cannon Corp.,* Case No.

3

13-3070 (2d Cir.). In *Roach*, New York state law class claims against an Applebee's franchisee test the scope of the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426 (2013).

### The *Driver* Litigation

10.     On October 6, 2006, I filed the class action complaint on behalf of Named Plaintiffs Glenn Driver, Demiko D. McCaster, Rosamar Mallari, Joyce A. Britton, and Michael H. Hicks against AppleIllinois, LLC, in the Circuit Court of Cook County, Chancery Division. *Driver, et al. v. AppleIllinois, LLC,* 2006 CH 21193. The complaint alleged violations of minimum wage, overtime and straight-time violations under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*., and Illinois Wage Payment and Collection Act (IWPCA). 820 ILCS 115/1, *et seq.* The *Driver* Named Plaintiffs also alleged, on an individual basis, violations of the minimum wage and maximum hour provisions of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 201, *et seq.*

11.     AppleIllinois removed the case to federal court on November 9, 2006. The *Driver* Named Plaintiffs brought into the Litigation the individual Defendants in subsequent pleadings. Sec. Am. Compl., ECF No. 103. The central allegation of the *Driver* Litigation is that Defendants violated the minimum wage provisions of the FLSA and the IMWL by failing to pay tipped employees minimum wage for performing non-tipped duties. *See* Third Am. Compl., ECF No. 141 (filed April 22, 2009).

12.     On March 2, 2010, the Court granted in part Plaintiffs' motion for certification. Mem. Op., at 2, 46-47, ECF No. 231. Of the three IMWL claims originally certified by the Court under Rule 23(b)(3), the remaining certified class is the non-tipped duty or 'dual job' claim. Class notice was sent out on August 13, 2010. Eleven individuals opted-out of the *Driver*

Litigation. Ex. 1, Settlement Agreement, Ex. A, Gilardi Report. On August 27, 2012, the Court granted summary judgment on liability to the *Driver* Named Plaintiffs under the FLSA, and liability to the *Driver* Class under the IMWL, against AppleIllinois. Mem. Op. & Order, at 2, 50, ECF No. 363. The AppleIllinois bankruptcy filing resulted in a short stay in the *Driver* proceedings, until at the request of both parties, the case proceeded as to Defendant Smith, the parties having apprised the Court of settlement with the other individual Defendants. In October 2013, Court ruled on two outstanding motions that critical to the resolution of the Litigation. Mem. Op. & Order, ECF No. 439 (Oct. 29, 2013).

The *Mello* Litigation

13.     On June 4, 2010, the *Driver* Class Counsel filed a class action complaint on behalf of Lisa Mello under the IWPCA, alleging that AppleIllinois failed to pay separating hourly employees earned vacation pay as part of the employees' final compensation. *Mello v. AppleIllinois, LLC*, 10 C 3433 (N.D. Ill.). On December 5, 2011, then-Chief Judge Holderman granted class certification of two classes of hourly employees subject to the AppleIllinois vacation policy. *Id.*, Order, ECF No. 69. By that time, David R. Zajac had joined the case as an additional named plaintiff.

14.     Thereafter, the parties each filed a summary judgment motion. On July 21, 2012, during the briefing on those motions, Judge Holderman issued an order directing Plaintiffs to file a memorandum identifying the basis of subject matter jurisdiction. *Id.*, Order, ECF No. 94. As a result of that inquiry, Plaintiffs sought leave to dismiss the case without prejudice and refile the case in the Chancery Division of the Circuit Court of Cook County, which was granted. *Id.*, Order, ECF No. 96. On September 17, 2012, Plaintiffs refiled the case in the Chancery Division of the Circuit Court of Cook County, with Judge Mary Mikva presiding. Case No. 12 CH 35110.

5

Plaintiffs renewed their class certification motion, and on April 17, 2013, after briefing and oral argument, Judge Mikva indicated from the bench that she would grant Plaintiffs' motion for class certification. As a result of the AppleIllinois bankruptcy filing, the *Mello I* Litigation was placed in a "bankruptcy hold" status in Chancery Court.

### The AppleIllinois Bankruptcy

15. On April 22, 2013, AppleIllinois filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of Kentucky. *In Re AppleILLINOIS, LLC,* Pet., ECF No. 1, Case No. 13-20723 (E.D. Ky. Bank.) (the "AppleIllinois Chapter 11 Case").[1] On June 14, 2013, the bankruptcy court approved the sale of 15 Applebee's restaurants to the buyer, RMH, Illinois, LLC. Order, ECF No. 247.

16. On June 10, 2014, a hearing will be held in the bankruptcy court for approval of the Joint Disclosure Statement and the procedures for the solicitation and tabulation of votes on the plan of liquidation. Order, ECF No. 472.

### The *Mello II* Litigation

17. On July 26, 2013, the *Mello I* Named Plaintiffs filed a class action complaint in Chancery Court against W. Curtis Smith and Scott Cortner, with Judge Neil Cohen presiding. *Mello, et al., v. W. Curtis Smith, et. al.,* Case No. 13 CH 17689 ("*Mello II* Litigation" or "*Mello II*"). At the request of the Parties, the *Mello II* Litigation was stayed by the presiding judge pending this Settlement. As part of this Agreement, the Parties have agreed to seek leave to amend the *Driver* Litigation to include the allegations asserted in the *Mello II* Litigation, for the

---

[1]  Class Counsel retained bankruptcy counsel Scott Schreiber, of Stahl, Cowen, (now of Clark Hill) Chicago, to represent the Classes in the bankruptcy action.

sole purpose of resolving all outstanding Illinois litigation in one proceeding. In the event that

the Court does not issue the Final Approval Order, does not grant Final Approval of the

Settlement, or if for any other reason this Settlement is not finally approved, the Parties agree

that the pleadings amendment adding the *Mello II* allegations to *Driver* Litigation shall be

stricken, and the *Mello II* Litigation shall recommence in Chancery Court.

**Settlement**

18.     Beginning in October 2013, the parties began discussions with Settlement

Attorney Jillisa Brittan of the Seventh Circuit Settlement Conference Office, on the case of

*Roberts et al. v. AppleSauce, Inc., et al*., No. 13-3126 (7th Cir.), No. 3:12-CV-830-TLS-CAN

(N.D. Ind.). The *Roberts* case raised the same non-tipped duties allegations as *Driver*, against

Defendant Smith and corporate entities related to AppleIllinois. Through the efforts of Ms.

Brittan, those discussions expanded to include the Illinois cases as well as the Indiana *Roberts*

case.

19.     Those early discussions culminated in a settlement conference on January 14,

2014. On that day, after months of preliminary discussions, and several previous failed

settlement efforts, the parties reached an agreement on resolution of all outstanding litigation,

including *Driver, Mello I, Mello II,* and the *Roberts* case. The parties' Class Action Settlement

Agreement represents the final expression of the parties as to the outstanding litigation, except

for the resolution of the *Roberts* Litigation, which is memorialized in a separate agreement.[2]

20.     The Class Action Settlement Agreement includes two classes: the non-tipped

duties class originally certified by the Court in March 2010; and the vacation pay class originally

---

[2]      Per the Court's direction, Class Counsel is delivering to chambers a copy of that
agreement for informational purposes.

certified by Judge Holderman, but which the parties are asking the Court to certify for settlement purposes. The Settlement Agreement provides for a settlement fund of $2,765,000.00, plus the distribution, in an amount not yet determined, that the Classes will receive from the AppleIllinois bankruptcy liquidation plan. The plan of liquidation provides that the *Driver* and *Mello* Classes will receive 63 percent of all bankruptcy funds allocated to the unsecure creditors. *In Re AppleILLINOIS, LLC,* Joint Discl. Stmt., ECF No. 466 at 13, Case No. 13-20723 (E.D. Ky. Bank.) As noted above, the initial hearing on that plan is scheduled for June 10, 2014.

21.      A claiming Class Member will be entitled to a *pro rata* share of the Claimant Fund, based on the individual's actual hours worked, and on whether the Claimant is in the *Driver* Class, the *Mello* Class, or both. Section IV of the Settlement Agreement establishes the formulae for that computation.

22.      Class Counsel seek Service Awards for the Named Plaintiffs. While of course no class action can succeed for the benefit of absent class members without class representatives, the duration of these lawsuits – *Driver* approaching eight years, and *Mello* over four years – means that Named Plaintiffs here have continued to prosecute and support these lawsuits in the face of long odds. In the *Driver* Litigation most especially, but in *Mello* as well, Named Plaintiffs have gone well beyond the requirements placed on the typical class representative. In this litigation they were responsible for initiating and maintaining the actions, from the initial pre-filing investigation, discovery participation, including sitting for depositions, innumerable conferences and status calls, to attending settlement conferences, Named Plaintiffs have willingly performed everything that has been asked of them. They have provided invaluable information and assistance to Class Counsel throughout these quite lengthy lawsuits.

23.      Class Counsel seek attorneys' fees in the amount of one-third of the available

Settlement Funds, including any bankruptcy funds, plus litigation costs. Class Counsel's representation agreement with Named Plaintiffs is a strict contingency arrangement. Thus, Class Counsel took the risk that they would receive no compensation for nearly eight years of work. In addition to which Class Counsel has borne all costs associated with the prosecution of the class lawsuits. As of the date of this declaration, Class Counsel's loadstar, including the reasonable time expended by co-counsel, Werman Salas P.C., far exceeds one-third of the available Settlement Funds. Class Counsel's loadstar will continue to increase through preliminary approval, during the administration process, and in obtaining final approval.

24.     The Settlement reached in these complex class actions constitutes a reasonable compromise of hard-fought and vigorously contested claims. Further, the bankruptcy of AppleIllinois, and the unsecured nature of the Class claims, required that the damages expectations for the Classes be radically revised. Nonetheless, Class Counsel's estimation of this Settlement, based on their knowledge of these cases and their experience with other large, complex class cases, is that it represents a fair, adequate and reasonable resolution.

25.     Of course, this Court must be satisfied that the terms of the Settlement Agreement meet the standard for class settlement approval, without regard to other issues outside the four corners of that Agreement, or of these cases. However, the *Driver* Litigation has had repercussions beyond the confides of the case, with the result that more tipped employees are being lawfully compensated for non-tipped work.

26.     Finally, at this preliminary stage, Class Counsel are not aware of any opposition to the Settlement.

27.     I am not suffering any impediments and am competent to testify to all of the foregoing. As provided under 28 U.S.C. §1746, the undersigned certifies that the statements set

9

forth in this instrument are true and correct.

June 9, 2014

/s/ Jamie G. Sypulski
Jamie G. Sypulski